# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

_____

| | |
|---|---|
| [1] MISTY WHITE, ) | |
| [2] JERMAINE BRADFORD, ) | |
| [3] JANARA MUSGRAVE, ) | |
| [4] LANDON PROUDFIT, ) | |
| [5] BRADLEY BARBER, JR., and ) | |
| [6] DAKOTA KAPPUS, ) | |
| ) | |
|    On behalf of themselves and all ) | |
| others similarly situated, and ) | |
| ) | |
| [7] OKLAHOMA STATE ) | Case No. CIV-19-1145-R |
| CONFERENCE, NAACP, ) | (Class Action) |
| ) | |
|      Plaintiffs, ) | Hon. _____ |
| ) | |
| v. ) | |
| ) | |
| [1] HON. PAUL HESSE, in his official ) | |
| capacity as presiding District Court ) | |
| Judge, ) | |
| [2] HON. JACK MCCURDY, ) | |
| in his official capacity as District Court ) | |
| Judge, ) | |
| [3] HON. BARBARA HATFIELD, ) | |
| [4] HON. CHARLES GASS, ) | |
| [5] HON. KHRISTAN STRUBHAR, in their ) | |
| official capacities as Special District ) | |
| Judges in the Canadian County District ) | |
| Court, and ) | |
| [6] CANADIAN COUNTY DISTRICT ) | |
| COURT, 26TH JUDICIAL DISTRICT, ) | |
| ) | |
|      Defendants. ) | |

_____ )

# CLASS ACTION COMPLAINT

## INTRODUCTORY STATEMENT

1.      Impoverished individuals in Canadian County are routinely jailed because they cannot afford bail.  Meanwhile, similarly situated individuals who can afford bail are routinely released—sometimes without even having to wait to appear before a judge. This unconstitutional discrimination against indigent arrestees is the result of the Canadian County District Court's policy and practice of imposing unaffordable bail without making any inquiry into an arrestee's ability to pay, based solely on amounts set forth in a published bail schedule.  As a result, many arrestees in Canadian County are held in custody pending trial, subject to bail amounts that they cannot afford to pay.

2.      These bail terms operate as de facto orders for pretrial detention, yet the Canadian County District Court, through its Special District Judges, set them without any of the findings or procedures that the Constitution requires before a court is permitted to detain a presumptively innocent person prior to trial.  These constitutional requirements include a substantive finding on the record that detention is the only adequate option to address an arrestee's risk of flight or danger to the community.  The Constitution further requires procedural protections to ensure the accuracy of this substantive finding, including that the presiding court must conduct a meaningful, individualized inquiry into: (A) whether the arrestee poses an unmanageable flight risk or danger to the community if released before trial, and (B) whether non-financial release conditions could adequately address any such risks or dangers.  The Canadian County District Court, through its Special District Judges, also sets bail and holds pretrial proceedings without any

consideration of arrestees' disabilities or appropriate reasonable modifications, in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

3.      In Canadian County, most arrestees are initially detained subject to bail amounts established in a published bail schedule and imposed either by order of a Special District Judge, if an individual is arrested under a warrant, or by jail officials, if an individual is arrested without a warrant.  These initial determinations are made without any evaluation of the arrestee's ability to pay the bail amount imposed and without any evaluation of whether the arrestee has disabilities and is entitled to accommodations.  If an arrestee posts the bail amount set forth in the schedule, she is often released within hours of her arrest, without even having to wait to appear before a judge.  Those who cannot are detained until at least their first appearance before a judge—and often much longer—even if they do not pose a risk of flight or an unmanageable danger to the community.

4.      For most arrestees, bail is set at their initial appearance (or arraignment if they have been formally charged) because they cannot afford the initial bail amount. Special District Judges preside over these proceedings, which are conducted by videoconference from the Special District Judge's chambers.  Indigent defendants are not represented by counsel during these hearings.  The Special District Judges do not hear arguments about whether bail is affordable or whether pretrial detention is warranted. And they rarely reduce the bail amounts imposed pursuant to the published bail schedule; more often, they increase them.  In either case, it is the policy and practice of the Special District Judges not to inform an arrestee that her ability to pay is relevant to the bail

determination, let alone to accept evidence, make findings based on clear and convincing evidence related to the arrestee's ability to pay, or provide disability-related modifications.

5.      A person who cannot afford bail and requires court-appointed counsel must wait—often weeks—to request that appointment.  They must continue to wait until they actually receive and meet a lawyer before they can request a reduction of the bail amount. As a result, many people who present no danger to the community and no risk of fleeing prosecution are held in custody for weeks or months awaiting trial, solely because they cannot pay the unaffordable bail amount imposed as a result of Defendants' policies and practices.

6.      In addition to violating well-established constitutional guarantees of due process and equal protection, Defendants' policies and practices violate the ADA and Section 504 of the Rehabilitation Act.  Many arrestees have disabilities, entitling them not only to constitutional protections but also to the protections of the ADA and Rehabilitation Act.  Many cannot afford bail, including those who rely on poverty-level Supplemental Security Income (SSI), based on their disabilities.  Arrestees with disabilities who cannot afford their bail are entitled to pretrial release when they pose no danger to the community and no risk of flight, or when any such dangers and risks can be ameliorated through reasonable modifications such as reminders for scheduled court appearances.  Some disabled arrestees cannot represent themselves in court proceedings, particularly when such sessions are conducted via videoconference.  Individuals with disabilities require counsel to have an equal opportunity in court, but they are routinely

denied court-appointed lawyers.  Arrestees with disabilities are often denied the reasonable modifications they need to have an equal opportunity to participate in pretrial proceedings, such as extra time, quiet, slow and meaningful proceedings, or documents and explanations in simple English.  As a result of these policies and practices, arrestees with disabilities face not only the constitutional denials of wealth-based detention described above, but the additional barriers of proceedings that fail to account for disability and that do not allow them equal participation and access to freedom.

7.     The individually named Plaintiffs have been detained since their arrests and remain in jail because they cannot afford to purchase their release.  The Special District Judges set bail in Plaintiffs' cases following cursory initial appearances or summary arraignments that many of them could barely understand, and at which the Special District Judges did not ask questions about their incomes, expenses, or abilities to pay before setting bail amounts.  No one was provided with a court-appointed attorney, and all appeared without counsel.  During each day that they remain in jail, Plaintiffs have already lost, or risk losing, their jobs, their homes, their health, and their ability to support and take care of their children and other loved ones, among other injuries.

8.     Plaintiff Oklahoma State Conference, NAACP ("the NAACP of Oklahoma"), through one of its members, attempted to access an in-custody arraignment proceeding at the Canadian County District Court.  However, the NAACP of Oklahoma was denied access and was told the hearing was not open to the public.  In stark contrast to how initial appearances and arraignments are conducted in other parts of the country, it is the policy and practice of Defendants to conduct them hidden from public scrutiny.

9.     The individually named Plaintiffs, on behalf of the many other arrestees subjected to Defendants' unlawful pretrial detention policies and practices, challenge the routine use of unaffordable bail to detain arrestees, including arrestees with disabilities, without a hearing at which an arrestee's ability to pay is considered and without a lawyer to safeguard the arrestee's constitutional and statutory rights, and without modifications required under disability rights laws.  This wealth-based pretrial detention system violates the Equal Protection and Due Process Clauses of the United States Constitution, as well as the right to counsel protected under the Sixth Amendment, as courts around the country have held in analogous situations.  The pretrial detention system further violates the ADA and the Rehabilitation Act.

10.     Plaintiff NAACP of Oklahoma, on behalf of its members, challenges Defendants' policy and practice of conducting all in-custody initial appearances and arraignments in judicial chambers, behind closed doors, making the proceedings inaccessible to the public.  Plaintiff NAACP of Oklahoma has a First Amendment right to access hearings at which bail is determined.  Defendants have no legitimate reason for denying Plaintiff NAACP of Oklahoma—and the rest of the community—the ability to access initial appearances and arraignments for people held in jail.

## JURISDICTION AND VENUE

11.     This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. § 2201 *et seq.*, 42 U.S.C. § 12131, *et seq.*, 29 U.S.C. § 794, and the Sixth and Fourteenth Amendments to the United States Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

12.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because Canadian County, and the Canadian County District Court are both located within the district, and a substantial part (if not all) of the events giving rise to the Plaintiffs' claims occurred or will occur in this district.

**PARTIES**

13.     Plaintiff Misty White is a 40-year-old Native American woman and a member of the Cherokee Nation.  She is a resident of Canadian County.  She brings this suit on behalf of herself as an individual and on behalf of a class of similarly situated people subjected to Defendants' unlawful pretrial detention scheme, including a subclass of similarly situated people with disabilities subject to Defendants' unlawful pretrial detention scheme.  Ms. White has severe depression, severe anxiety, bipolar disorder, post-traumatic stress disorder ("PTSD"), and a painful condition called interstitial cystitis.  She is a person with a disability under the ADA and Section 504 of the Rehabilitation Act.  She cannot afford to pay the cash bail imposed in her case, and she cannot afford counsel.  Her arraignment was conducted via videoconference.  Her arraignment was not open to the public.  She did not have defense counsel to represent her at arraignment and she did not receive any accommodations for her disabilities.  She has not received any of the services or medications she requires to manage her disabilities and her disability symptoms have worsened during her time in jail.

