# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

_____

[1] MISTY WHITE, )
[2] JERMAINE BRADFORD, )
[3] JANARA MUSGRAVE, )
[4] LANDON PROUDFIT, )
[5] BRADLEY BARBER, JR., and )
[6] DAKOTA KAPPUS, )
)
    On behalf of themselves and all )
others similarly situated, and )
)
[7] OKLAHOMA STATE )    Case No. <u>CIV-19-1145-R</u>
CONFERENCE, NAACP, )    (Class Action)
)
    Plaintiffs, )
)
v. )
)
[1] HON. PAUL HESSE, in his official )
capacity as presiding District Court )
Judge, )
[2] HON. JACK MCCURDY, )
in his official capacity as District Court )
Judge, )
[3] HON. BARBARA HATFIELD, )
[4] HON. CHARLES GASS, )
[5] HON. KHRISTAN STRUBHAR, in their )
official capacities as Special District )
Judges in the Canadian County District )
Court, and )
[6] CANADIAN COUNTY DISTRICT )
COURT, 26TH JUDICIAL DISTRICT, )
)
    Defendants. )
_____ )

# PLAINTIFFS' BRIEF IN SUPPORT
## OF MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND AND FACTS ............................................................................. 4

I.      Plaintiffs Are Detained as a Result of Nonpublic Initial
        Appearances/Arraignments Conducted Off the Record and Without Any
        Individualized Findings. ........................................................................... 4

II.     Plaintiffs Did Not Have the Constitutionally Guaranteed Right to
        Assistance of Counsel During Their Initial Appearances/Arraignments. ................ 6

III.    Plaintiffs Are Subject to Wealth-Based Detention. ................................. 7

IV.     Plaintiffs With Disabilities Are Denied Their Rights Under the ADA and
        the Rehabilitation Act. .............................................................................. 8

V.      Plaintiffs Seek Class-Wide Prospective Relief. .................................... 10

ARGUMENT ........................................................................................................ 10

I.      The Proposed Class and Subclass Are so Numerous That Joinder of all
        Proposed Class Members is Impracticable. ........................................... 12

II.     Claims by the Proposed Class and Subclass Raise Common Questions ................ 15

III.    The Named Plaintiffs' Claims are Typical of the Claims of the Proposed
        Class and Subclass. ................................................................................ 20

IV.     The Named Plaintiffs are Competent and Dedicated Class Representatives. ........ 21

V.      Certification for Prospective Relief is Proper Under Rule 23(b)(2). ..................... 22

VI.     Plaintiffs' Counsel Should Be Appointed Class Counsel Under Rule 23(g). ........ 24

CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................ 22, 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
  568 U.S. 455 (2013) ...................................................................................... 12

*Arks Ed. Ass'n v. Board of Ed. of Portland, Ark. School Dist.,*
  446 F. 2d 763 (8th Cir. 1971) ...................................................................... 15

*Barker v. Wingo,*
  407 U.S. 514 (1972) ........................................................................................ 3

*Barton v. Corrections Corp. of America,*
  No. 03-cv-428-JHP-SAJ, 2005 WL 5329514 (N.D. Okla. Sept. 1, 2005).................. 15

*Booth v. Galveston Cty.,*
  No. 18-cv-00104, 2019 WL 1129492 (S.D. Tex. Mar. 12, 2019) ............................. 11

*Braggs v. Dunn,*
  317 F.R.D. 634 (M.D. Ala. 2016) ................................................................ 11

*Buffin v. City of San Francisco,*
  No. 15-cv-04959-YGR, 2018 WL 1070892 (N.D. Cal. Feb. 26, 2018) ............... 11, 16

*Bumgarner v. NCDOC,*
  276 F.R.D. 452 (E.D.N.C. 2011) ................................................................ 11

*Carey v. Greyhound Bus Co., Inc.,*
  500 F.2d 1372 (5th Cir. 1974) .................................................................... 15

*Chieftain Royalty Co. v. QEP Energy Co.,*
  281 F.R.D. 499 (W.D. Okla. 2012)............................................................... 20

*Cmtys. for Equity v. Michigan High School Athletic Ass'n,*
  192 F.R.D. 568 (W.D. Mich. 1999) ............................................................ 24

*In re Cox Enters. Inc.,*
  No. 12-ML-2048-C 2014 WL 104964 (W.D. Okla. Jan. 9, 2014) ............................. 20

*Davy v. Sullivan*,
   354 F. Supp. 1320 (M.D. Ala. 1973) ........................................................................... 15

*Disability Law Ctr. v. Utah*,
   No. 2:15-CV-00645-RJS, 2016 WL 5396681 (D. Utah Sept. 27, 2016) ..................... 11

*Doe v. Charleston Area Med. Ctr., Inc.*
   529 F.2d 638 (4th Cir. 1975) ..................................................................................... 15

*Dunn v. Dunn*,
   318 F.R.D. 652 (M.D. Ala. 2016) ............................................................................... 11

*Edwards v. Cofield*,
   No. 3:17-CV-321, 2018 WL 4323920 (M.D. Ala. Sept. 10, 2018) ............................. 11

*Fabian v. Independent School Dist. No. 89 of Oklahoma Cty, Okla.*,
   409 F. Supp. 94 (W.D. Okla. 1976) ............................................................................ 15

*Henderson v. Thomas*,
   289 F.R.D. 506 (M.D. Ala. 2012) ............................................................................... 11

*Hiatt v. Cty. of Adams, Ohio*,
   155 F.R.D. 605 (S.D. Ohio 1994) ............................................................................... 24

*Hill v. Marathon Oil Co.*,
   No. civ-08-37-R, 2010 WL 2365447 (W.D. Okla. June 9, 2010) ............................... 15

*Horn v. Associated Wholesale Grocers, Inc.*,
   555 F.2d 270 (10th Cir. 1977) ............................................................................ 12, 15

*Johnson v. City of Opelousas*,
   658 F.2d 1065 (5th Cir. 1981) ................................................................................... 11

