# Exhibit 8

I, Janera Musgrave, swear and affirm under penalty of perjury that the following information is true and correct:

1. I am a 47 year old white woman.
2. I was arrested on November 11, 2019.  The police did not tell me why they were arresting me.  I told the police that I have bipolar I, anxiety, and PTSD, but they did not acknowledge it.  I was extremely anxious and starting to have a panic attack, but the officers kept throwing words at me like daggers.
3. I went to El Reno city jail.  I'm not sure how long I stayed at the city jail, but I think it was a day or two.  Then they took me to Canadian County Jail.
4. The booking officer told me I could OR out if I wasn't already on bond.  I wasn't sure if I was out on bond.  I told the officer I had done a walk-through.  The computers were down, so the officer didn't check on the computer.  The officer said my bond was $4000.
5. I heard the officer saying I had 4 charges.  I still did not know what my charges were.
6. I was arraigned about a week after I got to Canadian County Jail.
7. For the arraignment I went to a room in the jail.  A jail officer sat behind me.  The judge was on a screen.  I had to pick up the phone to hear the judge.

8. The judge checked my name and Social Security number, and asked if I could hear her. It was loud, and the officer behind me yelled at the other incarcerated people to be quiet, but it didn't really help.

9. Because of my disabilities, it is hard for me to focus and hear when there is a lot of noise and when I am stressed. While the judge was talking to me, the white noise in my head got louder and louder. Some of the time I could see her lips moving but I couldn't hear. I tried to follow along with what she was saying.

10. The judge read my charges, and asked if I understood them. She said I was eligible to bond out, and that my bond is $4000. She did not ask if I can afford the bond. I cannot afford my bond.

11. My arraignment was the first time I learned what my charges actually were.

12. The whole thing lasted 3 to 5 minutes. It felt like I was on a conveyor belt.

13. I have told many people at the jail that I have bipolar I, anxiety disorder, and PTSD. But no one acknowledged it. I have not seen a mental health counselor since I've been in jail. No one from the jail has asked me if I need mental health treatment or medication, even though I keep telling people about my diagnoses.

14. By the time I got to my arraignment, my anxiety was off the hook. There are some things that could have helped me focus and hear and participate more in the arraignment. If the officer hadn't sat right behind me, I would have been less anxious and distracted. If the phone volume was louder and

the door was shut, I would have been able to hear better. If I had felt less rushed, I could have been able to calm down and ask a question.

15. I didn't know if I had a right to ask any questions. I didn't know it was possible to have a lawyer at arraignment. I would have liked to have a lawyer at arraignment to explain what was happening and what my options were.

16. I first got the public defender application before arraignment, but I couldn't fill it out until after arraignment, because I didn't know what my charges were until then.

17. I could not fill out the part of the application asking for the names of 3 attorneys because my phone pin wasn't working. I was not able to get the application notarized. I cannot afford the $40 application fee. I still don't know if I'm approved for a public defender.

18. I cannot afford my bond. When I was arrested, I was working full-time at Carl's Jr. I was paid $10.30 an hour. I took home about $300 a week. My rent, utilities, and bills added up to more than $900 a month. With food, medications, and gas and insurance, I never had money left over. I have no savings.

19. I don't have any family or friends who can pay my bond.

20. At arraignment, the judge did not ask any questions about my income or expenses. She did not ask if I could afford bond. She did not say why she set bond at $4000, she just read the amounts off a piece of paper. The

judge did not explain if there were any alternatives to bond. No one asked me if I needed any accommodations or help because of my disabilities.

21. There was no lawyer. No one told me if I could have a lawyer. I cannot afford a private lawyer.

22. Even if I could afford my bond, I am afraid I would lose my chance to have a public defender. The public defender application seems to say that if you make bond, you can't have a public defender. There's no way I can afford a private lawyer.

23. I have been in jail more than 20 days. I have stayed in jail so long because I can't afford my bond or a lawyer.

24. Since I've been in jail, I lost my job. I missed using my paid time off to work a second job. I lost insurance. I wasn't able to pay my loans and fines while I've been in jail. I'm afraid I'll lose my truck, and I'm afraid there might be a bench warrant because I could not pay my court fines.

25. My disabilities have gotten much worse since I've been in jail. My symptoms are more extreme.

26. I have arthritis. My joints hurt a lot when it is cold. It is usually cold in the jail. I don't have a jacket. I don't have a long-sleeve shirt. I don't have socks. I cannot afford to buy socks from commissary. I am in a lot of pain pretty nonstop since I've been in jail. I had to sleep on the floor for a few nights, and on a concrete bunk for a while. There was a mat, but it was very uncomfortable and caused pain from my arthritis.

I gave Zoe Brennan-Krohn permission to handwrite this statement. I reviewed this statement with Megan Lambert, Marta Clok, and Zoe Brennan-Krohn, and it is true and correct.

I sign this statement under penalty of perjury.

Date: <u>12-6-2019</u>

Signature: <u>/s/ Janara Musgrave</u>