## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| [1] MISTY WHITE, | ) | |
| [2] JERMAINE BRADFORD, | ) | |
| [3] JANARA MUSGRAVE, | ) | |
| [4] LANDON PROUDFIT, | ) | |
| [5] BRADLEY BARBER, JR., and | ) | |
| [6] DAKOTA KAPPUS, | ) | |
| | ) | |
| On behalf of themselves and all | ) | |
| others similarly situated, and | ) | |
| | ) | |
| [7] OKLAHOMA STATE | ) | Case No. 5:19-cv-01145-JD |
| CONFERENCE, NAACP, | ) | (Class Action) |
| | ) | |
| Plaintiffs, | ) | Hon. Jodi W. Dishman |
| | ) | |
| v. | ) | |
| | ) | |
| [1] HON. PAUL HESSE, in his official | ) | |
| capacity as presiding District Court | ) | |
| Judge, | ) | |
| [2] HON. JACK MCCURDY, | ) | |
| in his official capacity as District Court | ) | |
| Judge, | ) | |
| [3] HON. BARBARA HATFIELD, | ) | |
| [4] HON. CHARLES GASS, | ) | |
| [5] HON. KHRISTAN STRUBHAR, in their | ) | |
| official capacities as Special District | ) | |
| Judges in the Canadian County District | ) | |
| Court, and | ) | |
| [6] CANADIAN COUNTY DISTRICT | ) | |
| COURT, 26TH JUDICIAL DISTRICT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' BRIEF IN OPPOSITION
## TO DEFENDANT STATE JUDGES' MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

BACKGROUND AND FACTS ............................................................................ 1

STANDARD OF REVIEW ................................................................................... 3

ARGUMENT ........................................................................................................ 4

I.      Defendant State Judges' Actions Are Administrative and Therefore Subject to Injunctive Relief. ............................................................................................. 4

II.     Defendant State Judges Are Not Protected by Legislative Immunity. .................... 6

III.    Defendant State Judges Are Subject to Declaratory Relief, Regardless of the Capacity in Which They Acted. ..................................................................... 8

IV.    Plaintiffs Allegations Are Sufficiently Specific. ....................................................... 8

V.     Plaintiffs Sufficiently Pled Due Process and Equal Protection Violations. ........... 10

VI.    Defendants Do Not Deny There Is a Sixth Amendment Right to Counsel at Bail Proceedings, and Plaintiffs Have Standing to Sue for Defendant State Judges' Violation of That Right. .......................................................................... 11

VII.   Plaintiff NAACP has Standing to Assert a First Amendment Right of Access Claim and the Right Extends to Bail Setting Hearings. ............................. 14

        A.     Plaintiff NAACP of Oklahoma Has Sufficiently Pled Standing. ................ 14

        B.     The First Amendment Right of Access Extends to Bail Hearings. ............. 15

VIII.  Plaintiffs White and Musgrave State Claims Under Title II of the ADA and the Rehabilitation Act. ........................................................................................ 17

        A.     The Tenth Circuit's Opinion in *Robertson v. Las Animas County Sheriff's Department* Does Not Support Dismissal. ................................... 20

IX.    *Younger* Abstention Is Inapplicable. ........................................................................ 22

        A.     *Younger* Is Inapplicable as Plaintiffs' Requested Relief Is Not Directed at Their Criminal Prosecutions. ................................................... 22

B.     State Proceedings Do Not Provide an Adequate Opportunity for
       Plaintiffs to Litigate Their Constitutional Challenges to Defendants'
       Bail Setting Practices.................................................................................. 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**                                                                 Page(s)

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) .................................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................... 3

*Bearden v. Georgia*,
   461 U.S. 660 (1983) .................................................................................. 10

*Bell v. Cone*,
   535 U.S. 685 (2002) .................................................................................. 12

*Bogan v. Scott-Harris*,
   523 U.S. 44 (1998) ...................................................................................... 6

*Booth v. Galveston Cty.*,
   352 F. Supp. 3d 718 (S.D. Tex. 2019) ................................................ 9, 25

*Booth v. Galveston Cty.*,
   No. 18-cv-00104, 2019 WL 1129492 (S.D. Tex. Mar. 12, 2019) ............... 6

*Booth v. Galveston Cty.*,
   No. 18-CV-00104, 2019 WL 3714455 (Aug. 7, 2019) (*Booth II*) ....... 12, 13

*Buffin v. City of San Francisco*,
   No. 15-cv-04959-YGR, 2018 WL 1070892 (N.D. Cal. Feb. 26, 2018) ....... 6

*Caliste v. Cantrell*,
   329 F. Supp. 3d 296, 314 (E.D. La. 2018) ............................................. 12

*Caliste v. Cantrell*,
   No. 17-6197, 2017 WL 3686579 (E.D. La. Aug. 25, 2017) ..................... 25

*Caliste v. Cantrell*,
   No. CV 17-6197, 2017 WL 6344152 (E.D. La. Dec. 12, 2017) .................. 8

*Joseph A. ex rel. Corrine Wolfe v. Ingram*,
   275 F.3d 1253 (10th Cir. 2002) .............................................................. 22

*Cox v. Phelps Dodge Corp.*,
   43 F.3d 1345 (10th Cir. 1994) .................................................................. 8

*Delano-Pyle v. Victoria Cty., Tex.*,
　302 F.3d 567 (5th Cir. 2002) ............................................................. 18

*Dixon v. City of St. Louis*,
　No. 19-0112, 2019 WL 2437026 (E.D. Mo. June 11, 2019) ...................... 25

*Edwards v. Cofield*,
　No. 3:17-CV-321, 2018 WL 4323920 (M.D. Ala. Sept. 10, 2018) .............. 6

*Forrester v. White*,
　484 U.S. 219 (1988) ................................................................... 4, 7

*Gerstein v. Pugh*,
　420 U.S. 103 (1975) ......................................................... 22, 23, 24

*In re Globe Newspapers Co.*,
　729 F.2d 47 (1st Cir. 1984) ......................................................... 16, 17

*Hamer v. City of Trinidad*,
　924 F.3d 1093 (10th Cir. 2019) ...................................................... 18

*In re Hearst*,
　641 F.3d 168 (5th Cir. 2011) ........................................................ 16

*Higazy v. Templeton*,
　505 F.3d 161 (2d Cir. 2007) ......................................................... 12

*Holloway v. Walker*,
　765 F.2d 517 (5th Cir. 1985) .......................................................... 8

*LeClerc v. Webb*,
　419 F.3d 405 (5th Cir. 2005) .......................................................... 7

*Little v. Frederick*,
　No. 17-00724, 2017 WL 8161160 (W.D. La. Dec. 6, 2017) ..................... 25

*Little v. Frederick*,
　No. 17-00724, 2018 WL 1221119 (Mar. 8, 2018) ............................ 11, 25

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) .................................................................. 14, 15