14.     Plaintiff Jermaine Bradford is a 37-year-old black man and a resident of Canadian County.  He brings this suit on behalf of himself as an individual and on behalf of a class of similarly situated people subjected to Defendants' unconstitutional pretrial

detention scheme. His arraignment was conducted via videoconference in what appeared to be a judge's chambers. He did not have defense counsel to represent him. His arraignment was not open to the public. He cannot afford to pay the cash bail amount imposed in his case, and he cannot afford to hire private counsel.

15.    Plaintiff Janara Musgrave is a 47-year-old white woman and a resident of Canadian County. She brings this suit on behalf of herself as an individual and on behalf of a class of similarly situated people subjected to Defendants' unlawful pretrial detention scheme, including a subclass of similarly situated people with disabilities subject to Defendants' unlawful pretrial detention scheme. She has bipolar disorder I, anxiety disorder, and PTSD. Ms. Musgrave is a person with a disability under the ADA and Section 504 of the Rehabilitation Act. She cannot afford to pay the cash bail imposed in her case, and she cannot afford counsel. Her arraignment was conducted via videoconference. Her arraignment was not open to the public. She did not have defense counsel to represent her at her arraignment and did not receive any accommodations for her disabilities. She could not meaningfully participate in her arraignment because of the lack of counsel and disability accommodations. She has not received any services or medications to manage her disabilities, and her health has worsened while in jail.

16.    Plaintiff Landon Proudfit is a 35-year-old white man and a resident of Canadian County. He brings this suit on behalf of himself as an individual and on behalf of a class of similarly situated people subjected to Defendants' unconstitutional pretrial detention scheme. His arraignment was conducted via videoconference in what appeared to be a judge's office. Mr. Proudfit did not have defense counsel to represent him. His

arraignment was not open to the public. He cannot afford to pay the cash bail imposed in his case, and he cannot afford counsel.

17.    Plaintiff Bradley Barber Jr. is a 26-year-old white man and a resident of Canadian County. He brings this suit on behalf of himself as an individual and on behalf of a class of similarly situated people subjected to Defendants' unconstitutional pretrial detention scheme. His arraignment was conducted via videoconference in what appeared to be a judge's office. He did not have defense counsel to represent him. Mr. Barber's arraignment was not open to the public. He cannot afford to pay the cash bail amount imposed in his case, and he cannot afford to hire private counsel.

18.    Plaintiff Dakota Kappus is a 23-year-old white man and a resident of Canadian County. He brings this suit on behalf of himself as an individual and on behalf of a class of similarly situated people subjected to Defendants' unconstitutional pretrial detention scheme. His arraignment was conducted via videoconference in what appeared to be a judge's chambers. He did not have defense counsel to represent him. His arraignment was not open to the public. Mr. Kappus cannot afford to pay the cash bail amount imposed in his case, and he cannot afford to hire private counsel.

19.    Plaintiff NAACP of Oklahoma is a state affiliate of the National Association for the Advancement of Colored People ("NAACP") and is composed of all NAACP branches and chapters located in the State of Oklahoma. The principal objectives of the NAACP and its local affiliates are to ensure the political, educational, social and economic equality of all citizens; to achieve equality of rights and eliminate race prejudice among the citizens of the United States; to remove all barriers of racial

discrimination through democratic processes; to inform the public of the adverse effects of racial discrimination and to seek its elimination; and to educate persons as to their constitutional rights and to take all lawful action to secure the exercise thereof.  The NAACP of Oklahoma brings this suit on behalf of its members.  Plaintiff NAACP of Oklahoma, through one of its members, attempted to attend an arraignment at the Canadian County District Court on December 9, 2019 but was denied access by a Court clerk.

20.    Defendant Paul Hesse is the presiding District Judge in Canadian County. Judge Hesse created the bail schedule used by the Special District Judges when they impose bail at initial appearances and arraignments.  Judge Hesse appoints all Special District Judges and reviews their performance.  Judge Hesse also sets bail for defendants arraigned for failure to appear or revocation of probation.  Judge Hesse can appoint counsel to indigent defendants.  He is sued for injunctive and declaratory relief in his official administrative capacity as the supervisory official with the authority to alter the policies and practices of the Special District Judge Defendants at initial appearances and arraignments.  In the alternative, he is sued in his judicial capacity for declaratory relief only.

21.    Defendant Jack McCurdy is a District Judge in Canadian County.  Judge McCurdy appoints all Special District Judges and reviews their performance.  Judge McCurdy sets bond in certain criminal cases.  Judge McCurdy can appoint counsel to indigent defendants.  He is sued for injunctive and declaratory relief in his official

administrative capacity for having implemented the Bail Setting Policy described herein. In the alternative, he is sued in his judicial capacity for declaratory relief only.

22.     Defendants Barbara Hatfield, Charles Gass and Khristan Strubhar (collectively, "the Special District Judges"), are Special District Judges in Canadian County.  They are responsible for conducting initial appearances and arraignments with arrestees via videoconference and imposing bail amounts based on the published schedule created by Presiding District Judge Hesse.  These initial bail determinations set the financial conditions for an arrestee's pretrial detention.  Arrestees are unable to meaningfully challenge the bail determination made by Special District Judges until their next court appearance, which is usually over a week later.  The Special District Judges can appoint counsel to indigent defendants.  The Special District Judges are sued for injunctive and declaratory relief in their official administrative capacities for having implemented the Bail Setting Policy described herein.  In the alternative, they are sued in their judicial capacity for declaratory relief only.

23.     Defendant Canadian County District Court, 26th Judicial District, is the court that administers the policies and practices challenged herein.  It is a public entity for purposes of the ADA.  On information and belief, it is a recipient of federal financial assistance for purposes of the Rehabilitation Act.

## FACTUAL ALLEGATIONS

**A.    The Individual Plaintiffs are Held in Jail Solely Because They Cannot Afford to Pay Bail.**

24.    Plaintiff Misty White was arrested on November 16, 2019 for violation of a Victim Protective Order ("VPO").  The officer who arrested her did not tell her how she violated a VPO.

25.    Ms. White has severe depression, severe anxiety, bipolar disorder and PTSD, and interstitial cystitis.  She takes medications for these conditions, including methadone to manage withdrawal symptoms after she stopped taking prescribed Percocet for the pain of interstitial cystitis earlier this year.  She could experience heart problems if she suddenly stopped taking her medications.

26.    She was transported to the Canadian County Jail in the afternoon of November 16, 2019.  Ms. White was taken to see a nurse at Intake in the jail.

27.    Ms. White informed the nurse at the jail about the medications she takes, and that it is dangerous to stop some of these medications abruptly.  The nurse told her that they "do not treat anxiety here."  She also told her that certain medications that Ms. White takes, including methadone and anxiety medications that are dangerous to stop suddenly, are not available at the jail.

28.    Ms. White spent the first four days in an isolation cell in jail because jail officers incorrectly thought that she was suicidal. She did not receive any of her medications while she was in isolation and suffered withdrawal symptoms as a result. She felt like she was breaking down.

29.    The day after she was arrested, Ms. White was taken out of the isolation cell for her initial appearance.  She spoke to the judge through a video monitor for approximately one minute.  The judge read Ms. White her charges and told her that her bail was $3,500.  The judge did not ask her whether she could afford to pay that amount. She could not afford the $3,500 bail.

30.    Ms. White felt intimated during the proceeding, and she did not know the rules.  She did not know whether she could ask any questions.  Ms. White would have liked to have a lawyer present at the proceeding because it felt one-sided.  She was suffering from withdrawals during the proceeding as a result of not having received her medications.  She had insomnia and a headache, which made it difficult for her to understand what was happening or to advocate for herself.

31.    Ms. White was arraigned nine days later.  The same judge conducted the proceeding via videoconference.  Ms. White was still being denied access to most of her medications, including methadone and most of her psychiatric medications, and was experiencing disability-related symptoms at the time of her arraignment.  The overcrowding in the jail further exacerbated Ms. White's disabilities.  She was informed that a charge of Obstructing an Officer had been added to her case, and the judge increased her bail amount to $4,500.  Ms. White cannot afford to pay the $4,500 bail. She stopped working as a medic in order to take care of her daughter.  She has no savings and has fallen behind in paying her bills.

32.    The judge did not ask Ms. White any questions except personal identifying information.  The entire proceeding lasted about one minute.  The judge did not ask

whether Ms. White has a job, or if she could afford to pay $4,500.  The judge did not provide any explanation for why her bail was set at $4,500.

33.     Before her arraignment, the jail officer informed her and other people in jail that if they talked while they were waiting, the officer would return them to their cells and they would have to wait an additional week to be arraigned.  The officer sent two people back to their cells before they were arraigned as punishment for talking.