*Jones v. Diamond*,
   519, F.2d 1090, 1100 (5th Cir. 1975) ........................................................................ 11

*Baby Neal ex rel. Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994) .......................................................................................... 23

*Lewis v. Cain*,
   324 F.R.D. 159 (M.D. La. 2018) ................................................................................ 11

*ODonnell v. Harris Cty.*,
   No. H-16-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017) ............................ 11, 16

*Realmonte v. Reeves*,
    169 F.3d 1280 (10th Cir. 1999) ................................................................. 16

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ................................................................. 21

*Senter v. General Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) .................................................................... 13

*Shook v. El Paso Cty.*,
    386 F.3d 963 (10th Cir. 2004) ................................................................... 23

*DG* ex rel. *Stricklin v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ........................................................... 12, 20

*Trevizo v. Adams*,
    455 F.3d 1155 (10th Cir. 2006) ................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................... 16, 22, 23

*In re Williams Companies ERISA Litigation*,
    231 F.R.D. 416 (N.D. Okla. 2005) ............................................................. 12

## Statutes

Fed. R. Civ. P. 23 ...................................................................................*passim*

## INTRODUCTION

Named Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit, Bradley Barber, Jr., and Dakota Kappus seek to certify a class and a subclass to challenge Canadian County District Court's bail system.  In Canadian County District Court, bail is set for arrestees at initial appearances (or arraignments if formal charges have been filed) conducted in judicial chambers, inaccessible to the public.  The judges who preside at these proceedings routinely impose unaffordable bail on arrestees, who appear without counsel, without any inquiry about whether they can afford the bail amounts on the published bail schedule ("the Bail Setting Policy").  The presiding judges do not make findings on the record about whether there is any risk that an arrestee might flee prosecution or pose a danger to others, and, if there is such a risk, whether it could be managed by a less restrictive option than prolonged deprivation of liberty pending trial. The judges fail to consider the disabilities of the arrestees, and whether any disabled arrestees require reasonable modifications to have an equal opportunity to participate in the proceeding or to qualify for release.  As a result of the deeply unfair and unconstitutional policies underlying these decisions, wealthy arrestees can walk free from Canadian County Detention Center, while poor arrestees who pose no risk of flight or danger languish in jail, solely because they cannot buy their freedom.  Compounding this injustice, those who improbably find a way to bail out forfeit their court-appointed counsel and are forced to pay another $40 application fee and re-prove their indigency or else attempt to vindicate their innocence pro se.

The result of this scheme is an unconstitutional system of wealth-based pretrial detention unaccompanied by the protections required by the Constitution and federal disability laws.  The ramifications are profound.  Those detained pretrial are more likely to be convicted.[1]  They plead guilty simply to return to their lives and to regain their freedom.[2]  This has a compounding effect.  An existing conviction makes it more difficult to find work, more difficult to find housing, and leads to more frequent interactions with law enforcement.[3]  The detention itself massively disrupts the lives of the detained.  "The time spent in jail awaiting trial has a detrimental impact on the individual.  It often means loss of a job; it disrupts family life; and it enforces idleness.  Most jails offer little or no recreational or rehabilitative programs.  The time spent in jail is simply dead time."  *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972).  Even short periods of pretrial detention

---

[1] *See* Christopher T. Lowenkamp, Marie VanNostrand & Alexander Holsinger, Laura & John Arnold Foundation,  *Investigating the Impact of Pretrial Detention on Sentencing Outcomes*, at pp. 10–11 (2013) (finding that people detained until case disposition are 4.44 times more likely to be sentenced to jail and 3.32 times more likely to be sentenced to prison), *available at* https://craftmediabucket.s3.amazonaws.com/uploads/PDFs/LJAF _Report_statesentencing_FNL.pdf; *see also* Mary T. Philips, New York City Crim. Justice Agency, Inc., *Pretrial Detention and Case Outcomes, Part 1: Nonfelony Cases*, at pp. 25–29 (2007) (finding conviction rate jumps from 50% for people released immediately pretrial, to 92% for people detained until case disposition).

[2] *See* Will Dobbie, Jacob Goldin, & Crystal S. Yang, *The Effects of Pretrial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108 Am. Econ. Rev. 201 (2018) ("Forty-four percent of initially detained defendants plead guilty compared to just 20.7 percent of initially released defendants.") *available at* https://pubs.aeaweb.org/doi/pdfplus/10.1257/aer.20161503.

[3] *Id.* at 235 ("We find suggestive evidence that in the first two years after the bail hearing, pre-trial release increases the joint probability of not being arrested and of being employed, although our estimates are not precisely estimated. Similarly, we find an increase in the joint probability of not being rearrested and being employed in the third to fourth years after the bail hearing. These results indicate that decreases in future crime may be driven by the same defendants who are employed, suggesting that pre-trial release may decrease future crime through the channel of increased labor market attachment.").

can spin a person's life into chaos.  In Canadian County, the median jail stay for people accused of a non-violent misdemeanor is 36 days; for people accused of a non-violent felony, it is 69 days.[4]

Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit, Bradley Barber, Jr., and Dakota Kappus, seek to represent a primary class of all arrestees who are detained by Canadian County from the time of the filing of the Complaint through the final resolution of this case, for whom a secured financial condition of release has been set, without the presence of counsel, and who cannot afford the amount necessary for release on the secured money bail.

Plaintiffs Misty White and Janara Musgrave seek to represent a subclass of all arrestees with a disability, as defined in the Americans with Disabilities Act and Rehabilitation Act, who are detained by Canadian County from the time of the filing of the Complaint through the final resolution of this case, for whom a secured financial condition of release has been set, without the presence of counsel, and who cannot afford the amount necessary for release on the secured money bail.