*McCadden by McCadden v. City of Flint*,
　No. 18-12377, 2019 WL 1584548 (E.D. Mich. Apr. 12, 2019) ................ 18

*Meechaicum v. Fountain*,
   696 F.2d 790 (10th Cir. 1983) .................................................................. 10

*Missouri v. Frye*,
   566 U.S. 134 (2012) ................................................................................... 12

*Montejo v. Louisiana*,
   556 U.S. 778 (2009) ................................................................................... 13

*Morrison v. Lipscomb*,
   877 F.2d 463 (6th Cir. 1989) ................................................................... 4, 5

*ODonnell v. Harris Cty.*,
   892 F.3d 147 (5th Cir. 2018) ................................................... 6, 11, 24, 25

*ODonnell v. Harris Cty.*,
   No. H-16-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017) ............ 6, 24

*Parga v. Board of Cty. Comm'rs of Cty. of Tulsa*,
   2019 WL 1231675 (N.D. Okla. Mar 15, 2019) ...................................... 5, 25

*Pembauer v. City of Cincinnati*,
   475 U.S. 469 (1986) ..................................................................................... 9

*Pierce v. District of Columbia.*,
   128 F. Supp. 3d 250 (D.D.C. 2015) ......................................................... 18

*Pugh v. Rainwater*,
   572 F.2d 1053 (5th Cir. 1978) .................................................................. 10

*Pulliam v. Allen*,
   466 U.S. 522 (1984) ..................................................................................... 8

*Robertson v. Las Animas Cty. Sheriff's Dep't*,
   500 F.3d 1185 (10th Cir. 2007) ............................................... 18, 19, 20, 21

*Rodriguez v. Providence Cmty. Corrs., Inc.*,
   155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015) ...................................... 11, 25

*Rothgery v. Gillespie Cty.*,
   554 U.S. 191 (2008) ................................................................................... 12

*Ruiz v. McDonnell*,
   299 F.3d 1173 (10th Cir. 2002) ................................................................... 4

*Schell v. Gurich*,
   409 F. Supp. 3d 1290, 1295 (W.D. Okla. 2019) ........................................................... 7

*Schultz v. State*,
   330 F. Supp. 3d 1344, 1373-74 (N.D. Ala. 2018)........................................................ 13

*Seattle Times Co. v. U.S. Dist. Court for W. Dist. of Wash.*,
   845 F.2d 1513 (9th Cir. 1988) ..................................................................................... 16

*Seneca-Cayuga Tribe of Okla. v. State of Okl. Ex rel. Thompson*,
   874 F.2d 709 (10th Cir. 1989) ..................................................................................... 22

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013)........................................................................................................ 22

*Stump v. Sparkman*,
   435 U.S. 349 (1978)................................................................................................... 4, 5

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*,
   446 U.S. 719 (1980)........................................................................................................ 7

*United States v. Alcantara*,
   396 F.3d 189 (2d Cir. 2005)......................................................................................... 16

*United States v. Chagra*,
   701 F.2d 354 (5th Cir. 1983) ....................................................................................... 16

*United States v. Pleitez*,
   876 F.3d 150 (5th Cir. 2017) ....................................................................................... 13

*United States v. Salerno*,
   481 U.S. 739 (1987)................................................................................................. 10, 11

*United States v. Thompson*,
   713 F.3d 388 (8th Cir. 2013) ....................................................................................... 16

*Updike v. Multnomah Cty.*,
   870 F.3d 939 (9th Cir. 2017) ....................................................................................... 18

*Utah Animal Rights Coal. v. Salt Lake City Corp.*,
   371 F.3d 1248 (10th Cir. 2004) ..................................................................................... 8

*Walker v. City of Calhoun*,
   901 F.3d 1245 (11th Cir. 2018) ....................................................................... 22, 23, 25

*In re Washington Post Co.*,
  807 F.2d 383 (4th Cir. 1986) ................................................................. 16

*Welchen v. Cty. of Sacramento*,
  No. 16-00185, 2016 WL 5930563 (E.D. Cal. Oct. 11, 2016) .................................... 25

*Winn v. Cook*,
  945 F.3d 1253 (10th Cir. 2019) ............................................................. 24

*Winnebago Tribe of Neb. v. Stovall*,
  341 F.3d 1201 (10th Cir. 2003) ............................................................. 22

*Ex Parte Young*,
  209 U.S. 123 (1908) ......................................................................... 9

*Younger v. Harris*,
  401 U.S. 37 (1971) ................................................................ 22, 23, 24, 25

## STATUTES AND OTHER AUTHORITIES

22 O.S. § 1105.2(B) ............................................................................ 7

42 U.S.C. § 1983 ............................................................................. 4, 8

ADA, 42 U.S.C. § 12132 ........................................................ 17, 18, 19, 20, 21

Rehabilitation Act, Section 504 .............................................. 17, 18, 19, 20, 21

28 C.F.R. 35.130(b)(3)(i) ..................................................................... 17

28 C.F.R. Part 35, App. B at § 35.103 ........................................................ 17

28 C.F.R. § 35.106 ........................................................................... 21

28 C.F.R. §§ 35.106, 35.130(b)(8), 35.160(a)(2) .............................................. 17

28 C.F.R. § 35.130(b)(7)(i) ................................................................... 17

28 C.F.R. § 35.160(a)(1) ...................................................................... 17

28 C.F.R. § 150(a) ............................................................................ 17

## INTRODUCTION

Named Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit, Bradley Barber, Jr., and Dakota Kappus ("Named Plaintiffs") on behalf of themselves and all others similarly situated ("Plaintiffs") and Plaintiff Oklahoma State Conference, NAACP ("Plaintiff NAACP of Oklahoma"), submit this response brief in opposition to the motion to dismiss filed by Defendants Canadian County District Judges Paul Hesse and Jack McCurdy and Canadian County Special Judges Barbara Hatfield, Charles Gass, and Khristan Strubhar (collectively "Defendant State Judges"). In their motion to dismiss, the Defendant State Judges do not deny that their wealth-based cash-bail system violates the fundamental principles of due process and equal protection. Nor do they deny that pretrial detention hearings are a critical stage of prosecution at which the accused is entitled to the assistance of counsel. Instead, the Defendant State Judges raise purely procedural objections and largely misstate Plaintiffs' claims. Defendant State Judges' arguments are without merit and fail to meet the standard for a motion to dismiss.

## BACKGROUND AND FACTS

Defendant State Judges have designed and implemented a Bail Setting Policy under which arrestees in Canadian County are arraigned without proper process and as a result are discriminated against on the bases of wealth and disability. Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit, Bradley Barber, Jr., and Dakota Kappus were arraigned under this Policy. The Named Plaintiffs were arraigned by video, in closed proceedings taking place "in what appeared to be a judge's office." Compl. at ¶ 16. None of the Named Plaintiffs were asked questions to assess what

1

release conditions were appropriate, such as their ability to pay the bail amount, their likelihood of returning to court, or their risk of danger to the community if released. Because none of the Named Plaintiffs could afford a private attorney, none had counsel to advocate on their behalf during their arraignment.  None of the Named Plaintiffs could afford to pay the bail amount imposed pursuant to Defendants' Policy.  Thus, they all remained in jail.