34.     Ms. White did not have a lawyer representing her at arraignment.  She cannot afford to hire a private lawyer.  Ms. White completed an application for an Oklahoma Indigent Defense System ("OIDS") court-appointed attorney the day of her arraignment.  She has inquired about the status of her application but still does not know if her application was approved.  She cannot afford to pay the $40 application fee.

35.     Ms. White's next court appearance is scheduled for December 18, 2019.  However, she has heard that the jail officials will not take incarcerated people to court if they do not have a lawyer assigned by the court date.

36.     Ms. White has been in jail for 25 days.

37.     Plaintiff Jermaine Bradford  was arrested around midnight on November 20, 2019 for Driving While Under the Influence and Driving a Defective Vehicle (a Traffic Offense), in Yukon, Oklahoma.  He was taken to the Yukon jail around 1:00 a.m., and stayed there until around 5:00 a.m., when he was transferred to the Canadian County Jail.

38.     The computers were not working when he was booked into jail.  The officer looked at a piece of paper and then told Mr. Bradford that his bail was around $6,000.

He cannot afford to pay that amount.  At the time of his arrest, Mr. Bradford was working

odd jobs completing cement work and other construction projects.  He was earning

roughly $500 each month.  He lives with his girlfriend, and after covering all monthly

expenses, there is little to no money remaining.  They do not have any savings.

39.     Mr. Bradford did not see a judge for about a week or a week-and-a-half

after entering the Canadian County Jail.[1]  The meeting with the judge took place

remotely.  Mr. Bradford was in a visitation area of the jail.  The judge appeared on a

screen, and looked like she was sitting at a desk.  Mr. Bradford spoke to the judge

through a phone for less than three minutes.  The judge informed Mr. Bradford of his

charges and told him that his bond was $2,000; $1,000 per charge.  The judge asked if he

understood and he confirmed that he did.  Before the proceeding ended, the judge told

Mr. Bradford to be in her courtroom on December 18, 2019.

40.     The judge did not ask Mr. Bradford any questions about his income,

expenses or whether he can pay the bail amount she imposed in his case.  The judge did

not explain why the bail was set at $2,000.  The judge did not inform him of any other

options for him to get out of jail besides paying a cash bond.

41.     Mr. Bradford was not represented at his arraignment.  He would have liked

to have a lawyer present to explain to the judge that he cannot afford the bond that she

---

[1] Mr. Bradford identified a delay ranging from a week to a week and a half prior to his
arraignment.  Upon review of the Oklahoma State Courts Network (OSCN), he was
arrested on November 20, 2019 and was not arraigned until November 26, 2019

imposed in his case, and to explain why he should have received an Own Recognizance bond.

42.    Mr. Bradford was provided with an application for an OIDS court-appointed attorney before he entered the jail visitation room for his arraignment.  He submitted the application but did not provide the names of three lawyers as required, because he does not know any lawyers.  He cannot afford to pay the $40 application fee.

43.    Mr. Bradford has been in jail for about 21 days.

44.    Plaintiff Janara Musgrave has bipolar I disorder, anxiety disorder, and PTSD.  She was arrested on November 11, 2019 for four misdemeanor charges: unlawful possession of a controlled dangerous substance, unlawful possession of drug paraphernalia, knowingly receiving stolen property, and larceny of lost property.  She was taken to El Reno City Jail and then transported to the Canadian County Jail.

45.    Ms. Musgrave was arraigned via videoconference one week after being arrested.  The arraignment was the first time she was informed of the charges against her.  Because of her disabilities, Ms. Musgrave had difficulty hearing and understanding what the judge was saying during the arraignment.  The judge set Ms. Musgrave's bond at $4,000.  The judge did not ask Ms. Musgrave any questions about her income, her expenses, or her ability to afford the bail amount set.  Nor did the judge provide any explanation as to why she set bail at that amount.  There was no opportunity for Ms. Musgrave to obtain modifications or accommodations to participate in the proceeding.

46.    Ms. Musgrave was anxious and distracted during the arraignment because a jail officer was sitting directly behind her throughout the proceeding.  She would have

been able to hear better during the proceeding if the phone volume had been louder and the door to the room where the videoconference was held had been closed.  If she had felt less rushed, she could have calmed down and asked the judge a question.  The entire arraignment was completed in three to five minutes.

47.    Ms. Musgrave did not know if she had the right to ask any questions and she did not know it was possible to have a lawyer at the arraignment.  She would have liked to have a lawyer present to help explain what was taking place and what her options were.

48.    Ms. Musgrave cannot afford to hire a private lawyer.  She first received the application to request an OIDS court-appointed attorney before her arraignment.  She was unable to complete the application until after her arraignment, however, because she did not know her charges until the arraignment.  Ms. Musgrave was also not able to get the application notarized.  She cannot afford to pay the $40 application fee.  She still does not know whether her application for an OIDS court-appointed attorney was approved.

49.    Ms. Musgrave cannot afford to pay the bail amount set in her case.  She worked in a fast food restaurant before being arrested.  After she pays for rent, utilities, bills, transportation, food, and medications, she has no funds left.  Her friends and family are also unable to pay her bail amount.

50.    Since she has been incarcerated, she has informed several jail officials about her significant psychiatric diagnoses.  But no one has acknowledged her disabilities.  She has not received any treatment or medication the entire time that she has been incarcerated.

51.     Ms. Musgrave has been in jail for 30 days.

52.     Plaintiff Landon Proudfit was arrested on November 13, 2019 for burglary in the second degree and arson in the first degree, both felonies.[2]  He was arrested at his apartment and taken to Yukon City Jail for processing and then transported to Canadian County Jail.

53.     Within an hour of arriving at Canadian County Jail, Mr. Proudfit was placed on suicide watch for several days.  He was not informed of his charges or his bond amount until November 17, 2019 when he asked a guard.[3]  The guard informed Mr. Proudfit of his charges and told him that his bond was $30,000.

54.     Mr. Proudfit was arraigned via videoconference on December 5, 2019, more than three weeks after being arrested.

55.     The arraignment lasted two or three minutes.  Mr. Proudfit had difficulty hearing the judge because of the background noise at the jail and the quality of the sound on the videoconference.  The judge informed Mr. Proudfit that he was charged with an additional misdemeanor for public intoxication from a previous arrest in August 2019 and set Mr. Proudfit's bond at $31,000 total: $25,000 for the first-degree arson charge, $5,000 for the second-degree burglary charge, and $1,000 for the public intoxication charge. The judge did not ask Mr. Proudfit any questions about his income, his expenses, or his ability to afford the bail amount set.  Nor did the judge provide any explanation as to why

---

[2] Mr. Proudfit recalls being arrested on November 15, 2019.  Upon review of the case docket on OSCN, it appears he was arrested on November 13, 2019.

[3] Mr. Proudfit recalls that he was informed of his charges and bond on Sunday November 18, 2019.  Upon review, the correct date is Sunday November 17, 2019.

she set bail at that amount.  When he was asked whether he understood the proceedings, he responded "yes and no."  Mr. Proudfit attempted to ask the judge questions about both his charges and the setting of his bond but the judge and jail officer instructed him to save his questions for the next proceeding.  Mr. Proudfit was not permitted to write down his bond amounts during the arraignment.

56.    Mr. Proudfit cannot afford to pay the bail amount set in his case because he has been unemployed for approximately a year and a half.  His family cannot afford to pay the bond amount.

57.    Mr. Proudfit did not have an attorney at the arraignment, and he cannot afford to hire one.  After his initial appearance, Mr. Proudfit received an application to request an OIDS court-appointed attorney.  However, he was not able to complete the application's requirements of speaking with three attorneys and having the application notarized.  He completed the application to the best of his ability.

58.    Mr. Proudfit has been in jail for 28 days.

59.    Plaintiff Bradley Barber was arrested on November 19, 2019 for unlawful possession of a controlled dangerous substance.  He was taken to El Reno City Jail and then transported to Canadian County Jail.

60.    An officer informed Mr. Barber that his bond was $2,000.  He also informed Mr. Barber that he could not be released on his own recognizance because of a city hold for the failure to pay a $25 a month minimum fine.

61.    Mr. Barber was arraigned via videoconference a week after being arrested. The arraignment was very quick, and Mr. Barber had difficulty hearing the judge.  The

judge set Mr. Barber's bond at $4,000.[4]  The judge did not ask Mr. Barber any questions about his income, his expenses, or his ability to afford the bail amount set.  Nor did the judge provide any explanation as to why she set bail at that amount.

62.    Mr. Barber cannot afford to pay the bail amount set in his case because he has been laid off for three months.

63.    Mr. Barber did not have an attorney at the arraignment, and he cannot afford to hire one.  After his arraignment, Mr. Barber received an application to request an OIDS court-appointed attorney.  However, he was not able to complete the application's requirements of speaking with three attorneys and having the application notarized.  He completed the application to the best of his ability and provided it to an officer to submit.