Plaintiffs seek injunctive and declaratory relief from these constitutional and statutory violations.  Class certification is necessary and appropriate in this case because resolving Plaintiffs' claims requires answering common questions of law and fact regarding what occurs at the closed initial appearances and arraignments; whether the judges' failure to make individualized findings, supported by clear and convincing

---

[4] Ex. 1 at 2.

evidence, on the record is procedurally inadequate and unconstitutional; whether initial appearances and arraignments are "critical stages" for the purpose of the Sixth Amendment; whether Canadian County District Court's wealth-based detention system violates the Equal Protection clause, and whether Canadian County District Court's practices and procedures with respect to bail violate the ADA and the Rehabilitation Act.

The class mechanism is the only way to resolve these questions.  The Plaintiffs are too numerous for their claims to be efficiently heard individually.  Named Plaintiffs are ready and eager to represent the class to vindicate these rights.  Plaintiffs are represented by the American Civil Liberties Union Foundation ("ACLU"), the American Civil Liberties Union of Oklahoma Foundation ("ACLU-OK"), Covington & Burling LLP, and Overman Legal Group, PLLC, who have extensive experience litigating the type of claims Plaintiffs allege.

## BACKGROUND AND FACTS

### I.      Plaintiffs Are Detained as a Result of Nonpublic Initial Appearances/Arraignments Conducted Off the Record and Without Any Individualized Findings.

Defendants conduct initial appearances and arraignments in accordance with a Bail Setting Policy wherein Defendants preside over in-custody initial appearances and arraignments in the Canadian County District Court that are generally not open to the public.  Defendants conduct these hearings from chambers and the arrestees appear via videoconference.  Impoverished arrestees are not represented by counsel.  The judge neither inquires nor makes any findings about the individual's dangerousness to the community, risk of flight, or ability to pay bail.  The judge does not consider whether the

individual has a disability or needs reasonable modifications.  The judge automatically imposes a bail amount based on a fixed schedule that was promulgated by Presiding District Court Judge Paul Hesse.  The bail schedule instructs Special District Judges to set monetary bail amounts based solely on the nature of the alleged offense and the residency of the accused.[5]

Named Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit, Bradley Barber, Jr., and Dakota Kappus were all arraigned in Canadian County, as long as three weeks after their arrest.  Exs. 3–13.  The arraignments lasted five minutes or less.  *Id.*  They spoke to the judge sitting in chambers through a phone while on videoconference in a visitation room at the jail.  *Id.*  It was difficult to hear and understand the judge.  Exs. 3–11.  The judges did not ask any questions about the Named Plaintiffs' ability to pay bond; they did not ask about expenses or about whether they receive benefits.  *Id.*  The judges did not ask any questions about the Named Plaintiffs' risk of flight; they did not ask about ties to the community or ability to flee.  *Id.*  The judges did not inquire about whether the Named Plaintiffs are a danger to others.  *Id.*  The judges did not inquire about or make any attempt to consider or accommodate Ms. Musgrave or Ms. White's disabilities during their bail proceedings.  Exs. 3, 7.  There were no explanations for the bail amount imposed.  Exs. 3–13.

---

[5] *See generally* Ex. 2.

## II.     Plaintiffs Did Not Have the Constitutionally Guaranteed Right to Assistance of Counsel During Their Initial Appearances/Arraignments.

Canadian County does not provide legal representation to poor arrestees during initial appearances or arraignments.  Plaintiffs were forced to navigate initial appearances and arraignments at which their liberty was at stake without legal advice or guidance.  They had no one to present evidence related to pretrial release conditions on their behalf; no ability to rebut any evidence considered by the Special District Judge; and no ability to make legal arguments.

To obtain a court appointed attorney, indigent arrestees must fill out an application and pay a $40 application fee.  On the application, the arrestee must list the names of three attorneys he or she has contacted and must have the application notarized.  If the arrestee manages to bond out, even if they use a bail bondsman, the state presumes they can hire their own attorney, the previously appointed attorney is removed from the case and the indigent arrestee must file a new application and pay another $40.[6]

None of the Named Plaintiffs can afford to pay their bail.  Exs. 3–13.  Even if they could, many fear that if they bond out they will lose their possibility of having counsel appointed.  Exs. 7, 11.  None of the Named Plaintiffs were represented at their initial appearances or arraignments.  Exs. 3–13.  None of the Named Plaintiffs can afford a private lawyer.  *Id.*  Many cannot even afford the $40 application fee to apply to be represented by appointed counsel.  Exs. 3, 7, 13.  They were not able to contact three lawyers and have the application notarized because they are in jail.  Exs. 7, 9, 11, 13.

---

[6] Ex. 15.

During the proceeding, they did not know whether they could ask questions and wanted the help of a lawyer.  Exs. 7, 5, 11, 13.

### III.    Plaintiffs Are Subject to Wealth-Based Detention.

The sole reason the Named Plaintiffs and their fellow class members sit in jail is because they cannot afford to pay bail.  Bail was set without regard to their ability to pay.  Exs. 3–13.  Due to their inability to afford the bail set in their cases, the bail orders amount to de facto detention orders.  These orders were entered without an individualized consideration and were not supported by clear and convincing evidence of whether Plaintiffs pose a flight risk or whether they are a danger to the community.  In fact, under Defendants' wealth-based system of pretrial detention, even if an arrestee presented a danger to the community, the arrestee would walk free if he or she could pay the imposed bail amount.

All Named Plaintiffs are impoverished.  Ms. Musgrave was making $10.30 per hour working at Carl's Jr., a job she has likely lost because she is in jail.  Ex. 7 ¶¶ 18, 24.  Before her arrest, she took home barely enough to pay rent, utilities, food, medication, and gas; she has no savings.  Ex. 7 ¶ 18.  She was planning to use her upcoming paid time off from Carl's Jr. to work a second job to make some extra money.  Ex. 7 ¶ 24.

Ms. White cannot afford to pay the bail that was imposed on her.  Ex. 3 ¶ 14.  She was not employed at the time of her arrest.  Ex. 3 ¶ 22.  She is behind on her bills and does not have any savings.  *Id.*  At the time of his arrest, Mr. Barber was unemployed due to being laid off three months ago; he missed restarting his job because he was in jail.  Ex. 11 ¶¶ 21, 28.  Mr. Kappus was also unemployed at the time of his arrest.  Ex. 13 ¶ 11.