Plaintiffs Misty White and Janara Musgrave are disabled.  Defendants nonetheless did not make any accommodations that would have facilitated their full participation in their bail proceedings.  Nor did the judges who conducted their arraignments consider whether their disabilities impacted their ability to pay bail, their risk of flight, or whether they would be a danger to the community if released.

The Defendant State Judges conduct these arraignments behind closed doors in their chambers, where neither family members nor the public can observe.  On Monday, December 9, 2019, Mr. Frankie Adair, a member of the NAACP of Oklahoma, went to the Canadian County Courthouse to watch arraignments.  He was interested in "the way people are treated in the criminal legal system in Canadian County."[1]  He asked the clerk where to watch in-custody arraignments.  The clerk told Mr. Adair that he could not watch in-custody arraignments because "they are held in the judge's chambers on video."[2]

---

[1] Ex. 1, Declaration of Frankie Lee Adair.

[2] Ex. 1, Declaration of Frankie Lee Adair.

The Named Plaintiffs experienced extreme hardship as a result of Defendants' discriminatory detention practices.  They collectively spent 160 days pretrial in the Canadian County Detention Center as of the filing of the Complaint.  The conditions in the Canadian County Detention Center are abysmal.[3]  Plaintiff Misty White was denied much-needed medication during her detention and regularly went hungry, unable for religious reasons to eat the pork served daily.  Plaintiff Landon Proudfit was unable to care for his brother, who has cerebral palsy.  Plaintiff Bradley Barber was unable to start a new job.

These harms stem directly from Defendants' adoption and use of the Bail Setting Policy under which they do not ask about ability to pay, flight risk, danger to the community, or disability.  The Named Plaintiffs challenge this Policy and its discriminatory effects on behalf of themselves and all who will be arraigned in Canadian County.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*,

---

[3] Named Plaintiffs do not challenge the Canadian County Detention Center's conditions nor do they name it as a defendant.  The conditions in the Detention Center are relevant, however, as part of the harm suffered by the Named Plaintiffs due to the Defendants State Judges' Policy and the resultant wealth- and disability- based discrimination.

556 U.S. at 678.  In deciding a motion to dismiss, the court "presume[s] all of the

allegations contained in the [] complaint to be true."  *Ruiz v. McDonnell*, 299 F.3d 1173,

1180 (10th Cir. 2002).

## ARGUMENT

### I.   Defendant State Judges' Actions Are Administrative and Therefore Subject to Injunctive Relief.

Judicial immunity is "limited . . . to those acts which are truly judicial acts and are

not simply administrative acts."  *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir.

1989).  42 U.S.C. § 1983 protects Defendant State Judges from injunctive relief only

when they act in their judicial capacity.  Their administrative decisions may be enjoined.[4]

Courts determine whether an act is judicial by looking to "the nature of the act itself, *i.e.*,

whether it is a function normally performed by a judge, and to the expectations of the

parties, *i.e.*, whether they dealt with the judge in his judicial capacity."  *Stump v.

Sparkman*, 435 U.S. 349, 362 (1978).

Defendant State Judges acted in their administrative, not judicial, capacity when

they created and implemented the Bail Setting Policy.  *Forrester v. White*, 484 U.S. 219,

228 (1988) ("Administrative decisions, even though they may be essential to the very

functioning of the courts, have not [] been regarded as judicial acts.").  The creation of

the policy—which dictates the setting of bail without regard to disability, ability to pay,

---

[4] Judges are subject to declaratory relief when they act in their judicial capacity. *See infra*
Part III.

flight risk, or dangerousness and without the presence of counsel—is administrative, and was done for efficiency and convenience, not to determine rights between parties.

Plaintiffs do not challenge their individual bail determinations.[5]  Rather, they challenge the process by which those bail determinations were made, the lack of counsel, and the resultant discrimination on the bases of wealth and disability.  The decision to promulgate and abide by this Policy is not "an adjudication between parties" and is thereby "less likely" to be a judicial act.  *Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989); *see also Parga v. Board of Cty. Comm'rs of Cty. of Tulsa*, 2019 WL 1231675, at *8 (N.D. Okla. Mar 15, 2019) (rejecting state judges' assertion of judicial immunity in challenge to bail setting practices and holding that "administrative, rulemaking, and supervisory" acts are not subject to judicial immunity).  The establishment of and decision to abide by this Policy did not alter the "expectations of the parties," nor were there any parties dealing "with the judge in his judicial capacity" when these administrative decisions were made.  *Stump*, 435 U.S. at 362.

Defendant Paul Hesse noted that the bail setting policy is administrative, not judicial, acknowledging that the "judges of [Canadian County] follow regular procedures and administrative orders."[6]  Indeed, Exhibit 1 to the Defendant State Judges' Motion to Dismiss, the order signed by Defendant Paul Hesse creating the bail schedule, is titled

---

[5] Such a challenge would be impossible, as Plaintiffs seek to represent a class that includes those who will be arraigned by the Defendant State Judges in the future.

[6] Josh Dulaney, *ACLU files federal lawsuit challenging cash bail system in Canadian County*, THE OKLAHOMAN (Dec. 12, 2019), https://oklahoman.com/article/5649621/aclu-files-federal-lawsuit-challenging-cash-bail-system-in-canadian-county.

"Administrative Order."  Defendant Hesse plainly acted in an administrative, not judicial, capacity when he created and implemented the Bail Setting Policy.

The Fifth Circuit has concluded that the creation of a rigid bail-schedule policy is administrative, not judicial.  In *ODonnell v. Harris County*, the court held that the county judges were acting as policymakers when they promulgated a bail schedule to determine post-arrest release and "acquiesced in an unwritten, countywide process for setting bail that violated both state law and the Constitution."  892 F.3d 147, 155-56 (2018).  Courts around the country have similarly concluded that judges may be sued for injunctive relief when they impose generally applicable rules to administer their bail systems.[7]

## II.    Defendant State Judges Are Not Protected by Legislative Immunity.

Nor are the Defendant State Judges' actions shielded by legislative immunity. Legislative immunity protects those acting as "local legislators . . . from suit for their legislative activities."  *Bogan v. Scott-Harris*, 523 U.S. 44 (1998).  Contrary to Defendants' assertions, Plaintiffs challenge the Defendant State Judges' policy of setting bail without considering disability, ability to pay, risk of flight, or danger to the community and the resultant discrimination.  Creating and adhering to this policy are not legislative acts, but administrative choices.