64.    Mr. Barber has been in jail for 22 days.

65.    Plaintiff Dakota Kappus was arrested on November 7, 2019 for Larceny of an Automobile, Leaving the Scene of an Accident, and Trespassing After Being Forbidden.  He was held in the El Reno City Jail for seven days before being taken to the Canadian County Jail.  An officer at the El Reno City Jail told him that the bond was $1,100, but they did not tell him why his bond was that amount.

---

[4] Mr. Barber recalls that his bond was set at arraignment at $4,000.  Upon review of the case docket on OSCN, it appears that his bond amount may actually be $6,000; $5,000 on the Motion to Revoke Probation, and $1,000 on the Unlawful Possession of a Controlled Substance.

66.    He waited 2 weeks to be arraigned.  He was arraigned by video from the Canadian County Jail, during which he spoke to the judge through a phone.  He believes bond was set at approximately $50,000.[5]  The judge did not ask him whether he could afford to pay his bond.  A jail officer sat behind him taking notes during the arraignment.

67.    Mr. Kappus did not have a lawyer at the proceeding and he cannot afford to hire a private lawyer.  He would have liked to have a lawyer during the proceeding to help him.

68.    When he was taken to the arraignment, an officer gave him the application for the OIDS court-appointed attorney.  He could not afford the $40 application fee.  Nor could he complete the form because he did not know three lawyers to contact and he did not know what a notary was.

69.    Mr. Kappus has been in jail for over 34 days.

**B.    Defendants' Policies and Practices Constitute a Wealth-Based Detention System That Keeps People in Jail for the Sole Reason that They Cannot Afford to Pay Bail.**

70.    The Canadian County District Court, through Defendant Presiding District Judge Paul Hesse, has created a policy of setting bail amounts that many indigent defendants cannot afford to pay according to a fixed bail schedule (the "Bail Setting Policy") without any inquiry into the arrestee's ability to pay bail.

71.    This Bail Setting Policy applies in both misdemeanor and felony cases. Under the Policy, bail amounts are imposed upon a person, without any individualized

---

[5] Mr. Kappus was unsure of his bond amount but believes it is approximately $50,000. Upon review of the case docket on OSCN his bond amount appears to be $44,500.

inquiry into the person's circumstances such as flight risk, dangerousness, and ability to pay, or how disability and accommodations to disability might affect this inquiry. Bail is imposed without counsel for the arrestee and without providing the arrestee with an opportunity to present evidence or rebut evidence of flight risk or dangerousness. As a result of this policy, wealthier arrestees can purchase their release, while similarly situated but poor arrestees—although accused of the same crimes—remain in jail.

72.     In May 2018, Canadian County Presiding District Court Judge Paul Hesse created and promulgated a revised bail schedule. Under the terms of the revised schedule some people accused of misdemeanors are eligible for release upon personal recognizance, while people charged with crimes deemed ineligible for release upon personal recognizance receive bail conditions. The amount of bail is based, in part, on county residency. Out-of-county residency automatically increases the bail amount. For example, for some less serious misdemeanors, the predetermined bail schedule sets bail at $1,000 for Canadian County residents. For these same less serious misdemeanors, the bail schedule sets bail at $2,000 for non-residents of Canadian County. The bail schedule also includes bail amounts to be imposed in felony cases based, in part, on Oklahoma state residency. For example, for non-violent felonies, the bail schedule sets bail at $5,000 for residents of the state, whereas for the same non-violent felonies, the bail schedule sets bail at $10,000 for non-residents of the state.

1.     **Bail Is Set Following Proceedings That Are Constitutionally Inadequate**

73.     Canadian County Special District Judges conduct initial appearances and arraignments for in-custody individuals every week, but only on Tuesday and Thursday. These proceedings are conducted in judicial chambers, that are closed off from the public.

74.     Arrestees appear via videoconference and these initial appearances and arraignments generally last sixty to ninety seconds.  The presiding Special District Judges do not advise defendants of their right to counsel, and the Special District Judges do not ask about the defendant's ties to the community, income, expenses, or ability to pay a particular bail amount.  Although it is known that many arrestees have disabilities, the Special District Judges do not inquire into the individual's disability, whether they require reasonable modifications in the proceeding in order to be released pretrial, or whether their disability has contributed to previous alleged technical violations, such as failures to appear.  Although many such arrestees' disabilities prevent them from representing themselves, the Special District Judges do not consider whether these individuals need representation to have an equal opportunity to participate in their arraignments and initial appearances.

75.     Special District Judges usually order that bail remain at the amount that was previously set based on the bail schedule, unless the charges filed are different from those on which the arrestee was booked.  If new charges have been added, the bail amounts for those charges are set in accordance with the bail schedule.

76.     An individual who cannot pay the amount set by the schedule, and adopted by the Special District Judge at their initial appearance or arraignment, remains in jail.

77.     The Named Plaintiffs waited between 7 and 21 days to be arraigned after their arrest.

78.      Upon information and belief, arrestees wait an average of two to three weeks after arrest before counsel is appointed, and usually much longer before they actually meet their attorney.

79.     Indigent arrestees must pay a $40 fee to apply for a court-appointed lawyer through OIDS and, if approved, must wait approximately one week on average before counsel will be appointed.  However, if an arrestee posts the bail amount imposed in their case after receiving an OIDS attorney, OIDS has a policy and practice of filing a motion to withdraw as counsel on the basis that the arrestee does not qualify as indigent because they paid their bail.  The District Court judges also consider payment of bail as a factor in determining whether the arrestee is indigent when deciding whether to grant OIDS' motions to withdraw.  As a result, indigent arrestees who want the assistance of a court-appointed lawyer must effectively remain in custody, even if a family member or employer would be willing to pay bail.  This system causes indigent arrestees in Canadian County to have to make an unjust choice: either remain in custody to secure the advice and representation of court-appointed counsel, or go free but face criminal charges without a lawyer.

80.     Most arrestees, including Named Plaintiffs Musgrave, Proudfit, and Barber are aware of the existence of this practice and the negative consequences attached to

posting bail in Canadian County.  Plaintiff Barber, was aware that even if he could afford

to post his bail amount, he would not be able to receive an OIDS court-appointed attorney

if he paid the bail and was released from jail.  Plaintiff Musgrave read that the OIDS

court-appointed attorney application says that if the applicant posts bond, they cannot

have an OIDS court-appointed attorney.  Plaintiff Proudfit also read that the OIDS court-

appointed attorney application states there is a presumption that you can afford a lawyer

if you bond out and that it makes arrestees feel like they should stay in jail if they want to

get a lawyer.

> **C.     The Period of Automatic Detention Resulting from Defendants'
> Policies and Practices Unconstitutionally and Unlawfully Discriminates
> Against Arrestees Who Cannot Afford Their Bail.**

81.     As a result of the Bail Setting Policy, Defendants routinely jail arrestees

who cannot afford their bail without considering their ability to pay any bail amount, or

the possibility that any risk that the arrestee might flee prosecution or present a danger to

the community could be mitigated by a less restrictive option than pretrial detention,

including through reasonable modifications for arrestees with disabilities.  This policy

causes extraordinary harm for arrestees who cannot afford their bail, and yet it is

completely unrelated to any permissible judicial or governmental purpose, let alone being

narrowly tailored to achieve a compelling governmental objective, as required by the Due

Process and Equal Protection Clauses.

82.     Nor do Defendants consider that many arrestees have disabilities and

require modifications to participate in the pretrial proceedings, and to have an equal

opportunity to be released successfully on bail.  Additionally, as a result of their

disabilities, many indigent arrestees cannot represent themselves in court proceedings, particularly when such sessions occur via videoconference.  Defendants fail to consider whether these arrestees require court-appointed counsel to have an equal opportunity in court.  Defendants fail to consider alternatives to their bail policy that would permit these arrestees an equal opportunity to be released pending trial.  Defendants fail to consider whether arrestees with disabilities pose any risk of fleeing prosecution or danger to the community, whether any such risk could be mitigated by reasonable modifications such as reminders for court appearances, and whether previous failures to appear or pay were themselves a result of disability or Defendants' denial of required modifications.

## 1.    The Bail Schedule Policies and Practices Inflict Severe Harm on Arrestees Who Cannot Afford Their Bail.

83.    The periods of incarceration experienced by pretrial arrestees in Canadian County who cannot afford their bail—periods in which these individuals are presumed innocent—are inherently harmful deprivations of liberty.  Pretrial detention for impoverished individuals can wreak havoc on their lives, even if they are in jail for only a few days.  Individuals miss work due to being detained, leading to lost wages and sometimes lost jobs.  Due to lost wages, impoverished individuals fall behind on rent and may be evicted from their homes.  They also fall further behind on paying legal financial obligations like court fines, costs and fees, thereby trapping them in a cycle of poverty and endless involvement with the criminal legal system.  Arrestees who remain in jail because they cannot afford their bail also cannot perform their caretaking responsibilities, which can lead to loss of custody of their children.  For disabled arrestees, the experience

of incarceration often includes disrupted health, missed medications, and interruption of any routine and stability that can be vital in managing disability, often resulting in significant decompensation and increased disability-related symptoms. Each of these consequences occurs before the arrestee has even been tried or found guilty of a crime.