Before being arrested, Mr. Bradford made money by working odd jobs.  Ex. 5 ¶ 7.

Mr. Bradford estimated that he made about $500 per month.  *Id.*  He lives with his

girlfriend, who receives disability insurance income.  *Id.*  Their monthly rent and bills

amount to about $900 per month.  *Id.*  After paying their expenses, they have little to no

money left over.  *Id.*  Mr. Bradford does not have any savings.  *Id.*

Mr. Proudfit has not had stable employment since June of 2018.  Ex. 9 ¶ 13.  He

lives with his wife, and she pays all of their living expenses.  *Id.*  Mr. Proudfit and his

wife do not have any savings.  *Id.*

Since they've been in jail, Named Plaintiffs have had to sleep on the floor.  Exs. 7,

11.  Ms. Musgrave thinks she has lost her job.  Ex. 7 ¶ 24.  Named Plaintiffs missed time

with their families.  Exs. 3, 9, 11, 13.  Mr. Proudfit has not been able to assist his family

with caring for his disabled father or his brother who has cerebral palsy and who needs

assistance with eating, bathing, and other daily tasks.  Ex. 9 ¶ 18.  They have been unable

to pay unrelated bills and fines, exacerbating the cycle of poverty and incarceration.  Exs.

3, 7, 11.

## IV.   Plaintiffs With Disabilities Are Denied Their Rights Under the ADA and the Rehabilitation Act.

Plaintiffs with disabilities are experiencing particular harms.  Ms. White has

bipolar disorder, severe depression, severe anxiety, and post-traumatic stress disorder

("PTSD").  Ex. 3 ¶ 5.  She also has a painful condition called interstitial cystitis.  *Id.*  She

takes medications to manage her disabilities, including lawfully prescribed methadone to

treat withdrawal from her lawfully prescribed Percocet.  *Id.*  She can experience seizures

and withdrawal if she abruptly stops taking medication.  Ex. 3 ¶¶ 4–5.  While jailed, Ms. White has been denied several medications, including methadone, triggering withdrawal and additional distressing symptoms.  Ex. 3 ¶ 8.  As a result, Ms. White was experiencing withdrawal, insomnia, and pain at her initial bail proceeding with a judge.  Ex. 3 ¶ 17. This made it much harder to understand what was happening and for her to stand up for herself.  *Id.*  At her video arraignment, she felt afraid, stressed, and anxious.  Ex. 3 ¶ 20. By the time of her arraignment, she had been involuntarily off of most of her medications for 10 days, exacerbating her disabilities.  Ex. 3 ¶ 21.  Ms. White experienced sensory overload from being in a hallway with many other people while waiting for their arraignment.  *Id.*  The judge did not consider Ms. White's disabilities during the bail-setting proceeding.

Ms. Musgrave has bipolar disorder, anxiety disorder and PTSD.  Ex. 7 ¶ 2. Because of these disabilities, it is more difficult for her to hear and process information when she is stressed.  Ex. 7 ¶ 9.  She was subjected to a video proceeding before the judge that was rushed and noisy.  Ex. 7 ¶¶ 9–12.  It would have been easier for her to participate in the proceeding before the judge if it had not been rushed, if the volume had been louder on the telephone she used to communicate with the judge, and if there had been less extraneous noise.  Ex. 7 ¶ 14.  Because of her disabilities, Ms. Musgrave experienced particular harms during her incarceration. No one asked Ms. Musgrave if she needed assistance or medication even though she informed law enforcement and jail officials of her diagnoses multiple times.  Ex. 7 ¶ 20.  She feels that her disabilities have gotten much worse since she has been in jail and that her symptoms are more extreme.

Ex. 7 ¶ 25.  The judge did not consider Ms. Musgrave's disabilities during the bail-setting proceeding.

## V.      Plaintiffs Seek Class-Wide Prospective Relief.

An injunction and declaration can resolve all of Plaintiffs' constitutional and statutory claims including violations of Equal Protection, Substantive Due Process, Procedural Due Process, and the Right to Counsel, and federal disability rights laws. Named Plaintiffs seek this relief to benefit all those who will be arraigned in Canadian County.  All class members and subclass members are similarly impacted by Canadian County's bail system.  Reforms to that system will benefit all class and subclass members.

## ARGUMENT

Federal Rule of Civil Procedure 23 provides for class actions as a mechanism of litigating common claims when bringing individual suits asserting those claims would be impracticable or impossible.  To certify a class under Rule 23 Plaintiffs must show that:

1. The class is so numerous that joinder of all members is impracticable;

2. There are common questions of law or fact;

3. The Named Plaintiffs' claims are typical of the class's claims; and

4. The Named Plaintiffs will adequately protect the class's interests.

Fed. R. Civ. P. 23(a).  The class must also satisfy one requirement in Rule 23(b).

Constitutional claims, like those brought by Named Plaintiffs, are particularly well suited to the class mechanism where one blanket policy or set of policies impacts a large group in the same or similar ways.  Fed. R. Civ. P. 23(b)(2), *Jones v. Diamond*, 519, F.2d