---

[7] *Booth v. Galveston Cty.*, No. 18-cv-00104, 2019 WL 1129492 (S.D. Tex. Mar. 12, 2019); *Edwards v. Cofield*, No. 3:17-CV-321, 2018 WL 4323920 (M.D. Ala. Sept. 10, 2018); *Buffin v. City of San Francisco*, No. 15-cv-04959-YGR, 2018 WL 1070892 (N.D. Cal. Feb. 26, 2018); *ODonnell v. Harris Cty.*, No. H-16-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017).

*Supreme Court of Virginia v. Consumers Union of U.S., Inc.* does not support the

Defendant State Judges' assertion of legislative immunity.  In *Consumers Union*, the

Court held that the Virginia Supreme Court acted in its legislative capacity when it

created the Virginia Code of Professional Responsibility.  446 U.S. 719 (1980).  The

State of Virginia "vested in the court virtually its entire legislative or regulatory power

over the legal profession."  *Id.* at 722.  The Defendant State Judges in Canadian County

have been given no such broad power.  22 O.S. § 1105.2(B) merely *allows* the presiding

judge to create a bail schedule, which is only one component of the Policy that Plaintiffs

challenge.  Simply because the legislature delegated some latitude to the judges does not

imbue their administrative choices with legislative immunity.  *See Forrester v. White*,

484 U.S. 219, 223-24 (1988) (noting the narrow application of legislative immunity and

the "undeniable tension between official immunities and the ideal of the rule of law.").

Further, the Court in *Forrester* did enjoin the Virginia Supreme Court justices in

their enforcement capacities.  *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S.

719, 736 (1980).  Thus, even if Judge Hesse had legislative immunity for creating the bail

schedule, he and the rest of the Defendant State Judges may still be enjoined for

implementing the Bail Setting Policy as a whole.  *Schell v. Gurich*, 409 F. Supp. 3d 1290,

1295 (W.D. Okla. 2019) ("[L]egislative immunity does not absolutely insulate the

Defendant Justices from the declaratory and injunctive relief sought in this case, as they

also act in an enforcement capacity."); *LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir.

2005) ("When acting in its enforcement capacity, the Louisiana Supreme Court, and its

members, are not immune from suits for declaratory or injunctive relief.").

**III.    Defendant State Judges Are Subject to Declaratory Relief, Regardless of the Capacity in Which They Acted.**

It is beyond question that declaratory relief is an available remedy for violations of Constitutional rights under 42 U.S.C § 1983.  *See Pulliam v. Allen*, 466 U.S. 522 (1984)); *Caliste v. Cantrell*, No. CV 17-6197, 2017 WL 6344152, at *2 (E.D. La. Dec. 12, 2017) (citing *Georgevich v. Strauss*, 772 F.2d 1078, 1088 (3d Cir. 1985)); *Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985).  Defendant State Judges' contention that declaratory relief is unavailable is erroneous.  The primary cases cited by Defendant State Judges address issues of mootness in the context of denying requests for declaratory judgment. *See, e.g.*, *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004); *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994).

In contrast, Plaintiffs properly seek declaratory relief based on Defendant State Judges' unconstitutional Bail Setting Policy.  The Defendant State Judges' practices present an actual case and controversy regarding Defendant State Judges' ongoing violation of Plaintiffs' constitutional rights, including all individuals arraigned in Canadian County.  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). Declaratory relief is a proper alternative remedy because it would end the Defendant Judges' practices and prevent harm to Plaintiffs' constitutional rights.

**IV.    Plaintiffs Allegations Are Sufficiently Specific.**

Defendant State Judges argue that Plaintiffs fail to state a claim because they do not allege that each of the Defendant State Judges arraigned one of the Named Plaintiffs. This argument is baseless.  Plaintiffs bring suit on behalf of themselves and all people

who will be arraigned in Canadian County, pursuant to Defendants' Bail Setting Policy. Defendant State Judges do not deny that they conduct all of the initial appearances and arraignments in Canadian County.  Nor do they deny that they created and follow the Bail Setting Policy.  If a Named Plaintiff's allegations do not reference a particular judge, it is because the arraignment happened so quickly that the Plaintiff did not learn the judge's name.  Compl. at ¶¶ 39, 45, 55, and 61.

Neither of the cases cited by the Defendant State Judges address the class context. *Robbins v. Oklahoma* merely stands for the proposition that Plaintiffs' allegations must be "plausible" and "give the defendants notice of the theory under which their claim is made."  519 F.3d 1242, 1249-48 (10th Cir. 2008).  Named Plaintiffs made plausible allegations,[8] and gave the Defendant State Judges sufficient notice that Plaintiffs challenge the practice of setting bail without regard to disability, ability to pay, flight risk, or danger to the community and the resultant wealth- and disability-based discrimination.  *Booth*, 352 F. Supp. 3d at 732–33 (S.D. Tex. 2019) (allegations that judicial defendants "authoriz[ed], maintain[ed], and enforce[ed] the County's Bail Schedule Policy" were "undoubtedly sufficient to establish standing.").  *Pembauer v. City of Cincinnati*, 475 U.S. 469 (1986), is similarly irrelevant.  It addresses the sufficiency of allegations to establish municipal liability under *Monell*.  But the Defendant State Judges are state, not municipal, policymakers, so *Monell* is irrelevant.  The Defendant State Judges may be enjoined.  *See Ex Parte Young*, 209 U.S. 123, 155-56 (1908).

---

[8] Similar allegations have survived motions to dismiss nationwide.  *See infra* Note 7.

**V.**     **Plaintiffs Sufficiently Pled Due Process and Equal Protection Violations.**

Plaintiffs challenge the Defendant State Judges' rigid application of the bail schedule and their routine failure to provide the constitutionally required procedures before imposing bail on individuals arraigned in Canadian County.  These claims invoke two long-established principles of due process and equal protection that prohibit detaining presumptively innocent individuals unless the government demonstrates, under heightened scrutiny, that detention is necessary because no less restrictive condition or combination of conditions are adequate.  First, the Supreme Court has held that an individual may not be imprisoned based solely on their inability to afford a monetary payment.  *Bearden v. Georgia*, 461 U.S. 660 (1983).  In the pretrial setting, "imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible" under both "due process and equal protection requirements."  *Pugh v. Rainwater*, 572 F.2d 1053, 1056-57 (5th Cir. 1978).  Second, the Supreme Court has recognized pretrial liberty as a fundamental right under the Due Process Clause.  *United States v. Salerno*, 481 U.S. 739, 750–51 (1987); *see also Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983) (recognizing "[a] pretrial detainee's traditional right to freedom before conviction").  Thus, an accused individual cannot be detained pretrial unless the government demonstrates, after rigorous procedural safeguards are followed, that detention is necessary.  *Salerno*, 481 U.S. at 749, 751.