84.    The Federal Reserve recently reported that approximately 40% of adults in the United States are unable to pay a $400 emergency expense.[6] The unaffordable bail amounts imposed in Canadian County are thus sure to cause financial strain, and perhaps even devastation, for impoverished arrestees and their families.

85.    Incarcerating arrestees because they cannot afford bail is also harmful to the community in general. Canadian County jails are already overcrowded, and taxpayers shoulder the burden of paying for these jails and the incremental costs of each additional person kept in jail. In 2017, the Canadian County Detention Center ("CCDC"), which holds both pretrial detainees and formally sentenced people,[7] had an average daily population of 300, more than 100 over the CCDC's capacity.[8] Approximately 4,000 people were processed through the CCDC in 2017.[9] With regard to taxpayer cost, a 2015

---

[6] Board of Governors of the Federal Reserve System, *Report on the Economic Well-Being of U.S. Households in 2018*, May 2019, https://www.federalreserve.gov/publications/files/2018-report-economic-well-being-us-households-201905.pdf.

[7] Canadian County Sheriff's Office, https://www.ccsheriff.net/31/Detention-Facility (last accessed Nov. 9, 2019).

[8] *Id.*

[9] *Id.*

study showed that the state prison average cost per incarcerated person in Oklahoma was $16,497.[10]

86.    Further, cash bail has been shown to lead to an increase in the likelihood that individuals will plead guilty just to get out of the horrific experience of jail, even when they are *innocent*.[11]

87.    Plaintiff Misty White has suffered as a result of the past 25 days she has spent in jail.  She has experienced increased anxiety due to the conditions in the jail.  She spent four days in isolation following a miscommunication where the jail believed she was suicidal.  She suffered extreme trauma and harm during this period, including a threat by an officer that a male officer would undress her if she didn't comply with the officer's orders. This experience exacerbated Ms. White's PTSD and other disabilities. Ms. White does not consume pork for religious reasons.  She informed the booking officer of her dietary restrictions and the officer told her that she would not be able to eat many of the meals served.  Pork is frequently served for lunch and dinner at the Canadian County Jail.  She has had to forego many meals and goes hungry often.  The jail has also refused to provide her most of the medications she takes.  She has experienced insomnia,

---

[10] *Prison spending in 2015*, Vera, https://www.vera.org/publications/price-of-prisons-2015-state-spending-trends/price-of-prisons-2015-state-spending-trends/price-of-prisons-2015-state-spending-trends-prison-spending (last accessed November 9, 2019).

[11] Antonia Noori Farzan, *He pleaded guilty to cocaine possession and was sentenced to 15 years in prison.  It turned out to be powdered milk*, Wash. Post (Oct. 16, 2019) (citing a study that found that "66 percent of people who were exonerated after being convicted of drug crimes ended up in prison in the first place because they entered a guilty plea.")

withdrawals and chronic pain.  Being in jail has caused her to miss visitations with her daughter.  She has been unable to work and therefore has been unable to pay her bills.

88.    Plaintiff Jermaine Bradford has not been able to work and contribute to household expenses as a result of being in jail the past 21 days.  His girlfriend has struggled to pay their bills in his absence.

89.    Plaintiff Janara Musgrave has lost her employment since being arrested.  Her disability-related symptoms have worsened, and she has received no support or counseling, despite repeatedly informing the jail of her diagnoses.

90.    Plaintiff Landon Proudfit has missed spending time with his daughter.  He has also been unable to provide support to his disabled father and assist with caring for his brother who has cerebral palsy and uses a wheelchair and requires assistance with eating, bathing, and routine daily tasks.

91.    Plaintiff Bradley Barber has missed the opportunity to resume his employment as a result of his continued incarceration.

92.    Plaintiff Dakota Kappus has missed spending time with his mother who has cancer.  He has been unable to receive treatment for his Type II diabetes.

### 2.    Defendants' Bail Setting Policy Does Not Further Any Valid Governmental Interest, Let Alone a Compelling One.

93.    Studies show that cash bail does not meaningfully increase a person's likelihood of returning to court,[12] and that there are other, more effective non-financial

---

[12] *ODonnell v. Harris Cnty.*, 882 F.3d 528, 545 (5th Cir. 2018) (upholding the district court's "thorough review of empirical data and studies [finding] that the County had failed to establish any 'link between financial conditions of release and appearance at

means of ensuring their return.  This research defeats one of the two key reasons often offered to justify bail: ensuring that the accused will return to court.  If there is no correlation between bail and returning to court, there is quite simply no legitimate government interest in cash bail in cases that do not involve public safety.  For many people with disabilities, simple modifications such as text message reminders about court dates and clear explanations of the criminal legal process can increase appearance at court hearings without loss of liberty.  Such modifications must be considered under disability rights laws.

94.    Further, unaffordable bail does not increase public safety.  After brief periods of detention, each additional day a person spends locked in jail increases the likelihood that she will be rearrested after she is released, largely as a result of the economic harms she will have suffered as a result of her detention. [13]

---

trial or law-abiding behavior before trial.'"). *E.g.*, EXHIBIT A, Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* 21 (Aug. 18, 2016) ("Our results suggest that money bail has a negligible effect or, if anything, increases failures to appear."); EXHIBIT B, Michael R. Jones, *Unsecured Bonds: The as Effective and Most Efficient Pretrial Release Option*, 11 (Oct. 2013) ("Whether released defendants are higher or lower risk or in-between, unsecured bonds offer the decision-makers same likelihood of court appearance as do secured bonds.").

[13] EXHIBIT C, Christopher T. Lowenkamp Ph.D et al., *The Hidden Costs of Pretrial Detention*, Laura & John Arnold Foundation, 19–20 (November 2013) ("Defendants detained pretrial were 1.3 times more likely to recidivate compared to defendants who were released at some point pending trial."), https://craftmediabucket.s3.amazonaws.com/uploads/PDFs/LJAF Report_hidden costs_ FNL.pdf.

**D.      Special District Judges Set Bail Amounts and Deprive Arrestees of Liberty Without Adequate Procedural Protections and Without Constitutionally Required Findings.**

95.     The Bail Setting Policy also deprives people of liberty without adequate procedural protections.  Under the Policy, Special District Judges use the preset bail schedule to automatically determine the amount of bail imposed upon a person arrested under a warrant.  Likewise, jail officials impose bail according to the bail schedule when booking arrestees following arrest.  These reflexively imposed bail amounts are largely adopted by Special District Judges as the bail amount at initial appearances and arraignments.

96.     An arrestee is never provided with any of the procedural protections that are required before a person can constitutionally be deprived of their liberty before trial: a hearing with counsel where the person can present and rebut evidence concerning allegations of flight risk or danger to the community; advance notice of the hearing; and individualized, reasoned written findings, by clear and convincing evidence, that no other non-financial release conditions could address any risk of flight or danger to the community.

**E.      The Bail Setting Policy Violates Indigent Arrestees' Right to Counsel Under the Sixth Amendment.**

97.     Canadian County's Bail Setting Policy also deprives indigent arrestees of defense counsel at a critical stage of prosecution and relatedly deprives them of an opportunity to present evidence or rebut evidence concerning allegations of flight risk or dangerousness.  The setting of bail has the power to severely prejudice the fairness of

subsequent criminal proceedings.  Bail proceedings can settle the fate of the person

accused and render subsequent proceedings a mere formality.  Unaffordable bail, in

particular, can induce plea bargains, which foreclose subsequent proceedings.  Bail

setting in Canadian County District Court is therefore a critical stage of the prosecution,

and the Sixth Amendment requires that arrestees have the benefit of counsel at such

proceedings.

>    **F.    Defendants' Bail Setting Policy Violates the ADA and the Rehabilitation Act**

98.    Defendants' policies and procedures violate the ADA and the

Rehabilitation Act.  Many arrestees have disabilities and cannot represent themselves in

court proceedings, particularly when such proceedings occur via videoconference.

Defendants fail to consider whether disabled arrestees require legal representation to have

an equal opportunity in court.  Defendants fail to consider whether disabled arrestees

require other reasonable modifications or effective communication services to participate

equally in initial appearances and arraignments, including extra time, quiet proceedings

or proceedings in person, simple language, and documents written in plain English.

Defendants fail to consider whether, as a result of their disabilities and the poverty

programs upon which disabled people rely (such as SSI), disabled arrestees are unable to

afford their bail.  Defendants fail to consider alternatives to bail for indigent disabled

arrestees who cannot pay bail.  Defendants fail to consider whether these arrestees pose

any risk of flight or danger to the community and further fail to consider whether any

such risks could be mitigated by reasonable modifications.  Defendants fail to consider

whether previous failures to appear or alleged technical violations were themselves a result of Defendants' failure to provide reasonable modifications such as reminders of court appearances or assistance with transportation.  As a result, these arrestees are denied an equal opportunity to be released pending trial.