1090, 1100 (5th Cir. 1975) ([U]nless class actions are hospitably received into our judicial system, many valid constitutional claims may be stymied."). In particular, class actions challenging jail practices are appropriate, because such claims are otherwise at risk of mootness. *See Johnson v. City of Opelousas*, 658 F.2d 1065, 1070 (5th Cir. 1981) ("Certification of a class under Rule 23(b)(2) is especially appropriate where, as here, the claims of the members of the class may become moot as the case progresses.") (internal quotation omitted). A number of other groups of named plaintiffs have successfully achieved class certification in recent lawsuits challenging bail practices. *See, e.g.*, *Booth v. Galveston Cty.*, No. 18-cv-00104, 2019 WL 1129492 (S.D. Tex. Mar. 12, 2019); *Edwards v. Cofield*, No. 3:17-CV-321, 2018 WL 4323920 (M.D. Ala. Sept. 10, 2018); *Buffin v. City of San Francisco*, No. 15-cv-04959-YGR, 2018 WL 1070892 (N.D. Cal. Feb. 26, 2018); *ODonnell v. Harris Cty.*, No. H-16-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017). Class certification of incarcerated individuals with disabilities is also commonly granted. *See, e.g.*, *Disability Law Ctr. v. Utah*, No. 2:15-CV-00645-RJS, 2016 WL 5396681, at *2, *8 (D. Utah Sept. 27, 2016); *Braggs v. Dunn*, 317 F.R.D. 634, 673–74 (M.D. Ala. 2016); *Bumgarner v. NCDOC*, 276 F.R.D. 452, 454, 458 (E.D.N.C. 2011); *Dunn v. Dunn*, 318 F.R.D. 652, 683-84 (M.D. Ala. 2016); *Henderson v. Thomas*, 289 F.R.D. 506, 512 (M.D. Ala. 2012); *Lewis v. Cain*, 324 F.R.D. 159, 176 (M.D. La. 2018).

Plaintiffs need not prove their claims at the certification stage. *DG* ex rel. *Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather

whether the requirements of Rule 23 are met.") (internal quotation omitted).  At the certification stage, the district court must accept Plaintiffs' allegations as true.  *Id*. at 1198.  "While the court should not pass judgment on the merits of the case at the certification stage, it must conduct its own 'rigorous analysis,' to ensure Rule 23's requirements are met."  *Id*. at 1194 (quoting *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009)) ; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").  And, "doubts should be resolved in favor of class certification."  *In re Williams Companies ERISA Litigation*, 231 F.R.D. 416, 420 (N.D. Okla. 2005) (citations and alterations omitted).

**I.      The Proposed Class and Subclass Are so Numerous That Joinder of all Proposed Class Members is Impracticable.**

The proposed primary class and subclass are so numerous that joinder of all proposed class members is impracticable.  While some circuits will presume numerosity if the putative class contains 40 or more members, the Tenth Circuit has adopted no such presumption.  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  But, classes of approximately 40 have been certified in the Tenth Circuit.  *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270 (10th Cir. 1977) (holding that class of 41 should have been certified).  The numerosity requirement is judged more leniently in cases, like this one, involving injunctive or declaratory relief.  *See id.* at 275–76 ("[W]here relief sought is injunctive and declaratory, even speculative and conclusory representations as to the size of class are sufficient.").

Named Plaintiffs seek to represent a primary class comprised of all those who are arraigned in Canadian County and who cannot afford to pay their bail and are detained as a result. As of the 2010 census, the population of Canadian County is 115,541; it is the fifth most populous county in Oklahoma.[7] In 2017, the Canadian County Detention Center ("CCDC"), which holds both pretrial detainees and formally sentenced people, had an average daily population of 300, more than 100 persons above the CCDC's capacity.[8] Approximately 4,000 persons were processed through the CCDC in 2017.[9] Based on publicly available jail population data, during one week in November, 2019, 243 of the 294 (82.6%) individuals being held in the CCDC were in custody pretrial. *See Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976) (noting that judges can draw reasonable inferences based on percentages at the certification stage).

The Federal Reserve estimates that 40% of American families cannot afford to pay a $400 emergency expense.[10] The minimum bail amount in Canadian County's bail schedule is $1000.[11] The median bail amount in Canadian County is $2500.[12] In fiscal

---

[7] U.S. CENSUS BUREAU, Oklahoma: 2010 Population and Housing Unit Counts (2012) *available at* https://www.census.gov/prod/cen2010/cph-2-38.pdf.

[8] *Detention Facility*, CANADIAN CTY. SHERIFF'S OFFICE, https://www.ccsheriff.net/31/Detention-Facility (last visited Dec. 5, 2019).

[9] *Id.*

[10] BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, Report on the Economic Well-Being of U.S. Households in 2018, (2019), available at https://www.federalreserve.gov/publications/files/2018-report-economic-well-being-us-households-201905.pdf.

[11] *See* Ex. 2.

[12] Ex. 1 at 1.

year 2018, 21% of people accused of nonviolent misdemeanors and 33% of people accused of nonviolent felonies failed to post bond in Canadian County.[13]

People with disabilities are overrepresented in jails and prisons in Oklahoma and across the United States.  Oklahoma County District Attorney David Prater said that Oklahomans with mental illnesses "are coming into the criminal justice system at a rate that is just completely overwhelming."[14]  In 2016, 60% of those imprisoned in Oklahoma had symptoms or history of mental illness.[15]  Nationwide, 44% of people in jail have been diagnosed with a mental health disorder.[16]  As of 2015, across the United States, more than 30% of people in jail have cognitive disabilities, more than 9% have mobility disabilities, more than 7% have vision disabilities, and more than 6% are deaf or hard of hearing.[17]

Thousands of people per year are assigned bail without regard to their dangerousness, risk of flight, financial circumstances, or disability status.  The proposed class consists of all people in Canadian County who will be arraigned under these

---

[13] *Id.* at 4.

[14] Jaclyn Cosgrove, *Epidemic Ignored*, THE OKLAHOMAN, (Nov. 13, 2016), https://oklahoman.com/special/article/5485875/epidemic-ignored-why-does-the-number-of-oklahomans-with-mental-illnesses-in-prison-continue-to-rise.

[15] Jaclyn Cosgrove, *Epidemic Ignored*, THE OKLAHOMAN, (Nov. 13, 2016), http://oklahoman.com/special/article/5526388/epidemic-ignored-solutions-necessary-to-stop-oklahomans-from-funneling-into-jails-prisons-for-treatment.

[16] Jennifer Bronson, Ph.D. & Marcus Berzofsky, Dr. P.H., Indicators of Mental Health Problems Reported by Prisoners and Jail Inmates, 2011-12, BUREAU OF JUSTICE STATISTICS, 1 (2017), https://www.bjs.gov/content/pub/pdf/imhprpji1112.pdf.