Defendant State Judges misunderstand Plaintiffs' due process and equal protection claims.  Plaintiffs do not challenge the mere existence of a bail schedule.  Nor do they contend that the bail set in their cases amounts to punishment.  Rather, Plaintiffs

challenge Defendant State Judges' practice, in violation of the constitutional requirements described above, of setting bail without making any individualized inquiries regarding an arrestee's ability to pay, potential danger to the community, or risk of flight prior to setting bail. The bail decisions imposed by Defendant State Judges fail the heightened scrutiny required of bail orders that operate to detain. *See Salerno*, 481 U.S. 739 (1987). Courts across the country have found bail-setting practices similar to Defendants' to be unconstitutional. *See*, *e.g.*, *ODonnell v. Harris Cty.*, 892 F.3d 147, 156 (5th Cir. 2018); *Rodriguez v. Providence Cmty. Corrs., Inc.*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015); *Little v. Frederick*, No. 17-00724, 2018 WL 1221119 (Mar. 8, 2018). Defendant State Judges' bail practices as alleged violate the due process and equal protection rights of individuals arraigned in Canadian County.

## VI.   Defendants Do Not Deny There Is a Sixth Amendment Right to Counsel at Bail Proceedings, and Plaintiffs Have Standing to Sue for Defendant State Judges' Violation of That Right.

Defendants do not challenge that there is a Sixth Amendment right to counsel at initial appearances/arraignments. They only argue that individual Plaintiffs lack standing to bring this Sixth Amendment claim because they do not allege that they have been "found indigent" or that they requested counsel. This argument is meritless.

Defendants cite no case law requiring an "indigence finding" before an individual asserts the right to counsel based on indigence. Indeed, the Complaint makes clear that Defendants failed to consider Plaintiffs' indigence at all, a deficiency that, like Defendants' failure to make an individualized bail determination, is a direct consequence of their constitutionally deficient Bail Setting Policy. The Complaint contains numerous

factual allegations that show individual Plaintiffs were indigent and thus could not afford counsel.  Compl. at ¶¶ 13-18, 29, 31, 34, 38, 42, 48, 49, 56, 62, 67.

Defendants argue that the Sixth Amendment right to counsel does not attach at arrest, citing *United States v. Gouveia*.[9]  They assert that "poverty at the time of arrest does not trigger the entitlement to counsel."  Def.'s Br. at 13-14.  This is correct, but irrelevant.  The Sixth Amendment right to counsel attaches at "the initiation of adversary judicial criminal proceedings."  *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198 (2008) (citation omitted).  There is therefore no dispute that Named Plaintiffs' right to counsel attached at the time of their initial appearances and arraignments.  Once this right attaches, a defendant is entitled to counsel at "all 'critical stages' of the criminal proceedings."  *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (internal citations omitted).  A "critical stage" is "a step of a criminal proceeding, *such as arraignment*, that h[olds] significant consequences for the accused."  *Bell v. Cone*, 535 U.S. 685, 695–96 (2002) (emphasis added).

Defendants also do not dispute that the bail determination during the arraignment or initial appearance is a critical stage.  And with good reason—numerous courts have recognized that the government must provide appointed counsel for bail hearings.  *E.g., Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. 2018); *Higazy v. Templeton*, 505 F.3d 161, 172 (2d Cir. 2007); *see Booth v. Galveston Cty.*, No. 18-CV-00104, 2019 WL 3714455, at *13 (Aug. 7, 2019) (*Booth II*).  In *Booth II*, the court noted, "[n]ot only is a

---

[9] 467 U.S. 180, 190 (1984).

bail hearing a 'critical stage' in the criminal process, but it is arguably the *most* 'critical stage'" considering the serious consequences flowing from the imposition of bail.  2019 WL 3714455, at *14.  *See also*, *Schultz v. State*, 330 F. Supp. 3d 1344, 1373-74 (N.D. Ala. 2018) (noting that the "requirement of counsel at an initial bail hearing—perhaps the most significant safeguard—mitigates other constitutional concerns. . . . [i]n contrast, the lack of counsel [ ] exacerbates each procedural defect.").

There is also no requirement that Plaintiffs complete a form requesting counsel to have standing to assert their Sixth Amendment right to counsel.  As an initial matter, Plaintiffs did not even receive OIDS applications until the day of, or even sometimes *after*, their initial appearances/arraignments.  Compl. at ¶¶ 34, 57, 63, 68.  They did not have enough time complete the OIDS application, which requires them to contact and name three attorneys and to have the application notarized.[10]  Regardless, once the Sixth Amendment right has attached, it need not be invoked, rather it must be voluntarily, knowingly and intelligently *waived*.  *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).  "If counsel for the accused is absent during a critical stage, then there is a presumption of prejudice and reversal is automatic."  *United States v. Pleitez*, 876 F.3d 150, 157 (5th Cir. 2017) (holding that the "final determination of a mandatory restitution award" is a critical stage without considering whether the defendant requested counsel for the proceeding) (internal quotation omitted).

---

[10] Ex. 2, OIDS application.

VII.   **Plaintiff NAACP has Standing to Assert a First Amendment Right of Access Claim and the Right Extends to Bail Setting Hearings.**

Plaintiff NAACP of Oklahoma alleges that Defendants violated its First Amendment right to open courts on December 9, 2019, when its member attempted to view bail proceedings and was denied access.  Compl. ₱ 19.  Defendants argue Plaintiffs' First Amendment claim fails because Plaintiff NAACP of Oklahoma did not sufficiently plead standing to sue and because the First Amendment has not been extended to proceedings besides criminal trials.  Both of these arguments are without merit.

A.   **Plaintiff NAACP of Oklahoma Has Sufficiently Pled Standing.**

Article III standing requires three elements: (1) the "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of" that is "fairly . . . traceable to the challenged action of the defendant" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted).

Defendants appear to argue that Plaintiff NAACP of Oklahoma failed to meet the first and second elements of Article III standing.  First, Defendants contend that Plaintiff NAACP has not alleged an injury in fact because its member "attended court on a day when arraignments were not occurring."  Def.'s Br. at 14.  This argument is baseless.  Plaintiff NAACP of Oklahoma suffered an actual injury the moment the court clerk

informed its member that "he could not observe [arraignments] because they are held in judicial chambers." Compl. ¶ 101. The clerk's response was unequivocal: The member would not be able to observe arraignments even if he came back on a correct day.

Next, Defendant State Judges contend that Plaintiff NAACP of Oklahoma failed to allege a concrete injury fairly traceable to a named defendant. Defendants are wrong. First, a plaintiff need only allege a "causal connection between the injury and the conduct complained of" that is "fairly [ ] traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560. Plaintiff NAACP of Oklahoma did just that. It alleged that a Canadian County court clerk, an employee and agent of Defendant State Judges, informed its member that he could not view arraignments because they are held in judicial chambers.[11] The individual Named Plaintiffs' experiences confirm Defendant State Judges' policy, as reported by the clerk. All alleged that their arraignments were conducted by a Defendant State Judge via videoconference, in a proceeding closed to the public.[12] It is clear that the Defendant State Judges' practice of closing bail proceedings from the public was the cause of the NAACP of Oklahoma's injury.