G.    **By Holding Initial Appearances and Arraignments  in Judicial Chambers, Special District Judges are Denying Community Members Such as the NAACP of Oklahoma their First Amendment Right to Access Pretrial Proceedings.**

99.    Special District Judges conduct initial appearances and arraignments within the confines of their chambers, closed off from the public.  Special District Judges arraign in-custody arrestees via videoconference to the jail.  No attorneys or other witnesses are present.

100.    Plaintiff NAACP of Oklahoma, as well as the rest of the public, has a strong interest in being able to have access to and have confidence in the Canadian County judicial system which has the ability to detain people in jail who have not yet been convicted of a crime.  Further, the NAACP of Oklahoma is interested in the way people are treated in the criminal legal system, and is dedicated to educating members of the public about their constitutional rights.  The NAACP of Oklahoma wants to be able to observe initial appearances and arraignments to further that cause.

101.    Plaintiff NAACP of Oklahoma, through one of its members, attempted to attend an initial appearance and arraignment on December 9, 2019.  However, the NAACP of Oklahoma's member was denied access and told that arraignments are only

held on Tuesdays and Thursdays, and that he could not observe them because they are they are held in judicial chambers.

102.    The Defendants have no legitimate reason for shutting out the public, including its taxpayers from initial appearances and arraignments.

**H.    The Defendants are Liable for the Unconstitutional Bail Setting Policy.**

103.    The District Judges, make policy decisions about which arrestees are eligible for release, which ones are not eligible for bond, and about the amounts for the bail for all offenses.

104.    The Defendants' Bail Setting Policy has injured individual Plaintiffs by causing them lost wages, lost jobs, inability to care for their loved ones, and other unjustified harms.

105.    The Canadian County District Court could provide constitutionally adequate pretrial detention proceedings at initial appearances and arraignments that would be consistent with Oklahoma and federal law.  Instead, it continues to operate an unconstitutional pretrial detention system that discriminates against poor people, in particular poor people with disabilities, based on wealth.

## CLASS ACTION ALLEGATIONS

106.    The named individual Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit, Bradley Barber, Jr., and Dakota Kappus seek injunctive and declaratory relief, on behalf of themselves and all others similarly situated, under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.  With respect to Counts 1, 2, and 3, individual Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon

Proudfit, Bradley Barber, Jr., and Dakota Kappus seek to represent a primary class composed of all arrestees who are detained by Canadian County from the time of the filing of this Complaint through the final resolution of this case, for whom a secured financial condition of release has been set, without the presence of counsel, and who cannot afford the amount necessary for release on the secured money bail.  With respect to Counts 5 and 6, Plaintiffs Misty White and Janara Musgrave seek to represent a subclass (the "disability subclass") of all arrestees with a disability, as defined in the Americans with Disabilities Act and Rehabilitation Act, who are detained by Canadian County from the time of the filing of this Complaint through the final resolution of this case, for whom a secured financial condition of release has been set, without the presence of counsel, and who cannot afford the amount necessary for release on the secured money bail.

107.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.

### A.    Numerosity, Fed. R. Civ. P. 23(a)(1)

108.    The primary class and the subclass are so numerous as to render joinder of all members impracticable, and, joinder is further impracticable because the primary class and subclass include future members.

109.    In 2017, over 4,000 individuals were booked through the Canadian County Detention Center.[14]  Based on publicly available jail population data, during one week in

---

[14] https://www.ccsheriff.net/13/Detention-Facility.

November, 2019, 243 of the 294 (82.6%) individuals being held in the Canadian County Detention Center were in custody pretrial.  Moreover, the primary class consists of future members, rendering joinder even more impracticable.

110.    Joinder of the proposed disability subclass would also be impracticable.  In 2016, for example, 60% of individuals imprisoned in Oklahoma had symptoms or a history of mental illness.[15]  Moreover, the disability subclass consists of future members, rendering joinder even more impracticable.

### B.    Commonality, Fed. R. Civ. P. 23(a)(2)

111.    The relief sought for the primary class, and the disability subclass, is common to all members of the primary class and members of the subclass.  Common questions of law and fact exist as to all members of the primary class, and all members of the disability subclass.

112.    Plaintiffs seek a declaratory judgment that the Defendants' practice of conducting initial appearances and arraignments through the use of the Bail Setting Policy, and without defense counsel present, are unconstitutional, and an order enjoining them, on grounds that they violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Sixth Amendment right to counsel.  These practices apply openly and in materially the same manner every day with respect to all people arraigned in the Canadian County District Court.  Resolution of the legal and factual

---

[15] Jaclyn Cosgrove, *Epidemic Ignored*, The Oklahoman, (Nov. 13, 2016), http://oklahoman.com/special/article/5526388/epidemic-ignored-solutions-necessary-to-stop-oklahomans-from-funneling-into-jails-prisons-for-treatment.

issues raised by this Complaint will determine whether all members of the primary class, and the disability subclass, are entitled to the constitutional relief that they seek.

113.    Questions of fact common to the primary class include the following:

- Whether Defendants have a widespread, well-settled policy and practice of setting secured bail without adequate procedural protections including notice, an opportunity to present and contest evidence, appointment of counsel, reasoned findings based on clear and convincing evidence on the record that de facto pretrial detention unaffordable bail is the least restrictive means of mitigating an individual's flight risk or danger to the community;

- Whether Defendants conduct initial appearances and arraignments without the presence of counsel for the arrestee;

- Whether Defendants have a widespread, well-settled policy and practice of setting bail without inquiry into ability to pay or consideration of alternatives less restrictive than unaffordable bail;

- Whether Defendants' bail orders result in pretrial detention;

- Whether unaffordable bail undermines the fairness of plea bargaining or trial; and

- How long class members must wait in jail after arrest before they have an opportunity to raise their inability to pay for their release or to request alternative, non-financial conditions.

114.    Questions of law common to the primary class include the following:

- Whether imposing bail without adequate procedural protections including notice, an opportunity to present and contest evidence, appointment of counsel, and reasoned findings on the record that a de facto detention order through unaffordable bail is the least restrictive means of mitigating an individual's flight risk or danger to the community violates the Fourteenth Amendment's Due Process Clause;

- Whether imposing unaffordable bail without an ability to pay hearing violates the Fourteenth Amendment Equal Protection and Due Process Clauses; and

- Whether denying counsel at initial appearances and arraignments violates the Sixth Amendment right to counsel.

115.    Questions of fact common to the disability subclass include the following:

- Whether Defendants fail to consider whether, as a result of their disabilities and/or the poverty programs upon which disabled people rely (such as SSI), disabled arrestees are unable to afford their bail;

- Whether Defendants fail to consider whether disabled arrestees require reasonable modifications or effective communication services to participate equally in initial arraignments and appearances, including extra time, quiet proceedings or proceedings in person, simple language, and documents written in plain English;

- Whether Defendants have a policy and practice of denying court-appointed representation to disabled arrestees without considering whether they are able to represent themselves in court proceedings;

- Whether Defendants fail to consider whether disabled arrestees are qualified to be released without bail because, with or without reasonable modifications, they do not pose a risk of fleeing prosecution or danger to the community; and

- Whether Defendants fail to consider whether previous failures to appear or alleged technical violations were themselves a result of Defendants' failure to provide reasonable modifications such as reminders of court appearances, or assistance with transportation.

116.    Questions of law common to the disability subclass include the following:

- Whether the failure to consider whether, as a result of their disabilities and and/or the poverty programs upon which disabled people rely (such as SSI), disabled arrestees are unable to afford their bail, violates the ADA and the Rehabilitation Act;

- Whether the failure to consider whether disabled arrestees require reasonable modifications or effective communication services to participate equally in initial  appearances and arraignments, including extra time, quiet proceedings or proceedings in person, simple language, and documents written in plain English, violates the ADA and the Rehabilitation Act;

- Whether denying court-appointed counsel to such arrestees who cannot represent themselves violates the ADA and the Rehabilitation Act; and

- Whether the failure to consider alternatives to bail for disabled arrestees who are qualified for pretrial release, with or without reasonable accommodations, violates the ADA and the Rehabilitation Act.

### C.  Typicality, Fed. R. Civ. P. 23(a)(3)

117.  The named Plaintiffs' claims are typical of the claims of the other members of the proposed primary class and subclass.  Each class member suffers, or suffered, the same injury because Defendants do not comply with constitutional requirements: primary class members are arraigned under the Defendants' Bail Setting Policy, without counsel present, at a proceeding during which they were not afforded the opportunity to present evidence, and their individual flight risk and dangerousness were not adequately considered, and they are confined in jail because they could not afford to pay the bail amount that was set in their case.  The disability subclass members are all subjected to the Defendants' policies and procedures regarding bail setting, without consideration of alternatives to bail that would accommodate their disabilities and grant an equal opportunity for pretrial release.

118.  The constitutional deprivations suffered by named Plaintiffs are the same as those of putative primary and subclass members.