[17] These rates are significantly higher than those found in the general population. Jennifer Bronson, Ph.D., Disabilities Among Prison and Jail Inmates, 2011–12, BUREAU OF JUSTICE STATISTICS, 3, Table 1 (2015), https://www.bjs.gov/content/pub/pdf/dpji1112.pdf.

circumstances: thousands annually, many thousands over time.  Many hundreds, if not

thousands, of these individuals are also disabled.  These numbers exceed those in other

classes certified in the Tenth Circuit.  *See e.g. Horn v. Associated Wholesale Grocers,*

*Inc.*, 555 F.2d 270 (41 class members), *Barton v. Corrs. Corp. of America*, No. 03-cv-

428-JHP-SAJ, 2005 WL 5329514, at *3 (N.D. Okla. Sept. 1, 2005) (66 class members),

*Fabian v. Indep. Sch. Dist. No. 89 of Oklahoma Cty, Okla.*, 409 F. Supp. 94, 95 (W.D.

Okla. 1976) (142 class members).[18]  Further, joinder is impracticable because additional

class members who will be impacted by Defendants' bail system in the future cannot be

identified.[19]

## II.     Claims by the Proposed Class and Subclass Raise Common Questions.

The claims asserted on behalf of the proposed class and subclass include common

questions of law and fact that satisfy the commonality requirement of Federal Rule of

Civil Procedure 23(a)(2).  Commonality requires that the determination of the class

members' common contentions of law or fact "will resolve an issue that is central to the

validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 350 (2011).  However, "[c]ommonality is not necessary on every issue raised in

---

[18] Other circuits have certified even smaller classes.  *See e.g., Carey v. Greyhound Bus Co., Inc.*, 500 F.2d 1372, 1380 (5th Cir. 1974) (81 class members); *Arks Ed. Ass'n v. Board of Ed. of Portland, Ark. School Dist.*, 446 F. 2d 763, 766 (8th Cir. 1971) (17 class members).

[19] "Where the identity or locations of many class members is unknown, and the total membership of the group is indeterminable at the time of the institution of the action, a class action is appropriate."  *Davy v. Sullivan,* 354 F. Supp. 1320, 1325 (M.D. Ala. 1973).  *See also Doe v. Charleston Area Med. Ctr., Inc.* 529 F.2d 638, 645 (4th Cir. 1975) ("[W]here the plaintiff has demonstrated that the class of persons he or she wishes to represent exists, that they are not specifically identifiable supports rather than bars the bringing of a class action, because joinder is impracticable.").

a class action." *Realmonte v. Reeves*, 169 F.3d 1280, 1285 (10th Cir. 1999). "[E]ven a single [common] question will do." *Dukes*, 564 U.S. at 359 (alterations in original); *Hill v. Marathon Oil Co.*, No. civ-08-37-R, 2010 WL 2365447, at *2 (W.D. Okla. June 9, 2010) ("[t]here need only be one issue of law or fact common to all class members to satisfy the element of commonality."). Commonality also mandates that a class action "generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. In other words, the relief sought must address the common issue presented. *Id.*

Many courts have certified class actions concerning constitutional challenges to bail-setting practices and pretrial detention. *See, e.g.*, *Edwards*, 2018 WL 4323920, at *1; *Buffin*, 2018 WL 1070892, at *3–4; *ODonnell*, 2017 WL 1542457, at *5–6. Similarly, the proposed class members in this matter share common questions of law and fact concerning whether Canadian County District Court's bail-setting and pretrial detention practices violate their constitutional rights and, for the subclass, their rights under the ADA and Rehabilitation Act. Additionally the Court's resolution of the class members' common questions of law and fact will provide the relief sought by the entire class and subclass.

Questions of fact common to the primary class include the following:

- Whether Defendants have a widespread, well-settled policy and practice of setting secured bail without adequate procedural protections including notice, an opportunity to present and contest evidence, appointment of counsel, reasoned findings based on clear and convincing evidence on the record that de facto pretrial detention through unaffordable bail is the least

restrictive means of mitigating an individual's flight risk or danger to the community;

- Whether Defendants conduct initial appearances and arraignments without the presence of counsel for the arrestee;

- Whether Defendants have a widespread, well-settled policy and practice of setting bail without inquiry into ability to pay or consideration of alternatives less restrictive than unaffordable bail;

- Whether Defendants' bail orders result in pretrial detention;

- Whether unaffordable bail undermines the fairness of plea bargaining or trial; and

- How long class members must wait in jail after arrest before they have an opportunity to raise their inability to pay for their release or to request alternative, non-financial conditions.

Questions of law common to the primary class include the following:

- Whether imposing bail without adequate procedural protections including notice, an opportunity to present and contest evidence, appointment of counsel, and reasoned findings on the record that a de facto detention order through unaffordable bail is the least restrictive means of mitigating an individual's flight risk or danger to the community violates the Fourteenth Amendment's Due Process Clause;

- Whether imposing unaffordable bail without an ability to pay hearing violates the Fourteenth Amendment Equal Protection and Due Process Clauses; and

- Whether denying counsel at initial appearances and arraignments violates the Sixth Amendment right to counsel.

Questions of fact common to the disability subclass include the following:

- Whether Defendants fail to consider whether, as a result of their disabilities and/or the poverty programs upon which disabled people rely (such as Supplemental Security Income ("SSI")), disabled arrestees are unable to afford their bail;

- Whether Defendants fail to consider whether disabled arrestees require reasonable modifications or effective communication services to participate equally in initial arraignments and appearances, including extra time, quiet proceedings or proceedings in person, simple language, and documents written in plain English;

- Whether Defendants have a policy and practice of denying court-appointed representation to disabled arrestees without considering whether they are able to represent themselves in court proceedings;

- Whether Defendants fail to consider whether disabled arrestees are qualified to be released without bail because, with or without reasonable

modifications, they do not pose a risk of fleeing prosecution or danger to the community; and

- Whether Defendants fail to consider whether previous failures to appear or alleged technical violations were themselves a result of Defendants' failure to provide reasonable modifications such as reminders of court appearances, or assistance with transportation.