**B.     The First Amendment Right of Access Extends to Bail Hearings.**

The Supreme Court's two-part "experience and logic" test for deciding whether the First Amendment protects the right to access a particular criminal proceeding asks "(1)

---

[11] Contrary to Defendants' assertion, it is irrelevant whether the court clerk is a named defendant because the clerk's actions were "fairly traceable to" the Defendant State Judges' policy of conducting closed arraignments in judicial chambers. *Lujan*, 504 U.S. at 560. Plaintiff NAACP of Oklahoma has adequately pled that causal connection.

[12] *See*, Compl. ¶¶ 13, 14, 15, 16, 17, and 18.

whether the proceeding has historically been open to the public and press; and (2)

whether public access plays a significant positive role in the functioning of the particular

process in question." *In re Hearst*, 641 F.3d 168, 175 (5th Cir. 2011) (internal quotation

omitted).[13]  The majority of federal circuit courts to have considered the issue have found

that, notwithstanding the lack of an historic tradition of open bail hearings, these

proceedings satisfy the "experience" and "logic" test due to a growing recognition of the

significance of pretrial release decisions on the remainder of a criminal case.[14]

Bail determinations are important not only for the accused individual and their

ability to prepare a defense, but for the community as a whole.  Members of the public,

---

[13] Defendants misstate the Supreme Court's First Amendment right of access analysis. Defendants argue that the Court has limited the extension of the First Amendment right of access to proceedings that "function much like a full-scale trial." Def.'s Br. at 16. However, Defendants conveniently omit the first half of the *Press-Enterprise II* quote cited, where the Court made it clear that ". . . the First Amendment question cannot be resolved <u>solely on the label we give the event</u>, *i.e.*, 'trial' or otherwise, particularly where the [proceeding in question] functions much like a full-scale trial." *Press-Enterprise II*, 478 U.S. at 7 (emphasis added). Instead of rigidly limiting the First Amendment right, the Court went on to announce the "experience" and "logic" test which has since been applied by courts of appeals in extending the First Amendment right to various aspects of the criminal process that do not function like a "full-scale trial." *See, e.g.*, *In re Hearst*, 641 F.3d 168 (5th Cir. 2011) (sentencing proceedings); cases cited *infra* note 14.

[14] *See In re Globe Newspapers Co.*, 729 F.2d 47, 52 (1st Cir. 1984) (recognizing that "the public has a First Amendment right of access to pretrial proceedings setting and modifying bail"); *United States v. Alcantara*, 396 F.3d 189, 196–97 (2d Cir. 2005) (noting that bail hearings "have been held to be subject to the public's First Amendment right of access" because they are an "integral part of a criminal prosecution"); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) (same); *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983) (noting that "[p]retrial release proceedings require decisions that attract significant public interest, and invite legitimate and healthy public scrutiny" and holding that the First Amendment protects a public right of access to bail-reduction hearings); *United States v. Thompson*, 713 F.3d 388, 394 (8th Cir. 2013) (same); and *Seattle Times Co. v. U.S. Dist. Court for W. Dist. of Wash.*, 845 F.2d 1513, 1515 (9th Cir. 1988) ("We hold, therefore, that the press and public have a right of access to pretrial release proceedings and documents filed therein.").

like Mr. Adair, are interested in ensuring that accused individuals are treated fairly at every stage of criminal proceedings.  The public should have a right to access bail determinations because "openness will help to assure the public that the decision is properly reached."  *In re Globe*, 729 F.2d at 52.  Although neither the Tenth Circuit nor this district has specifically addressed whether access to bail or other pretrial hearings falls within the First Amendment's protections, this Court should follow the First, Second, Fourth, Fifth, Eighth and Ninth Circuits and find that they do.

## VIII.  Plaintiffs White and Musgrave State Claims Under Title II of the ADA and the Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The regulations implementing Title II require affirmative steps to ensure that the programs, services and activities of a public entity are accessible to individuals with disabilities.[15]  Section 504 imposes virtually identical requirements.  28 C.F.R. Part 35, App. B at § 35.103 ("Because title II of the ADA essentially extends the antidiscrimination prohibition embodied in section 504 to all

---

[15] 28 C.F.R. § 150(a) ("A public entity shall operate each service, program, or activity so that the service, program, or activity … is readily accessible to and usable by individuals with disabilities."); 28 C.F.R. 35.130(b)(3)(i) ("A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination[.]"); 28 C.F.R. § 35.130(b)(7)(i) ("A public entity shall make reasonable modifications in policies, practices, or procedures when … necessary to avoid discrimination[.]"); 28 C.F.R. § 35.160(a)(1) ("A public entity shall take appropriate steps to ensure that communications with [people] with disabilities are as effective as communications with others."); *see also* 28 C.F.R. §§ 35.106, 35.130(b)(8), 35.160(a)(2).

actions of State and local governments, the standards adopted in this part are generally the same as those required under section 504 for federally assisted programs.").

Courts have repeatedly underscored the affirmative steps that the ADA requires to ensure that disabled people have equal access.  In *Delano-Pyle*, the Fifth Circuit wrote:

> The ADA expressly provides that a disabled person is discriminated against when an entity fails to "*take such steps as may be necessary* to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Id.* at § 12182(b)(2)(A)(iii) (emphasis added). A plain reading of the ADA evidences that Congress intended to impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability. *Id.* § 12182(b)(2)(A)(ii)-(iii) (1985).

*Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002).[16]

In *Pierce v. District of Columbia.*, 128 F. Supp. 3d 250 (D.D.C. 2015), the District Court made clear that "Section 504 and Title II include an *affirmative* obligation to make benefits, services, and programs accessible to disabled people, without regard to whether persons with disabilities who seek the benefit of public services have *requested* accommodation." *Id.* at 266, 269.[17]

---

[16] *See also Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007) ("The ADA requires more than physical access to public entities: it requires public entities to provide 'meaningful access' to their programs and services."); *Hamer v. City of Trinidad*, 924 F.3d 1093, 1104-05 (10th Cir. 2019) ("Title II therefore imposes 'an affirmative obligation to accommodate persons with disabilities.'").