### D.  Adequacy, Fed. R. Civ. P. 23(a)(4)

119.  The named Plaintiffs are adequate representatives of the primary class and subclass because they have suffered the same constitutional harms being inflicted on

40

similarly-situated individuals who are arraigned under the Defendants' Bail Setting Policy, and because their interests in the vindication of the legal claims they raise are aligned with the interests of the other primary class and subclass members.

120. The named Plaintiffs are members of the primary class and subclass, and there are no known conflicts of interest among members of the proposed primary class and subclass.

121. Plaintiffs are represented by attorneys from the American Civil Liberties Union Foundation, the American Civil Liberties Union of Oklahoma Foundation, Covington & Burling LLP, and Overman Legal Group, PLLC.  Counsel have extensive combined experience litigating class actions and complex civil rights matters in federal court and extensive knowledge of the details of the Canadian County's Bail Setting Policy and the relevant constitutional and statutory law.  Counsel include litigators who have specific experience with these types of claims, having litigated similar issues in class action lawsuits in other fora around the country.  Counsels' qualifications to serve as Class Counsel are set forth in the pending Motion for Class Certification filed concurrently with this complaint.

122. The interests of the members of the proposed class and subclass will be fairly and adequately protected by the named Plaintiffs and their attorneys.

**E.     Injunctive and Declaratory Relief Are Appropriate, Fed. R. Civ. P. 23(b)(2)**

123.     Class-action status under Rule 23(b)(2) is appropriate because the Defendants, through the Bail Setting Policy, have acted in the same unconstitutional manner with respect to all primary class and subclass members.

124.     On behalf of the primary class, Plaintiffs seek declaratory and injunctive relief: prohibiting Defendants from continuing to follow their Bail Setting Policy, prohibiting Defendants from continuing to impose unaffordable bail amounts without providing advance notice of the rights at stake, the opportunity to present or contest evidence, or a written record of reasoned findings by clear and convincing evidence that bail in the amount set is the least restrictive means of achieving a valid and compelling government interest, and requiring adequate procedures and appointment of counsel at initial appearances and arraignments.  The relief sought is appropriate for the primary class as a whole.

125.     On behalf of the disability subclass, Plaintiffs seek declaratory and injunctive relief prohibiting Defendants from continuing to impose unaffordable bail amounts for disabled indigent arrestees who are qualified for pretrial release, with or without reasonable modifications.  Plaintiffs further seek declaratory and injunctive relief requiring Defendants to provide court-appointed counsel to those indigent disabled arrestees who cannot represent themselves in court proceedings.  The relief sought is appropriate for the disability subclass as a whole.

## CLAIMS FOR RELIEF

### COUNT ONE
### 42 U.S.C. § 1983
### Violation of the Equal Protection and Due Process Clauses:
### Wealth-Based Discriminatory Detention
### On Behalf of All Plaintiffs Against All Individual Defendants

126.    Plaintiffs incorporate all of the allegations above.

127.    Under the Bail Setting Policy, Defendants cause Plaintiffs to be jailed because they are unable to pay bail amounts that are automatically imposed on them, while releasing otherwise similarly-situated individuals who can afford to pay their bail.

128.    Defendants set unaffordable bail amounts without: (1) conducting an inquiry into or making findings on the record based on clear and convincing evidence concerning an arrestee's ability to pay; (2) considering whether there are less restrictive, alternate means of achieving a compelling government interest; and (3) determining that detention is necessary notwithstanding and arrestee's inability to pay.

129.    Defendants' wealth-based Bail Setting Policy violates Plaintiffs' and the members of the Detention subclass' rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution.

### COUNT TWO
### 42 U.S.C. § 1983
### Violation of Procedural and Substantive Due Process:
### Failure to Provide Adequate Hearings Before Depriving Plaintiffs of a Guaranteed
### Liberty Interest; Unjustified Pretrial Detention
### On Behalf of All Plaintiffs Against All Individual Defendants

130.    Plaintiffs incorporate all of the allegations above.

131.    Under the Bail Setting Policy, Defendants set unaffordable bail under a bail schedule in initial appearances and arraignments lasting less than a few minutes for each person.  Defendants then continue to jail people who are unable to pay their bail, depriving them of their pretrial liberty.

132.    These unaffordable bail amounts function as de facto pretrial detention orders.  Defendants set these unaffordable bail amounts without making a substantive finding, subject to heightened scrutiny, that detention is necessary because there is no other less restrictive condition or combination of conditions that would achieve the compelling government interests in preventing flight or danger to the community.

133.    This practice fails to adequately justify the pretrial deprivation of liberty of an arrested person, and violates Plaintiffs' right to substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

134.    Due Process also demands that, prior to issuing a detention order, the government must provide certain procedural protections to ensure the accuracy and reliability of the requisite finding of necessity, such as advance notice of the rights at stake and a prompt, individualized hearing with counsel at which an individual may only be incarcerated if a neutral decision-maker makes a finding on the record, by clear and convincing evidence, that no less restrictive alternatives would be sufficient to reasonably advance the purposes of bail.

135.    Defendants violate Plaintiffs' and all primary class members' right to the procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution by detaining individuals after cursory initial appearances and arraignments

that do not provide any of the procedural protections required before the government may deprive an individual of pretrial liberty.

## COUNT THREE
## 42 U.S.C. § 1983
### Violation of Sixth Amendment Right to Counsel:
### Failure to Provide Counsel at a Critical Stage
### On Behalf of All Plaintiffs Against All Individual Defendants

136.    Plaintiffs incorporate all of the allegations above.

137.    Under the Bail Setting Policy, Defendants jail arrestees after conducting initial appearances and arraignments and setting bail without defense counsel present.

138.    The Sixth Amendment to the United States Constitution, incorporated against the States by the Fourteenth Amendment, guarantees defendants the right to counsel at each critical stage of prosecution.  Critical stages include all pretrial hearings that may prejudice the fairness of subsequent criminal proceedings.

139.    The setting of bail has the power to severely prejudice the fairness of subsequent criminal proceedings.  Bail hearings can settle the fate of the person accused and render subsequent proceedings a mere formality.  Unaffordable bail, in particular, can induce plea bargains, which would foreclose subsequent proceedings in the case. Bail setting in Canadian County District Court is therefore a critical stage of the prosecution, and the Sixth Amendment requires that arrestees have the benefit of counsel at such proceedings.  By setting Plaintiffs' bail without first appointing defense counsel to represent and assist them, Defendants violate Plaintiffs', and all primary class and subclass members', right to counsel guaranteed by the Sixth Amendment to the United States.

## COUNT FOUR
### 42 U.S.C. § 1983
### Violation of First Amendment Right to Open Courts:
### Failure to Provide Public With Access to Bail Determinations
### On Behalf of All Plaintiffs Against All Individual Defendants

140.    Plaintiffs incorporate all of the allegations above.

141.    Bail determinations for people in jail in Canadian County are held in

judicial chambers via videoconference between a Special District Judge and the arrestee.

142.    The Defendants' failure to conduct these proceedings in open court denies

the public access to a pretrial proceeding, in violation of the First Amendment to the

United States Constitution.

## COUNT FIVE
### Discrimination On The Basis Of Disability
### In Violation Of Title II Of The ADA
### (42 U.S.C. § 12131, *et seq.*)
### On behalf of Plaintiffs White and Musgrave Against All Defendants

143.    Plaintiffs incorporate all of the allegations above.

144.    Title II of the ADA requires that public entities refrain from discriminating

against qualified individuals on the basis of disability.  42 U.S.C. § 12132.  The

regulations implementing Title II of the ADA require that public entities avoid

unnecessary policies, practices, criteria or methods of administration that have the effect

of excluding or discriminating against persons with disabilities.  28 C.F.R. §

35.130(b)(3), (8).  Further, a public entity must "make reasonable modifications in

policies, practices, or procedures when the modifications are necessary to avoid

discrimination on the basis of disability, unless the public entity can demonstrate that

making the modifications would fundamentally alter the natures of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

145.    Plaintiffs are individuals with disabilities for purposes of the ADA, 42 U.S.C. § 12102. They are "qualified" for the programs, services, and activities being challenged herein, 42 U.S.C. § 12131(2).

146.    Defendants are violating Title II of the ADA by administering a bail policy that does not take into consideration an individual's disability, does not provide the modifications or effective communication services that the person may need to participate equally in the initial appearance or arraignment proceedings, and does not offer alternatives to bail for arrestees with disabilities. Defendants are further violating Title II of the ADA by denying court-appointed representation to such disabled arrestees who are unable to represent themselves in court proceedings. Defendants are further violating Title II of the ADA by failing to release indigent disabled arrestees who, with or without reasonable modifications, do not pose a risk of flight or danger to others. Defendants are further violating Title II of the ADA by failing to consider whether previous failures to appear, failures to pay, or other alleged technical violations were themselves a result of Defendants' failures to provide reasonable modifications or to consider arrestees' poverty. As a result, indigent arrestees with disabilities are denied an equal opportunity for pretrial release, and instead remain incarcerated, often experiencing a worsening of their disability-related symptoms.