Questions of law common to the subclass include the following:

- Whether the failure to consider whether, as a result of their disabilities and and/or the poverty programs upon which disabled people rely (such as SSI), disabled arrestees are unable to afford their bail, violates the ADA and the Rehabilitation Act;

- Whether the failure to consider whether disabled arrestees require reasonable modifications or effective communication services to participate equally in initial  appearances and arraignments, including extra time, quiet proceedings or proceedings in person, simple language, and documents written in plain English, violates the ADA and the Rehabilitation Act;

- Whether denying court-appointed counsel to such arrestees who cannot represent themselves violates the ADA and the Rehabilitation Act; and

- Whether the failure to consider alternatives to bail for disabled arrestees who are qualified for pretrial release, with or without reasonable accommodations, violates the ADA and the Rehabilitation Act.

### III.   The Named Plaintiffs' Claims are Typical of the Claims of the Proposed Class and Subclass.

The Named Plaintiffs' claims are "typical of the claims or defenses of the class" as required for class certification pursuant to Federal Rule of Civil Procedure 23(a)(3). "[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Stricklin*, 594 F.3d at 1197.  The typicality requirement for class certification "limits the class claims to those 'fairly encompassed' by the claims of the named plaintiffs." *Chieftain Royalty Co. v. QEP Energy Co.*, 281 F.R.D. 499, 505 (W.D. Okla. 2012) (*quoting General Tel. Co. of the Northwest, Inc. v. Equal Empl. Opportunity Comm'n*, 446 U.S. 318, 330 (180)).  The typicality requirement "is satisfied when the class representatives' claims and proposed class members' claims are based on the same legal or remedial theory."  *In re Cox Enters. Inc.*, No. 12-ML-2048-C 2014 WL 104964, at *4 (W.D. Okla. Jan. 9, 2014) (*quoting Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).  When the typicality requirement is met, subclasses or "potential individual issues" do not defeat typicality.  *Chieftain*, 281 F.R.D. at 505.

The Named Plaintiffs' claims are typical and representative of the proposed class members' and subclass members' claims because they arise from the same harmful practices and raise the same legal challenges.  The Named Plaintiffs and all class members are subject to the same unconstitutional bail and pretrial detention practices in Canadian County District Court: they are arraigned in hearings that are closed off from the public, without counsel, without any findings on the record, and without an inquiry

into their ability to pay, dangerousness, or risk of flight.  The Defendants' practices of

infringing on constitutionally protected rights, providing inadequate pretrial procedures,

and denying representation by counsel violate the Named Plaintiffs' and class members'

Equal Protection, Substantive Due Process, Procedural Due Process, and Sixth

Amendment guarantees alike.  Although the Named Plaintiffs and proposed class

members may have individualized circumstances, their claims all arise from the same

practices and present the same legal issues as required by Rule 23(a)(3); the typicality

requirement for class certification is satisfied.

      The disability subclass members each have disabilities and are each subjected to

the Defendants' policies and practices regarding bail, without consideration of reasonable

modifications and alternatives to bail that would accommodate their disabilities and grant

an equal opportunity for pretrial release.

## IV.    The Named Plaintiffs are Competent and Dedicated Class Representatives.

      The Named Plaintiffs fulfill the final requirement of Rule 23(a); they will "fairly

and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and

their counsel have any conflicts of interest with other class members and (2) will the

named plaintiffs and their counsel prosecute the action vigorously on behalf of the

class?"  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir.

2002).  Named Plaintiffs' interests do not conflict with the rest of the class' interests.

They will benefit from the requested injunctive and declaratory relief equally.  Named

Plaintiffs have met with counsel, and they understand and are prepared to undertake the

responsibilities that come with being class representatives.  They understand the duties and obligations and are committed to diligently fulfilling their role.  With assistance from counsel, they will "prosecute the action vigorously on behalf of the class."  *Id.  See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Adequacy of counsel is also satisfied.  Counsel are highly qualified and experienced civil and criminal litigators who will more than adequately represent the proposed class.  Counsel have rigorously examined their past representations, and they do not have any conflicts with the proposed class.  Counsel have extensive individual and collective experience with civil rights litigation, complex class actions and criminal law.  Furthermore, counsel have particular experience with cases challenging unconstitutional pretrial systems.  This experience is detailed in counsels' declarations and the cases noted therein. *See* Exs. 16–20.

## V.      Certification for Prospective Relief is Proper Under Rule 23(b)(2).

In accordance with Federal Rule of Civil Procedure 23(b)(2), the Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360, 374.  The Rule 23(b)(2) requirement is "almost automatically satisfied" in actions primarily seeking injunctive relief. *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

It is well established that "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of what 23(b)(2) is meant to

Page 22

capture. *Amchem*, 521 U.S. at 592; *see also, Dukes*, 564 U.S. at 361; 8 Newberg on Class

Actions § 25:20 (4th ed. 2002) ("Rule 23(b)(2) was drafted specifically to facilitate relief

in civil rights suits.").  "Factually different claims of individual class members should not

preclude certification under Rule 23(b)(2) of a claim seeking the application of a

common policy."  *Shook v. El Paso Cty.*, 386 F.3d 963, 971 (10th Cir. 2004) (internal

quotation omitted).  The Tenth Circuit has noted, "many courts have found Rule 23(b)(2)

well suited for cases where the composition of a class is not readily ascertainable; for

instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison

population."  *Shook*, 386 F.3d at 972.