[17] *See also McCadden by McCadden v. City of Flint*, No. 18-12377, 2019 WL 1584548, at *7 (E.D. Mich. Apr. 12, 2019) (reasoning that "although the City, Johnson, and Walker are not alleged to have known about Plaintiff's disability, Plaintiff has alleged that the City knew or should have know[n] about the elevated likelihood that any Flint juveniles would suffer from a disability and should have taken action to address how officers interact with Flint juveniles."); *Updike v. Multnomah Cty*., 870 F.3d 939, 949 (9th Cir. 2017) ("Title II and § 504 include an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities."); *Chisolm*, 275 F.3d at 331-32 (3d Cir. 2001) ("[T]o the extent that the Vicinage argues a 'lack of notice'

These affirmative obligations apply to local courts, *see* Plaintiffs' Opposition to Motion to Dismiss of Defendant Canadian County District Court, and to disabled individuals detained in jail who experience discrimination—including with respect to pretrial hearings. *Robertson*, 500 F.3d at 1193-95; *Chisolm*, 275 F.3d at 331 ("The District Court found, and we agree, that extradition hearings are 'programs' within the definition of the ADA and the Rehabilitation Act."). Here, Plaintiffs White and Musgrave allege that, on the basis of their disabilities, they were unable to participate effectively and equally in their bail-setting hearings, and were denied an equal opportunity for pretrial release, because of the unnecessary policies, practices, criteria, and methods of administration that comprise the Bail Setting Policy, including:

- imposing unaffordable bail based upon a bail schedule, without consideration of whether the individual, with or without reasonable modifications, can be released pretrial without posing an unmanageable risk of flight or danger to the community, Compl. at ¶¶ 2, 6;

- deterring arrestees from asking questions with respect to their bail setting, Compl. at ¶¶ 30, 33, 46, 47;

- conducting bail setting without counsel, Compl. at ¶ 4, 6, 13, 15, 30, 34, 47, 48;

- conducting bail-setting hearings by videoconference in one to five minutes in a loud and chaotic environment in which disabled arrestees are experiencing particularly acute disability-related symptoms due to the impacts of incarceration, Compl. at ¶¶ 4, 6, 13, 15, 25, 27-32, 44-47, 50, *see also* Compl. at ¶ 55; and

- failing to ensure, on a class-wide basis, reasonable modifications for arrestees with disabilities with respect to bail setting, including by failing to assess the need for

---

of Chisolm's disability, that lack of notice may demonstrate a failure of the Vicinage to discharge its statutory responsibility of providing interpretive services for the deaf. The provision of such services must include some reasonable means of determining when they will be needed.").

modifications, or to provide information about and an opportunity to request modifications, Compl. at ¶¶ 2, 6, 13, 15, 30, 31, 33, 45, 46, 47, 116.

Defendant State Judges chose to adopt these inaccessible methods of administration even though it is known or should be known that a substantial proportion of arrested individuals have disabilities, particularly mental disabilities.  As Plaintiffs detail in their papers supporting class certification, 60 percent of those imprisoned in Oklahoma have symptoms or a history of mental illness.  That people with disabilities would be disadvantaged by Defendants' Bail Setting Policy is obvious.  Plaintiffs White and Musgrave therefore state claims under the ADA and Section 504.

### A. The Tenth Circuit's Opinion in *Robertson v. Las Animas County Sheriff's Department* Does Not Support Dismissal.

*Robertson* supports Plaintiffs' theory.  In *Robertson,* the Tenth Circuit stated the general rule that "[b]efore a public entity can be required under the ADA to provide a disabled individual with an auxiliary aid or service, a public entity must have knowledge of the individual's disability and the individual's need for an accommodation."  500 F.3d 1185, 1196 (10th Cir. 2007).  After stating this rule, the court went on to explain that no request is required at all when the "need was 'obvious' to the defendants."  *Id.* at 1198. Here, Plaintiffs' allegations demonstrate that the need for reasonable accommodations is obvious.  Further, as in *Robertson*, Plaintiffs White and Musgrave did their best to inform those in charge of their detention of their disabilities and their disability-related needs. Compl. at ¶¶ 27, 50.  Defendant State Judges' reliance on *Robertson* is therefore misplaced.

Plaintiffs further allege that, as a result of the Bail Setting Policy, they and others with disabilities are deterred and prevented from requesting reasonable modifications. At no point are disabled arrestees provided with information about reasonable modifications available to them, as required under the ADA and Section 504. *Cf.* 28 C.F.R. § 35.106 ("A public entity shall make available to … participants … information regarding the provisions of this part and its applicability to the services, programs, or activities of the public entity."). To the contrary, arrestees are instructed not to talk. Compl. at ¶¶ 29, 30, 32, 33, 45-47, 55. Thus, individuals with disabilities are both uninformed about their rights and prevented from exercising them, in violation of the ADA and Section 504. *See Chisholm*, 275 F.3d at 330 (reversing summary judgment based on contention that incarcerated plaintiff did not request caption where "there is no evidence that Chisolm knew that closed captioning services were available" and "whether Chisolm even could have communicated a request for closed captioning presents a question of fact.").

Finally, and most importantly, Defendants mischaracterize or misapprehend the nature of Plaintiffs' claims. Plaintiffs White and Musgrave are not seeking compensatory damages for the denial of a particular reasonable modification on a particular occasion, as in *Robertson*. Rather, Plaintiffs contend that the entire Bail Setting Policy, as designed and implemented, violates the ADA and Section 504 because it is inaccessible to disabled people and denies them an equal opportunity to participate and have an equal chance at pretrial release. This aspect of *Robertson* is therefore inapposite.

**IX.** **_Younger_ Abstention Is Inapplicable.**

Defendants contend that this Court should abstain from exercising its jurisdiction over this matter, yet do not even bother to articulate the *Younger* abstention standard. Federal courts "have a 'virtually unflagging obligation' to exercise the jurisdiction granted them by Congress." *Seneca-Cayuga Tribe of Okla. v. State of Okla. Ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989) (internal quotation omitted). Abstention from exercising that jurisdiction "is the exception, not the rule." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002). Abstention under *Younger v. Harris*, 401 U.S. 37 (1971) is an equitable doctrine, based in concerns for federalism and comity, requiring that when "there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Abstention under *Younger* is only appropriate when three requirements are met: "(1) state judicial proceedings are ongoing; (2) state proceedings implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1201, 1204 (10th Cir. 2003).

**A.** **_Younger_ Is Inapplicable as Plaintiffs' Requested Relief Is Not Directed at Their Criminal Prosecutions.**

*Younger* abstention is only appropriate when a federal court is asked to enjoin an ongoing state proceeding. *Sprint*, 571 U.S. at 72. When the relief sought is not directed at an ongoing state proceeding, there is no basis for abstention. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Walker v. City of Calhoun*, 901 F.3d 1245, 1254 (11th Cir.

2018).  In *Gerstein*, Florida prisoners brought a federal class action suit challenging the state's failure to provide probable cause hearings before detaining a criminal defendant. *Id.*  The *Gerstein* plaintiffs did not seek release from state custody, only a federal court order requiring the state to provide a judicial determination of probable cause.  The Supreme Court upheld the lower courts' decision that *Younger* abstention was inappropriate because the requested "injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing."  *Id.* at 108 n.9.  Moreover, because the *Gerstein* plaintiffs could not raise their constitutional challenges to Florida's pretrial detention practices as a defense of the criminal prosecution, the Court concluded that the requested "order to hold preliminary hearings could not prejudice the conduct of the trial on the merits."  *Id.*[18]

The same is true of Plaintiffs' constitutional challenges to Defendants' Bail Setting Policy.  Plaintiffs are not seeking to enjoin any aspect of their underlying criminal prosecutions.  They are seeking a declaration that the Defendants' practice of setting bail without adequate procedural and substantive due process protections is unconstitutional, and an order requiring Defendants to provide constitutionally adequate process at bail setting proceedings.  Thus, *Younger* is inapplicable.