**COUNT SIX**
**Discrimination On The Basis Of Disability**
**In Violation Of Section 504 of the Rehabilitation Act**
**(29 U.S.C. § 794)**
**On behalf of Plaintiffs White and Musgrave Against All Defendants**

147.    Plaintiffs incorporate all of the allegations above.

148.    Section 504 of the Rehabilitation Act states that no qualified individual with a disability in the United States . . . shall, solely by reason of [] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.  29 U.S.C. § 794(a).  The regulations implementing Section 504 of the Rehabilitation Act require that entities receiving federal financial assistance avoid unnecessary policies, practices, criteria or methods of administration that have the effect of discriminating against persons with disabilities.  28 C.F.R. § 41.51(b)(3)(i).

149.    Upon information and belief, Defendants receive "Federal financial assistance" within the meaning of 29 U.S.C. § 794(a).

150.    Plaintiffs are individuals with disabilities for purposes of the Rehabilitation Act, 42 U.S.C. § 12102.  29 U.S.C. § 705(20)(B).  They are "qualified" for the programs, services, and activities being challenged herein.

151.    Defendants are violating Section 504 of the Rehabilitation Act by administering a bail policy that does not take into consideration an individual's disability, does not provide the modifications or effective communication services that the person may need to participate equally in the initial appearance or arraignment proceedings, and does not offer alternatives to bail for arrestees with disabilities.  Defendants are further

violating Section 504 of the Rehabilitation Act by denying court-appointed representation to such disabled arrestees who are unable to represent themselves in court proceedings. Defendants are further violating Section 504 of the Rehabilitation Act by failing to release indigent disabled arrestees who, with or without reasonable modifications, do not pose a risk of flight or danger to others.  Defendants are further violating Section 504 of the Rehabilitation Act by failing to consider whether previous failures to appear, failures to pay, or other alleged technical violations were themselves a result of Defendants' failures to provide reasonable modifications or to consider arrestees' poverty.  As a result, arrestees with disabilities and unaffordable bail are denied an equal opportunity for pretrial release, and instead remain incarcerated, often experiencing a worsening of their disability-related symptoms.

## RELIEF REQUESTED

Plaintiffs request that this Court issue the following relief:

1.     Assert jurisdiction over this action;

2.     An order certifying the primary class and disability subclass, defined above;

3.     An order entering judgment in favor of Plaintiffs and against Defendants;

4.     A declaratory judgment that the Bail Setting Policy violates Plaintiffs' rights to equal protection, substantive and procedural due process, right to counsel, and right to open courts as set forth above;

5.     A permanent injunction prohibiting the Special District Judge Defendants and District Judge Defendants from maintaining the Bail Setting Policy

49

described above, and from failing to provide a prompt bail hearing with constitutionally adequate findings and procedures.  Such hearings must occur promptly after arrest and include:

a.      Advance written notice to the arrestee of the factors to be considered in setting bail, and in particular notice that evidence of ability to pay is relevant to the setting of bail conditions;

b.      A meaningful, individualized inquiry into ability to pay;

c.      Appointment and presence of counsel for the hearing for any arrestee who cannot afford to retain counsel;

d.      If the court is considering a de facto denial of bail by setting unaffordable bail as the result of clear and convincing evidence that the arrestee presents an unmanageable flight risk or an identifiable and articulable danger to the community, the arrestee must have notice of the evidence in question and an opportunity to testify, present her own evidence, and rebut the evidence against her;

e.      Reasoned written findings, on the record, of the arrestee's ability to pay; and

f.      If a de facto denial of bail by setting unaffordable bail is to be imposed, the court must issue reasoned written findings, on the record and by clear and convincing evidence, that detention is necessary because there is no other less restrictive means of mitigating the arrestee's unmanageable risk of flight or an

identifiable and articulable danger to an individual or the community.

6.     A permanent injunction prohibiting the Special District Judge Defendants and District Judges from conducting initial appearances and arraignments and making bail determinations in proceedings that are inaccessible to the public;

7.     A permanent injunction directing the Special District Judge Defendants and District Judges to adopt a policy of nondiscrimination and the provision of reasonable modifications for arrestees with disabilities participating in initial appearances, arraignments, and bail settings, including:

    a.     Effective communication at and about appearances, arraignments, and bail setting, including the notices described in Section 5(a) and (d);

    b.     A meaningful, individualized inquiry into ability to pay, including consideration of the disability-related limitations upon ability to pay;

    c.     Appointment and presence of counsel for the hearing for any arrestee with a disability who requires counsel to have an equal opportunity to meaningfully participate in appearances, arraignments, and bail settings;

    d.     If a de facto denial of bail by setting unaffordable bail is to be imposed, the court must issue reasoned written findings on the record and by clear and convincing evidence, and taking reasonable

modifications into account (such as reminders of court hearings), that detention is necessary because there is no other less restrictive means of mitigating the arrestee's unmanageable risk of flight or an identifiable and articulable danger to an individual or the community, and if de facto denial of bail is to be imposed based on previous failures to appear, failure to pay, or failure to comply with other technical requirements, the court must consider whether such violation(s) were themselves the result of failure by Defendants to make reasonable modifications, and, if so, to disregard that history in evaluation of flight risk;

e.    Reasoned written findings, on the record, of the arrestee's ability to pay, including any disability-related limitations on ability to pay;

f.    Any other reasonable modifications necessary for disabled arrestees to have an equal opportunity to participate in appearances, arraignments, and bail settings, including but not limited to in-person encounters (appearances, arraignments, and bail settings), extra time, quiet settings, and simple language to ensure disabled arrestees can understand and participate equally in proceedings.

8.    An order granting reasonable attorneys' fees and costs under 29 U.S.C. § 794a, 42 U.S.C. § 1988, and 42 U.S.C. § 12133;

9.    Reasonable service awards for named Plaintiffs; and

10.   Any other relief this Court deems just and proper.

Respectfully Submitted,

/s/ Twyla Carter
(Signed by Filing Attorney with permission
of Attorney)
Twyla Carter*
Washington State Bar Number: 39405
Brandon J. Buskey*
Alabama Bar Number: ASB2753-A50B
American Civil Liberties Union
  Foundation, Criminal Law Reform
  Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tcarter@aclu.org
bbuskey@aclu.org

/s/ Claudia Center
(Signed by Filing Attorney with permission
of Attorney)
Claudia Center*
California Bar Number: 158255
Zoe Brennan-Krohn*
California Bar Number: 324912
American Civil Liberties Union
  Foundation, Disability Rights Program
39 Drumm Street
San Francisco, CA 94111
(415) 343-0762
ccenter@aclu.org
zbrennan-krohn@aclu.org

/s/ Megan Lambert
Megan Lambert
Oklahoma Bar Number: 33216
Ryan Kiesel
Oklahoma Bar Number: 21254
Michael Redman
Oklahoma Bar Number: 13340
American Civil Liberties Union of
  Oklahoma Foundation

/s/ Aaron Lewis
(Signed by Filing Attorney with permission
of Attorney)
Aaron Lewis*
California Bar Number: 284244
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800
alewis@cov.com

Amia Trigg*
District of Columbia Bar Number: 1023003
Marta Cook*
District of Columbia Bar Number: 1045613
Laura Beth Cohen*
Michigan Bar Number: P83111
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4656
(202) 662-6000
atrigg@cov.com
mcook@cov.com
lcohen@cov.com

P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
rkiesel@acluok.org
mredman@acluok.org

/s/ Blake Johnson
(Signed by Filing Attorney with permission
of Attorney)
Blake Johnson
Oklahoma Bar Number: 32433
Tyler Box
Oklahoma Bar Number: 31817
Weston Watts
Oklahoma Bar Number: 33299
Justin Williams
Oklahoma Bar Number: 32539
Clayburn Curtis
Oklahoma Bar Number: 30538
Overman Legal Group, PLLC
809 NW 36th St.
Oklahoma City, OK 73118
(405) 605-6718
blakejohnson@overmanlegal.com
tylerbox@overmanlegal.com
westonwatts@overmanlegal.com
justinwilliams@overmanlegal.com
claycurtis@overmanlegal.com
ATTORNEYS FOR PLAINTIFFS

*Applications for admission pro hac vice pending


Dated: December 10, 2019

## CERTIFICATE OF SERVICE

I affirm that this motion for class certification and supporting brief will be served concurrently with the service of the Summons and Complaint in this matter.


/s/ Amia L. Trigg
Amia L. Trigg

## INDEX OF EXHIBITS

Exhibit A: Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* (May 2, 2016)

Exhibit B: Michael R. Jones, *Unsecured Bonds: The As Effective and Most Efficient Pretrial Release Option* (October 2013)

Exhibit C: Christopher T. Lowenkamp, Marie VonNostrand, & Alexander Holsinger, *The Hidden Costs of Pretrial Detention*, Laura & John Arnold Foundation (November 2013)