      This case fits precisely within the requirements of Rule 23(b)(2).  This is a civil

rights action seeking injunctive relief to remedy Defendants' practices that are

unconstitutional and violate federal disability rights laws.  Defendants' unlawful bail and

pretrial procedures affect the entire proposed class of individuals whose cases are at

various stages in the criminal proceedings.  The presence of a subclass does not

undermine the relief sought by the proposed class because the injunctive relief sought

seeks to reform Defendants' practices such that all proposed class members will benefit

from the relief.  It would be inefficient for each class member to seek relief in individual

suits.  Given that each class members' underlying criminal cases are at varying stages,

individual class members' claims could become moot before being addressed on the

merits. *See Johnson*, 658 F.2d at 1070 (5th Cir. 1981); *Cmtys. for Equity v. Michigan

High School Athletic Ass'n*, 192 F.R.D. 568, 575 (W.D. Mich. 1999); *Hiatt v. Cty. of*

*Adams, Ohio*, 155 F.R.D. 605, 608–09 (S.D. Ohio 1994).  Therefore, this proposed class

and subclass satisfy the requirements of Rule 23(b)(2).

**VI.    Plaintiffs' Counsel Should Be Appointed Class Counsel Under Rule 23(g).**

Undersigned counsel should be appointed class counsel under Federal Rule of

Civil Procedure 23(g).  Undersigned counsel will "fairly and adequately represent the

interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Under Rule 23(g), a court considers

(1) "the work counsel has done in identifying or investigating potential claims in this

action"; (2) "counsel's experience in handling class actions, other complex litigation, and

the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable

law"; and (4) "the resources that counsel will commit to representing the class" to

determine whether to appoint counsel.  Fed. R. Civ. P. 23(g)(1)(A).

Counsel have conducted extensive legal and fact research to prepare for this case.

Counsel have met with the Named Plaintiffs and other class members affected by the

Canadian County District Court's pretrial detention scheme.  Further, counsel have

extensive experience with civil rights litigation, complex class actions and challenges to

unconstitutional pretrial detention systems.  Counsel are dedicated to contributing

significant resources towards representing this class. *See* Exs. 16–20.  For these reasons,

counsel respectfully request appointment as class counsel pursuant to Rule 23(g).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court

certify the proposed primary class, and the disability subclass in this matter pursuant to

Federal Rule of Civil Procedure 23(b)(2).  Plaintiffs also request that undersigned counsel

be appointed class counsel pursuant to Rules 23(a)(4) and (g).  If Defendants contest

material issues of fact necessary for class certification, Plaintiffs request the opportunity

to conduct discovery related to class certification and a subsequent hearing.

Respectfully Submitted,

/s/ Twyla Carter
(Signed by Filing Attorney with permission of Attorney)
Twyla Carter
Washington State Bar Number: 39405
Brandon J. Buskey
Alabama Bar Number: ASB2753-A50B
American Civil Liberties Union
  Foundation, Criminal Law Reform
  Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tcarter@aclu.org
bbuskey@aclu.org

/s/ Claudia Center
(Signed by Filing Attorney with permission of Attorney)
Claudia Center
California Bar Number: 158255
Zoe Brennan-Krohn
California Bar Number: 324912
American Civil Liberties Union
  Foundation, Disability Rights Program
39 Drumm Street
San Francisco, CA 94111
(415) 343-0762
ccenter@aclu.org
zbrennan-krohn@aclu.org

/s/ Aaron Lewis
(Signed by Filing Attorney with permission of Attorney)
Aaron Lewis
California Bar Number: 284244
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800
alewis@cov.com

Amia Trigg
District of Columbia Bar Number: 1023003
Marta Cook
District of Columbia Bar Number: 1045613
Laura Beth Cohen
Michigan Bar Number: P83111
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4656
(202) 662-6000
atrigg@cov.com
mcook@cov.com
lcohen@cov.com

/s/ Megan Lambert
Megan Lambert
Oklahoma Bar Number: 33216
Ryan Kiesel
Oklahoma Bar Number: 21254
Michael Redman
Oklahoma Bar Number: 13340
American Civil Liberties Union of
  Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
rkiesel@acluok.org
mredman@acluok.org

/s/ Blake Johnson
(Signed by Filing Attorney with permission
of Attorney)
Blake Johnson
Oklahoma Bar Number: 32433
Tyler Box
Oklahoma Bar Number: 31817
Weston Watts
Oklahoma Bar Number: 33299
Justin Williams
Oklahoma Bar Number: 32539
Clayburn Curtis
Oklahoma Bar Number: 30538
Overman Legal Group, PLLC
809 NW 36th St.
Oklahoma City, OK 73118
(405) 605-6718
blakejohnson@overmanlegal.com
tylerbox@overmanlegal.com
westonwatts@overmanlegal.com
justinwilliams@overmanlegal.com
claycurtis@overmanlegal.com
ATTORNEYS FOR PLAINTIFFS

Dated: December 11, 2019

## CERTIFICATE OF SERVICE

I affirm that this motion for class certification and supporting brief will be served concurrently with the service of the Summons and Complaint in this matter.


/s/ Amia L. Trigg _____
Amia L. Trigg

## INDEX OF EXHIBITS

Exhibit 1: Open Justice Oklahoma, *Bail Fact Sheet*

Exhibit 2: Administrative Order re: Amended Bail Schedule

Exhibit 3: Declaration of Misty White

Exhibit 4: Typed Declaration of Misty White

Exhibit 5: Declaration of Jermaine Bradford

Exhibit 6: Typed Declaration of Jermaine Bradford

Exhibit 7: Declaration of Janara Musgrave

Exhibit 8: Typed Declaration of Janara Musgrave

Exhibit 9: Declaration of Landon Proudfit

Exhibit 10: Typed Declaration of Landon Proudfit

Exhibit 11: Declaration of Bradley Barber, Jr.

Exhibit 12: Typed Declaration of Bradley Barber, Jr.

Exhibit 13: Declaration of Dakota Kappus

Exhibit 14: Typed Declaration of Dakota Kappus

Exhibit 15: Canadian County Application for Appointed Counsel

Exhibit 16: Declaration of Amia Trigg

Exhibit 17: Declaration of Twyla Carter

Exhibit 18: Declaration of Claudia Center

Exhibit 19: Declaration of Megan Lambert

Exhibit 20: Declaration of Blake Johnson