---

[18] The Court invalidated Florida's practice and held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."  *Id.* at 113.

**B.      State Proceedings Do Not Provide an Adequate Opportunity for Plaintiffs to Litigate Their Constitutional Challenges to Defendants' Bail Setting Practices.**

Abstention is also inappropriate because the third prong of the *Younger* test cannot be met.  Plaintiffs do not have an adequate opportunity to challenge Defendant State Judges' Bail Setting Policy in state court proceedings.[19]  The core of Plaintiffs' claims are challenges to the adequacy of the state court bail-setting proceeding itself.  It is precisely in situations like this, where the relief sought is an "improvement of pretrial procedures and practice," that courts have relied on *Gerstein* and found that the claims are "not properly reviewed by criminal proceedings in state court," foreclosing *Younger* abstention.  *ODonnell v. Harris*, 892 F.3d 147, 156 (5th Cir. 2018).

In *ODonnell*, the plaintiffs asserted that the bail-setting practices followed by county judges in Harris County, Texas violated the equal protection and due process clauses of the Fourteenth Amendment.  892 F.3d 147 (5th Cir. 2018).  On appeal, the Fifth Circuit rejected the county's argument that *Younger* required abstention.  The Court held that the "adequacy of the state court review of bail-setting procedures [wa]s essential to ODonnell's federal cause of action," and thus the third prong of the *Younger* test could not be met.  *Id.* at 156.  In such a situation, to "find that the plaintiffs have an adequate hearing on their constitutional claim in state court would decide [its] merits."  *Id.*

---

[19] The first two requirements are not at issue.  First, Plaintiffs' claims stem from constitutionally inadequate bail proceedings in criminal cases pending in state court.  Second, for purposes of a *Younger* analysis, "state criminal proceedings are viewed as a traditional area of state concern."  *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019).

Similarly, the Northern District of Oklahoma recently declined to abstain from exercising its jurisdiction over constitutional challenges to nearly identical bail-setting practices in Tulsa, Oklahoma. *Parga v. Tulsa*, No. 18-CV-0298, 2019 WL 1231675 *6 (N.D. Okl. Mar. 15, 2019). The court found *Younger* to be inapplicable because the challenge to the defendants' wealth-based system of detention involved "issues [that] cannot be raised in defense of any plaintiff's criminal prosecution" and because "the injunction requested [ ] is not directed at the state criminal proceedings." *Id.* Many federal courts across the country have come to the same conclusion and have declined to abstain from cases raising similar constitutional challenges to bail-setting regimes.[20]

The policy concerns underlying the *Younger* abstention doctrine are not present, and even if they were, the test for abstention cannot be met. *Younger* is inapplicable.

## CONCLUSION

For the foregoing reasons, Defendant State Judges' Motion to Dismiss should be denied.

---

[20] *Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018); *ODonnell v. Harris Cty*., 892 F.3d 147 (5th Cir. 2018); *Dixon v. City of St. Louis*, No. 19-0112, 2019 WL 2437026 (E.D. Mo. June 11, 2019), *temporary stay granted*, No. 19-2254 (8th Cir. July 3, 2019); *Parga v. Tulsa*, No. 18-CV-0298, 2019 WL 1231675 (N.D. Okla. Mar. 15, 2019); *Booth v. Galveston Cty.*, 352 F. Supp. 3d 718 (S.D. Tex. 2019); *Caliste v. Cantrell*, No. 17-6197, 2017 WL 3686579 (E.D. La. Aug. 25, 2017); *Little v. Frederick*, No. 17-00724, 2017 WL 8161160 (W.D. La. Dec. 6, 2017), *adopted in relevant part*, 2018 WL 1221119 (Mar. 8, 2018); *Welchen v. Cty. of Sacramento*, No. 16-00185, 2016 WL 5930563 (E.D. Cal. Oct. 11, 2016); *Rodriguez v. Providence Cmty. Corrs., Inc.*, 155 F. Supp. 3d 758 (M.D. Tenn. 2015).

Respectfully Submitted,

/s/ Twyla Carter
(Signed by Filing Attorney with
 permission of Attorney)
Twyla Carter*
Washington State Bar Number: 39405
Brandon J. Buskey*
Alabama Bar Number: ASB2753-A50B
American Civil Liberties Union
  Foundation, Criminal Law Reform
  Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tcarter@aclu.org
bbuskey@aclu.org


/s/ Megan Lambert
(Signed by Filing Attorney with
 permission of Attorney)
Megan Lambert
Oklahoma Bar Number: 33216
Ryan Kiesel
Oklahoma Bar Number: 21254
Michael Redman
Oklahoma Bar Number: 13340
American Civil Liberties Union of
  Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
rkiesel@acluok.org
mredman@acluok.org

/s/ Aaron Lewis
Aaron Lewis*
California Bar Number: 284244
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800
alewis@cov.com

Amia Trigg*
District of Columbia Bar Number: 1023003
Marta Cook*
District of Columbia Bar Number: 1045613
Laura Beth Cohen*
Michigan Bar Number: P83111
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4656
(202) 662-6000
atrigg@cov.com
mcook@cov.com
lcohen@cov.com

/s/ Claudia Center
(Signed by Filing Attorney with
 permission of Attorney)
Claudia Center*
California Bar Number: 158255
Zoe Brennan-Krohn*
California Bar Number: 324912
American Civil Liberties Union
  Foundation, Disability Rights Program
39 Drumm Street
San Francisco, CA 94111
(415) 343-0762
ccenter@aclu.org
zbrennan-krohn@aclu.org

26

/s/ Blake Johnson
_____
(Signed by Filing Attorney with
  permission of Attorney)
Blake Johnson
Oklahoma Bar Number: 32433
Tyler Box
Oklahoma Bar Number: 31817
Weston Watts
Oklahoma Bar Number: 33299
Justin Williams
Oklahoma Bar Number: 32539
Clayburn Curtis
Oklahoma Bar Number: 30538
Overman Legal Group, PLLC
809 NW 36th St.
Oklahoma City, OK 73118
(405) 605-6718
blakejohnson@overmanlegal.com
tylerbox@overmanlegal.com
westonwatts@overmanlegal.com
justinwilliams@overmanlegal.com
claycurtis@overmanlegal.com

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

> Stefanie E. Lawson
> Erin M. Moore
> Devan A. Pederson
> Assistant Attorney General
> Oklahoma Attorney General's Office
> Litigation Division
> 313 NE 21st Street
> Oklahoma City, Oklahoma 73105
> stefanie.lawson@oag.ok.gov
> erin.moore@oag.ok.gov
> devan.pederson@oag.ok.gov
> *Attorneys for Defendants*

> /s/ Amia L. Trigg
> Amia L. Trigg