## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| [1] MISTY WHITE,<br>[2] JERMAINE BRADFORD,<br>[3] JANARA MUSGRAVE,<br>[4] LANDON PROUDFIT,<br>[5] BRADLEY BARBER, JR., and<br>[6] DAKOTA KAPPUS,<br><br>     On behalf of themselves and all<br>others similarly situated, and<br><br>[7] OKLAHOMA STATE<br>CONFERENCE, NAACP,<br><br>          Plaintiffs,<br><br>v.<br><br>[1] HON. PAUL HESSE, in his official<br>capacity as presiding District Court<br>Judge,<br>[2] HON. JACK MCCURDY,<br>in his official capacity as District Court<br>Judge,<br>[3] HON. BARBARA HATFIELD,<br>[4] HON. CHARLES GASS,<br>[5] HON. KHRISTAN STRUBHAR, in their<br>official capacities as Special District<br>Judges in the Canadian County District<br>Court, and<br>[6] CANADIAN COUNTY DISTRICT<br>COURT, 26TH JUDICIAL DISTRICT,<br><br>          Defendants. | Case No. 5:19-cv-01145-JD<br>(Class Action)<br><br>Hon. Jodi W. Dishman |

## PLAINTIFFS WHITE AND MUSGRAVE'S OPPOSITION TO
## MOTION TO DISMISS OF DEFENDANT
## <u>CANADIAN COUNTY DISTRICT COURT, 26TH JUDICIAL DISTRICT</u>

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES...................................................................................ii

INTRODUCTION ............................................................................................. 1

STANDARD OF REVIEW ............................................................................... 1

ARGUMENT..................................................................................................... 2

I.      Defendant District Court Is a "Public Entity," and the Appropriate
        Defendant, Under Title II of the ADA. ................................................. 2

II.     Plaintiffs White and Musgrave Bring No Section 1983 Claim Against
        Defendant District Court. .................................................................... 8

III.    Plaintiffs White and Musgrave State Claims Under Title II of the ADA and
        the Rehabilitation Act.......................................................................... 9

        A.      The Tenth Circuit's Opinion in *Robertson v. Las Animas County
                Sheriff's Department* Does Not Support Dismissal on the Pleadings. ........ 16

CONCLUSION ............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                      **Page(s)**

*Alexander v. Choate,*
    469 U.S. 287 (1985) ................................................................................. 11, 12, 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 1

*Ashley Creek Phosphate Co. v. Chevron USA, Inc.,*
    315 F.3d 1245 (10th Cir. 2003) ....................................................................... 1

*Bd. of Trustees of Univ. of Ala. v. Garrett,*
    531 U.S. 356 (2001) ....................................................................................... 3, 4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................... 1

*Blum v. Bacon,*
    457 U.S. 132 (1982) ......................................................................................... 11

*Chisolm v. McManimon,*
    275 F.3d 315 (3d Cir. 2001) .............................................................. 3, 12, 14, 19

*City of Trinidad, Colorado v. Hamer,*
    No. 19-283, 2019 WL 6689670 (U.S. Dec. 9, 2019) .................................... 12

*Consol. Rail Corp. v. Darrone,*
    465 U.S. 624 (1984) ......................................................................................... 11

*Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.,*
    815 F. Supp. 1403 (D. Colo. 1992) .................................................................. 2

*Delano-Pyle v. Victoria Cty., Tex.,*
    302 F.3d 567 (5th Cir. 2002) ..................................................................... 11, 12

*Duncan v. City of Nichols Hills,*
    1996 OK 16, 913 P.2d 1303 (1996) .................................................................. 7

*Duvall v. Cty. of Kitsap,*
    260 F.3d 1124 (9th Cir. 2001) ........................................................................... 3

*Hamer v. City of Trinidad,*
    924 F.3d 1093 (10th Cir. 2019) ..................................................................... 12

*Helen L. v. DiDario*,
 46 F.3d 325 (3d Cir. 1995) ........................................................................ 11

*Hopkins v. State*,
 237 Kan. 601, 702 P.2d 311 (1985) ............................................................ 8

*Jaegly v. Lucas Cty. Bd. of Comm'rs*,
 No. 16-CV-1982, 2017 WL 6042237 (N.D. Ohio Dec. 6, 2017) .............. 3, 8

*Madsen v. United States ex rel. U.S. Army Corps of Eng'rs*,
 841 F.2d 1011 (10th Cir. 1987) ................................................................... 2

*Martinez v. Winner*,
 771 F.2d 424 (10th Cir. 1985) ..................................................................... 7

*Mason v. Twenty-Sixth Judicial Dist. of Kansas, Court Servs. Div.*,
 670 F. Supp. 1528 (D. Kan. 1987) ............................................................... 8

*McCadden by McCadden v. City of Flint*,
 No. 18-12377, 2019 WL 1584548 (E.D. Mich. Apr. 12, 2019) ................ 13

*Miller v. Glanz*,
 948 F.2d 1562 (10th Cir. 1991) ................................................................. 18

*Pierce v. District of Columbia.*,
 128 F. Supp. 3d 250 (D.D.C. 2015) ..................................................... 12, 14

*Popovich v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations Div.*,
 276 F.3d 808 (6th Cir. 2002) (en banc) ...................................................... 3

*Robertson v. Las Animas County Sheriff's Department*
 500 F.3d 1184, 1196 (10th Cir. 2007) ...................................................... 16

*Robertson v. Las Animas Cty. Sheriff's Dep't*,
 500 F.3d 1185 (10th Cir. 2007) .........................................................*passim*

*Sch. Bd. of Nassau Cty., Fla. v. Arline*,
 480 U.S. 273 (1987) ................................................................................... 11

*Sutton v. Utah State Sch. for Deaf & Blind*,
 173 F.3d 1226 (10th Cir. 1999) ................................................................. 18

*Tennessee v. Lane*,
 541 U.S. 509 (2004) .............................................................................. 3, 12

*Tiemann v. Tul-Ctr., Inc.*,
   18 F.3d 851 (10th Cir. 1994) ........................................................................ 7

*Updike v. Multnomah Cty.*,
   870 F.3d 939 (9th Cir. 2017) ...................................................................... 13

*Ex parte Young*,
   209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ........................................ 3

## STATUTES AND OTHER AUTHORITIES

ADA, 42 U.S.C. § 12131 .............................................................. 1, 2, 8, 9, 13, 14

Okla. Stat. Ann. tit. 51 ............................................................................... 6, 8

Okla. Stat. tit. 20, ch. 1, app. 2 ...................................................................... 6

Okla. Stat. tit. 20, § 22 ............................................................................... 5, 7

Okla. Stat. tit. 20, § 92.27 .......................................................................... 5, 7

Okla. Const. art. VII, § 10 ....................................................................... 5, 6, 7

28 C.F.R. 35.130(b)(3)(i) ............................................................................... 9

28 C.F.R. Part 35, App. B at § 35.102 ................................................... 2, 8, 10

28 C.F.R. Part 42, Subpart G ....................................................................... 11

28 C.F.R. § 35.104 ........................................................................................ 2

28 C.F.R. § 35.105(a) .................................................................................. 10

28 C.F.R. § 35.106 ................................................................................. 10, 19

28 C.F.R. § 35.130(b) ................................................................ 8, 9, 10, 14, 18

28 C.F.R. § 35.150 ................................................................................... 9, 13

28 C.F.R. § 35.160 ...................................................................................... 10

28 C.F.R. § 35.163(a) .................................................................................. 10

28 C.F.R. § 42.503 ................................................................................. 10, 18

## INTRODUCTION

Plaintiffs Misty White and Janara Musgrave ("Plaintiffs") bring two claims against Defendant Canadian County District Court, 26th Judicial District ( "District Court") and the individual defendants, one under Title II of the Americans with Disabilities Act ("ADA" or "the Act") and one under Section 504 of the Rehabilitation Act ("Section 504").  No named plaintiff other than White and Musgrave brings claims against Defendant District Court under the ADA or Section 504.  And no plaintiff brings any claims under Section 1983 against Defendant District Court.  Plaintiffs' ADA claims are properly brought against Defendant District Court because it is a "public entity" under 42 U.S.C. § 12131(a).  Their Rehabilitation Act claims are properly brought against Defendant District Court because, Plaintiffs are informed and believe, it receives federal financial assistance.  For purposes of Rule 12(b)(6), Plaintiffs have stated claims under these laws.

## STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the district court must accept "the well-pleaded allegations of the complaint as true and constru[e] them in the light most favorable to the [plaintiff]."  *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1267 (10th Cir. 2003).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under Rule 12(b)(1), a motion to dismiss may be granted if the court lacks subject

matter jurisdiction.  The determination of subject matter jurisdiction is a threshold question of law.  *Madsen v. United States ex. rel. U.S. Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987).  The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Rule 12(b)(1).  *See, e.g., Consumers Gas & Oil, Inc. v. Farmland Indus. Inc*., 815 F. Supp. 1403, 1408 (D. Colo. 1992).

## ARGUMENT

### I.   Defendant District Court Is a "Public Entity," and the Appropriate Defendant, Under Title II of the ADA.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Act defines "public entity" as "any State or local government; [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]"  42 U.S.C. § 12131(a); *see also* 28 C.F.R. § 35.104 (same); 28 C.F.R. Part 35, App. B at § 35.102 ("[T]itle II applies to anything a public entity does. Title II coverage … is not limited to 'Executive' agencies, but includes activities of the legislative and judicial branches of State and local governments."); U.S. Dep't of Justice, Civil Rights Division, The Americans with Disabilities Act, Title II Technical Assistance Manual Covering State and Local Government Programs and Services, at sections II-1.2000, II-5.0000, II-7.1000, II-9.2000, https://www.ada.gov/taman2.html (discussing application of ADA to various programs, activities, and services provided or operated by state and local governments

including courts).[1]

Courts have repeatedly permitted claims under Title II against state and local courts. *See Popovich v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations Div.*, 276 F.3d 808, 818 (6th Cir. 2002) (en banc) (remanding for retrial plaintiff's Title II claim against state court's domestic relations division); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1142 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (finding genuine issues of material fact as to whether superior court of Kitsap County intentionally discriminated against Duvall in violation of the ADA and the Rehabilitation Act); *Chisolm v. McManimon*, 275 F.3d 315, 320, 331 (3d Cir. 2001) (reversing summary judgment and remanding Title II claim for further proceedings against Mercer County Vicinage, a county court authorized by the state constitution and then merged into the state superior court system); *Jaegly v. Lucas Cty. Bd. of Comm'rs*, No. 16-CV-1982, 2017 WL 6042237, at *3 (N.D. Ohio Dec. 6, 2017) (reaffirming holding that Lucas County Common Pleas Court had capacity to be sued); *see also Tennessee v. Lane*, 541 U.S. 509, 527 (2004) (affirming denial of motion to dismiss Title II claim brought against the State of Tennessee and a number of Tennessee counties alleging disability discrimination by the state court system, and explaining that in enacting the ADA, "Congress learned that many individuals, in many States across the country, were being

---

[1] Plaintiffs also name individual defendants in their ADA and Section 504 claims. Plaintiffs seek injunctive relief and do not seek any compensatory damages.  The standards of the ADA "can be enforced … by private individuals in actions for injunctive relief under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (2001).

excluded from courthouses and court proceedings by reason of their disabilities.");

*Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007)

(applying Title II of the ADA to discrimination against a disabled person detained in

county jail who experienced communication barriers including during a televised

probable cause hearing).[2]  The United States Department of Justice has repeatedly

enforced Title II of the ADA with respect to local courts.[3]

---

[2] *Accord* 2 Staff of the House Comm. on Educ. and Labor, 101st Cong., 2d Sess., Legis.
Hist. of Pub. L. No. 101-336: The Americans with Disabilities Act, 100th Cong., 2d Sess.
1040 (Comm. Print 1990) (Leg. Hist.) at 1071 ("I went to the courtroom one day and … I
could not get into the building because there were about 500 steps to get in there. Then I
called for the security guard to help me, who … told me there was an entrance at the back
door for the handicapped people. … I went to the back door and there were three more
stairs for me to get over to be able to ring a bell to announce my arrival so that somebody
would come and open the door and maybe let me in. I was not able to do that. … This is
the court system that is supposed to give me a fair hearing. It took me 2 hours to get in.");
*see also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 391-424 (2001)
(Breyer, J., dissenting, reviewing submissions made to the Task Force on Rights and
Empowerment of Americans with Disabilities, a congressionally appointed task force that
held hearings in every state to assess the need for the ADA; submissions included: Ala. 5,
15 (courts failed to provide interpretive services for deaf people, inaccessible
courthouse), Cal. 254 (inaccessible county courthouse), Colo. 273 (inaccessible county
courthouse), Ga. 374 (traffic court failed to provide interpretive services), Haw. 496
(inadequate assistance for deaf person at court appearance), Ida. 528 (limited access at
new county courthouse), Mass. 812 (inaccessible courthouse), Miss. 990, 998 (courts
refused to pay for qualified interpretive services for deaf people, inaccessible
courthouses), Mo. 1015 (courthouse failed to provide amplified sound system in
courtrooms), S. Dak. 1475 (criminal court failed to provide interpretive services for deaf
people), Vir. 1663, 1676, 1679, 1680 (inaccessible traffic court, inaccessible
courthouses), Wash. 1690 (deaf people required to pay for interpretive services in court),
W. Vir. 1745 (sheriff denied person with disability use of elevator in courthouse), Wisc.
1786 (person in wheelchair denied marriage license because courthouse was
inaccessible)).

[3] *See, e.g.*, Settlement Agreement Between the United States of America and City of
Muskogee Under the Americans with Disabilities Act, DOJ No. 204-59-38 (Aug. 20,
2003), at ¶ 42 (describing required changes to municipal courtroom),

Defendant District Court avers that it is "a legal fiction incapable of being brought to court, in and of itself." But, it acknowledges that the Oklahoma Constitution mandates that the state is to be divided into judicial districts, and that Oklahoma statutory law creates the 26th Judicial District. Okla. Const. art. VII, § 10 ("The State shall be divided into Judicial Administrative Districts, by statute, each consisting of one or more District Court Judicial Districts."); Okla. Stat. tit. 20, § 22 ("The state is hereby divided into judicial administrative districts as follows: … (3) Oklahoma-Canadian Counties. District Court Judicial Districts, Numbers Seven (7) and Twenty-six (26)."). [4] Moreover, the Constitution together with the court rules make clear that the judicial districts have

_____

https://www.ada.gov/muskogee.htm; Settlement Agreement Between the United States of America and Boulder County, Colorado, DOJ No. 204-13-244 (Oct. 2, 2000), at D(15), (16), (18) (describing required changes to county courthouse), https://www.ada.gov/boulderc.htm; Settlement Agreement Between the United States Of America and the City of Pueblo[, Colo.] Under the Americans with Disabilities Act, DOJ No. DJ 204-13-269 (June 2, 2004), at ¶ 38 (describing required changes to municipal court), https://www.ada.gov/pueblo.htm; Settlement Agreement Between the United States of America and the City of Hutchinson, Kansas Under the Americans with Disabilities Act, DOJ No. 204-29-127 (Jan. 13, 2005), at Attachment I(2)(d), (e), (f) (describing required changes to city court); Settlement Agreement Between the United States of America and Santa Fe, New Mexico, DOJ No. 204-49-69 (Apr. 3, 2001), at ¶ 26 (describing required changes to municipal court), https://www.ada.gov/santafe.htm; Settlement Agreement Between the United States of America and the City of Gallup, New Mexico Under the Americans with Disabilities Act, DOJ No. 204-49-77, at Attachment I(19) (describing required changes to municipal court), https://www.ada.gov/gallupnm.htm; Settlement Agreement Between the United States of America and the City Of Logan, Utah, DOJ No. 204-77-51 (Aug. 31, 2001), at ¶ 13(c) (describing required changes to city hall courtroom), https://www.ada.gov/loganut.htm; Settlement Agreement Between the United States of America and Washington County, Utah Under the Americans with Disabilities Act, DOJ No. 204-77-63, at Attachment H(7) (describing required changes to county justice court).

[4] *See also* Okla. Stat. tit. 20, § 92.27 ("District No. 26. The county of Canadian. A. For elections before January 1, 2018, the district shall have one district judge to be nominated and elected at large. B. For elections occurring on or after January 1, 2018, the district shall have two (2) district judges to be nominated and elected at large.").

administrative authority over the policies and practices complained of herein.[5]  Rarely do

"legal fictions" receive so much constitutional and statutory attention.

Also, contrary to Defendant District Court's argument, the Oklahoma

Governmental Tort Claim Act (OGTCA) does not determine what governmental entities

may be sued for violation of federal laws like the ADA and Section 504.  The OGTCA

instead creates a procedure by which a "claimant," as defined, can present a "written

demand . . . to recover money from the state or political subdivision as compensation for

an act or omission of a political subdivision or the state or an employee."  Okla. Stat.

Ann. tit. 51, §§ 152(4), 156.  The scheme permits claims only for torts, as defined.  Okla.

Stat. Ann. tit. 51, §§ 152(14), 153.  If the claim is denied, the claimant may bring suit in

state court.  *See* Okla. Stat. Ann. tit. 51, § 157.  Here, neither Plaintiff White nor Plaintiff

Musgrave are "claimants" seeking to recover money as compensation for an act or

omission of a political subdivision or the state.  Plaintiffs White and Musgrave are

---

[5] *See also* Okla. Const. art. VII, § 10(b) ("The District Judges and Associate District
Judges in each Judicial Administrative District shall select one of the District Judges to
serve at their pleasure as Presiding Judge of such Judicial Administrative District. Subject
to the authority of the Supreme Court, the Presiding Judge shall have general
administrative authority over the Judicial Administrative District, including authority to
provide for divisions, general or specialized, and for appropriate times and places of
holding court subject to law."); Okla. Stat. tit. 20, ch. 1, app. 2, Rule 1(D) ("Subject only
to the rules, orders, and directives of the Supreme Court or the Chief Justice of the
Supreme Court, the Presiding Judge [of that judicial administrative district] shall have
general administrative authority and supervision over all the district courts within the
judicial administrative district."), Rule 2(B) ("Subject only to the rules, orders, and
directives of the Supreme Court, the Chief Justice, or the Presiding Judge, the Chief
Judge of each district court judicial district shall be responsible for the supervision of all
district court personnel in the judicial district.").

seeking declaratory and injunctive relief for an ongoing pattern of policies, practices, and procedures in the Canadian County District Court that violate federal disability-nondiscrimination statutes. *Cf. Tiemann v. Tul-Ctr., Inc*., 18 F.3d 851, 853 (10th Cir. 1994) ("We hold that the district court erred in concluding that the Oklahoma Governmental Tort Claims Act immunizes defendants from § 1983 liability."); *Duncan v. City of Nichols Hills*, 1996 OK 16, 913 P.2d 1303, 1307-08 (1996) (declining to require compliance with OGTCA notice requirements in discrimination claim brought under state statute, reasoning that "a plaintiff alleging a cause of action in *tort* against the state or political subdivision must comply with the notice provisions of the Act[,] . . . whereas the Oklahoma Anti–Discrimination statutes were intended to provide redress for the types of discrimination embodied in the federal Civil Rights Acts, even where the action is brought against the state or a political subdivision.").

The cases cited by Defendant District Court do not hold otherwise. In *Martinez v. Winner*, 771 F.2d 424 (10th Cir. 1985), a civil rights action that arose out of state and federal criminal proceedings, the Tenth Circuit held that the "City of Denver Police Department" is not a separate suable entity, but that the claims would proceed against the City and County of Denver. *Id.* at 444. But here, Defendant District Court is a local court, created by the Constitution and delineated under state law, with its own distinct and independent jurisdiction. *See* Okla. Const. art. VII, § 10; Okla. Stat. tit. 20, § 22; Okla. Stat. tit. 20, § 92.27. Unlike the police department, it is not merely a component or auxiliary of the city or county government. And the reasoning in *Mason v. Twenty-Sixth Judicial Dist. of Kansas, Court Servs. Div*., 670 F. Supp. 1528, 1535 (D. Kan. 1987),

does not apply.  That case relied upon a Kansas Supreme Court opinion holding that

"subordinate government agencies do not have the capacity to sue or be sued in the

absence of statute" explicitly granting such capacity.  *See Hopkins v. State*, 237 Kan. 601,

606-07, 702 P.2d 311, 316 (1985).  Defendants cite no similar Oklahoma Supreme Court

decision, and the *Mason* holding has not been applied outside of the state of Kansas.

Moreover, considering Title II of the ADA specifically, the Ohio District Court found

that the Act itself provided the statutory authority to sue a local court.  *Jaegly*, 2017 WL

6042237, at *3 ("Because courts are within the broad but unambiguous definition of

'public entity,' I find Title II of the ADA provides the 'express statutory authority'

necessary to sue an Ohio court.").  The Defendant District Court's Motion to Dismiss

based on its purported lack of capacity to be sued should be denied.[6]

## II.  Plaintiffs White and Musgrave Bring No Section 1983 Claim Against Defendant District Court.

Contrary to Defendant District Court's motion, the Complaint does not "appear[ ]

to include the Defendant [District Court] . . . in all counts," including those brought under

Section 1983.  *See* Court Def.'s Br. at 2, 8.  Rather, the Complaint specifies that the

---

[6] Should the Court disagree with Plaintiffs' reasoning, then Plaintiffs request leave to amend to substitute the State of Oklahoma as a Defendant.  *See Mason*, 670 F. Supp. at 1535 ("The court finds that plaintiff should have brought this action against the State of Kansas.").  Defendant District Court seemingly argues that it is neither a distinct local entity nor an instrumentality of the State of Oklahoma.  *Cf.* Court Def.'s Br. at 7 (averring that it is not included in the OGTCA definition of "state" found at Okla. Stat. tit. 51, § 152(13), which includes "the State of Oklahoma or any office, … authority, … or other instrumentality thereof.").  But for purposes of Title II of the ADA, some Oklahoma government entity is a responsive defendant here.  *See* 42 U.S.C. § 12131(1); 28 C.F.R. § 35.102; 28 C.F.R. Part 35, App. B at § 35.102.

Section 1983 claims, Counts One through Four are "On Behalf of All Plaintiffs Against

*All Individual Defendants*, and that Counts Five (ADA) and Six (Rehabilitation Act) are

"On behalf of Plaintiffs White and Musgrave Against *All Defendants*."  Compl. at ¶¶ 43-

48 (emphases added).  Therefore, Plaintiffs need not respond to Defendant District

Court's "Proposition II."

### III. Plaintiffs White and Musgrave State Claims Under Title II of the ADA and the Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity."  42 U.S.C. § 12132.  The regulations implementing Title II require

affirmative steps to ensure that the programs, services and activities of a public entity are

accessible to individuals with disabilities:

> "A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 150(a).

> "A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability[.]" 28 C.F.R. 35.130(b)(3)(i).

> "A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity[.]" 28 C.F.R. § 35.130(b)(8).

> "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability[.]" 28 C.F.R. § 35.130(b)(7)(i).

"A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

"A public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities … an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

"A public entity shall make available to applicants, participants, beneficiaries, and other interested persons information regarding the provisions of this part and its applicability to the services, programs, or activities of the public entity[.]" 28 C.F.R. § 35.106.

"A public entity shall ensure that interested persons, including persons with impaired vision or hearing, can obtain information as to the existence and location of accessible services, activities, and facilities." 28 C.F.R. § 35.163(a).[7]

Section 504 imposes virtually identical requirements.  28 C.F.R. Part 35, App. B at § 35.103 ("Because title II of the ADA essentially extends the antidiscrimination prohibition embodied in section 504 to all actions of State and local governments, the standards adopted in this part are generally the same as those required under section 504 for federally assisted programs."); *accord* 28 C.F.R. Part 42, Subpart G (Rehabilitation

---

[7] *See also* 28 C.F.R. § 35.105(a) ("A public entity shall, within one year of the effective date of this part, evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications."); 28 CFR § 42.505(c)(1) ("A recipient shall, within one year of the effective date of this subpart, evaluate and modify its policies and practices that do not meet the requirements of this subpart. During this process the recipient shall seek the advice and assistance of interested persons, including handicapped persons or organizations representing handicapped persons. During this period and thereafter the recipient shall take any necessary remedial steps to eliminate the effects of discrimination that resulted from adherence to these policies and practices.").

Act regulations).[8]

Courts have repeatedly underscored the affirmative steps that the ADA requires of public entities to ensure that disabled people have equal access.  In *Delano-Pyle*, the Fifth Circuit wrote:

> The ADA expressly provides that a disabled person is discriminated against when an entity fails to "*take such steps as may be necessary* to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Id*. at § 12182(b)(2)(A)(iii) (emphasis added). A plain reading of the ADA evidences that Congress intended to impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability. *Id.* § 12182(b)(2)(A)(ii)–(iii) (1985).

---

[8] The ADA and Section 504 regulations are entitled to substantial deference; the large majority have the force of law.  *Helen L. v. DiDario*, 46 F.3d 325, 331-32 (3d Cir. 1995) ("Because Title II was enacted with broad language and directed the Department of Justice to promulgate regulations as set forth above, the regulations which the Department promulgated are entitled to substantial deference. … Moreover, because Congress mandated that the ADA regulations be patterned after the [S]ection 504 coordination regulations, the former regulations have the force of law. When Congress re-enacts a statute and voices its approval of an administrative interpretation of that statute, that interpretation acquires the force of law and courts are bound by the regulation.") (citing *Blum v. Bacon*, 457 U.S. 132, 141 (1982)); *Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 279 (1987) ("As we have previously recognized, these regulations were drafted with the oversight and approval of Congress; they provide an important source of guidance on the meaning of § 504."); *Alexander v. Choate*, 469 U.S. 287, 305 n.24 (1985) (noting that *Darrone* held that the 1978 Amendments to the Rehabilitation Act were intended to codify the regulations enforcing § 504); *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 634-35 (1984) ("The regulations particularly merit deference in the present case: the responsible congressional committees participated in their formulation, and both these committees and Congress itself endorsed the regulations in their final form. … [T]he legislative history [of provisions enacted in 1978] reveals that this section was intended to codify the regulations of the Department of Health, Education and Welfare governing enforcement of § 504[.]").

*Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002); *accord Robertson*

*v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007) ("The ADA

requires more than physical access to public entities: it requires public entities to provide

'meaningful access' to their programs and services.") (reversing summary judgment for

defendants where the deaf plaintiff was denied equal access to a televised probable cause

hearing because he could not hear voices projected through mechanical devices); *Hamer*

*v. City of Trinidad*, 924 F.3d 1093, 1104-05 (10th Cir. 2019), *cert. denied sub nom. City*

*of Trinidad, Colorado v. Hamer*, No. 19-283, 2019 WL 6689670 (U.S. Dec. 9, 2019)

("Title II therefore imposes 'an affirmative obligation to accommodate persons with

disabilities.'") (citing and quoting from *Lane*, 541 U.S. at 533); *Chisolm v. McManimon*,

275 F.3d 315, 324-25 (3d Cir. 2001) ("Regulations promulgated by the United States

Attorney General require that public entities take certain pro-active measures to avoid the

discrimination proscribed by Title II.")

  In *Pierce v. District of Columbia.*, 128 F. Supp. 3d 250 (D.D.C. 2015), the district

court reiterated these principles and rejected the argument, proposed by Defendant

District Court here, that public entities' obligations under the ADA and Section 504

depend on notification of a person's disability or request for accommodation:

> [B]ecause Congress was concerned that "[d]iscrimination against the handicapped
> was ... most often the product, not of invidious animus, but rather of
> thoughtlessness and indifference – of benign neglect[,]" *Alexander v. Choate*, 469
> U.S. 287, 295, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), the express prohibitions
> against disability-based discrimination in Section 504 and Title II include *an*
> *affirmative obligation* to make benefits, services, and programs accessible to
> disabled people. That is, an entity that provides services to the public cannot stand
> idly by while people with disabilities attempt to utilize programs and services
> designed for the able-bodied; instead, to satisfy Section 504 and Title II, such

entities may very well need to act affirmatively to modify, supplement, or tailor
their programs and services to make them accessible to persons with disabilities....

It is clear beyond cavil that the core principle that underlies the protections of
Section 504 and Title II is equal access. As explained above, Congress has
required entities to provide reasonable accommodations that would permit
disabled individuals to access programs and services in addition to prohibiting
discriminatory animus, *see Alexander v. Choate*, 469 U.S. 287, 295, 105 S.Ct. 712,
83 L.Ed.2d 661 (1985), and the regulatory scheme that undergirds the anti-
discrimination statutes reinforces this reasonable accommodations mandate. Thus,
without regard to whether persons with disabilities who seek the benefit of public
services have *requested* accommodation, a public entity that is covered by Title II
must "operate each service, program, or activity so that the service, program, or
activity, when viewed in its entirety, is readily accessible to and usable by, people
with disabilities[,]" 28 C.F.R. § 35.150 (2014)[.] ...

[N]othing in the disability discrimination statutes even remotely suggests that
covered entities have the option of being passive in their approach to disabled
individuals as far as the provision of accommodations is concerned. Quite to the
contrary, as explained above, Section 504 and Title II mandate that entities act
*affirmatively* to evaluate the programs and services they offer and to ensure that
people with disabilities will have meaningful access to those services. *See, e.g.*, 42
U.S.C. § 12131(2); 28 C.F.R. § 35.150(a); 28 C.F.R. § 35.150.

*Id.* at 266-67, 268-69 (emphases in original); *accord McCadden by McCadden v. City of

Flint*, No. 18-12377, 2019 WL 1584548, at *7 (E.D. Mich. Apr. 12, 2019) (denying

motion to dismiss and reasoning that "although the City, Johnson, and Walker are not

alleged to have known about Plaintiff's disability, Plaintiff has alleged that the City knew

or should have know[n] about the elevated likelihood that any Flint juveniles would

suffer from a disability and should have taken action to address how officers interact with

Flint juveniles."); *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017) ("Title II

and § 504 include an affirmative obligation for public entities to make benefits, services,

and programs accessible to people with disabilities.") (citing *Pierce*, 128 F. Supp. 3d at

266–67, 42 U.S.C. § 12131(2), and 28 C.F.R. § 35.130(b)(1)(ii)); *Chisolm*, 275 F.3d at

13

331-32 (3d Cir. 2001) ("[T]o the extent that the Vicinage argues a 'lack of notice' of Chisolm's disability, that lack of notice may demonstrate a failure of the Vicinage to discharge its statutory responsibility of providing interpretive services for the deaf. The provision of such services must include some reasonable means of determining when they will be needed.").

These affirmative obligations apply to local courts, *see* Section I, *supra*, and to disabled individuals detained in jail who experience discrimination—including with respect to pretrial hearings. *Robertson*, 500 F.3d at 1193-95; *Chisolm v. McManimon*, 275 F.3d 315, 331 (3d Cir. 2001) ("The District Court found, and we agree, that extradition hearings are "programs" within the definition of the ADA and the Rehabilitation Act."). Here, Plaintiffs White and Musgrave allege that, on the basis of their disabilities, they were unable to participate effectively and equally in their bail-setting hearings, and were denied an equal opportunity for pretrial release, because of the unnecessary policies, practices, criteria, and methods of administration regarding bail setting adopted by Defendant District Court. Compl. at ¶¶ 6, 143-151. These policies, practices, criteria, and methods of administration include, *inter alia*:

- imposing unaffordable bail based upon a rigid bail schedule, without an inquiry into whether the individual can afford the bail, Compl. at ¶¶ 1, 6, 13, 15, 29, 31, 32, 45, 49;

- imposing unaffordable bail based upon a bail schedule, without consideration of whether the individual, with or without reasonable modifications, can be released pretrial without posing an unmanageable risk of flight or danger to the community, Compl. at ¶¶ 2, 6;

- deterring detainees from asking questions with respect to their bail setting, Compl. at ¶¶ 30, 33, 46, 47;

- conducting bail-setting hearings by videoconference, with reduced transmission of audio and visual communication and information, Compl. at ¶¶ 4, 6, 13, 15, 29, 30, 31, 32, 45, 46, 47;

- conducting bail setting without counsel, Compl. at 4, 6, 13, 15, 30, 34, 47, 48;

- conducting bail-setting hearings by videoconference in one to five minutes in a loud and chaotic environment in which disabled detainees are experiencing particularly acute disability-related symptoms due to the impacts of incarceration and its conditions, Compl at ¶¶ 25, 27, 28, 29, 30, 31, 32, 44, 46, 50, *see also* Compl. at ¶ 55; and

- failing to ensure, on a class-wide basis, the provision of reasonable modifications to detainees with disabilities with respect to bail setting, including by failing to assess the need for such modifications, or to provide information about and an opportunity to request such modifications, Compl. at ¶¶ 2, 6, 13, 15, 30, 31, 33, 45, 46, 47, 116.

Defendant District Court chose to adopt these inaccessible policies, practices, methods of administration even though it is predictable—perhaps undeniable—that a substantial number of individuals that participate in its bail-setting proceedings have disabilities—particularly, mental disabilities.  As Plaintiffs detail in their papers supporting class certification, and as reported by the largest daily newspaper in Oklahoma, 60 percent of those imprisoned in Oklahoma have symptoms or a history of mental illness.  Oklahoma County District Attorney David Prater said that Oklahomans with mental illnesses "are coming into the criminal justice system at a rate that is just completely overwhelming."[9]  It is a virtual certainty that people with relevant disabilities

---

[9] Br. In Support of Class Cert. at 14 (citing Jaclyn Cosgrove, Epidemic Ignored, THE OKLAHOMAN, (Nov. 13, 2016),
http://oklahoman.com/special/article/5526388/epidemic-ignored-solutions-necessary-to-stop-oklahomans-from-funneling-into-jails-prisons-for-treatment); *see also id.*

will be affected by Defendant District Court's Bail Setting Policy.  This imposes on Defendant District Court an *affirmative obligation* to develop policies and procedures reasonably tailored to avoid adverse impact on disabled participants.  Plaintiffs White and Musgrave state claims under the ADA and Section 504.

### A.     The Tenth Circuit's Opinion in *Robertson v. Las Animas County Sheriff's Department* Does Not Support Dismissal on the Pleadings.

In *Robertson*, the Tenth Circuit, reversing a district court's grant of summary judgment to defendants, stated the general rule that "[b]efore a public entity can be required under the ADA to provide a disabled individual with an auxiliary aid or service, a public entity must have knowledge of the individual's disability and the individual's need for an accommodation." 500 F.3d 1184, 1196 (10th Cir. 2007).  Defendant District Court contends that Plaintiffs' disability-related Claims should be dismissed on the pleadings on the basis of this citation.  State Judge Def.'s Br. at 9 (arguing that Plaintiffs' disability discrimination claims should be dismissed because Plaintiffs White and Musgrave do not allege that "Defendant denied them a requested accommodation").  This argument should be rejected.

Defendant District Court's description of the holding in *Robertson* is incomplete and misleading with respect to Plaintiffs' claims.  That description omits the Tenth Circuit's most immediately relevant conclusion.  After stating the general rule, the court

---

("Nationwide, 44% of people in jail have been diagnosed with a mental health disorder. As of 2015, across the United States, more than 30% of people in jail have cognitive disabilities, more than 9% have mobility disabilities, more than 7% have vision disabilities, and more than 6% are deaf or hard of hearing.").

in *Robertson* held that the plaintiff met the ADA's notice standard for purposes of

summary judgment when he placed a note in the slot of his cell stating that he wanted to

call his attorney, despite the availability of a standard phone in his housing pod. *Id.* at

1198.  Moreover, the court went on to explain that no request at all was required where

the "need was 'obvious' to the defendants." *Id.* at 1198.  The *Robertson* court found

triable evidence that the need for accommodation was "obvious" when a deputy was

aware that the plaintiff had difficulty hearing, and when the plaintiff stated to a different

deputy that he could not hear during his probable cause hearing. *Id.*  Rather than stating a

categorical rule requiring detailed notice of a public entity's need to accommodate

disabled persons, *Robertson* illustrates the very modest burden plaintiffs must carry to

demonstrate an entity's actual or constructive knowledge of that need.

Here, Plaintiffs will show that the need for reasonable modifications, among other

needed changes, is obvious.  They will show that Defendant District Court knew or

should have known that they and other individuals with disabilities need reasonable

modifications to have an equal opportunity in the bail-setting process as it is presently

designed and conducted.  They will show that Defendant District Court knew or should

have known of the significant number of individuals with disabilities in the Canadian

County jail,[10] and that the bail-setting methods and procedures adopted by Defendant

District Court disadvantage people with disabilities, denying them full and equal

participation.  Plaintiffs White and Musgrave will show that they, like most incarcerated

---

[10] *See* n.9, *supra.*

people with disabilities, made reasonable efforts to inform those in charge of their

detention of their disabilities and their disability-related needs.  Compl. at ¶¶ 27, 50.[11]

The Court cannot dismiss Plaintiffs' claims on the pleadings.  *See Sutton v. Utah State*

*Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("The court's function on a

Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at

trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a

claim for which relief may be granted.") (citing and quoting *Miller v. Glanz*, 948 F.2d

1562, 1565 (10th Cir. 1991)).

Relatedly, Plaintiffs allege that as a result of the bail-setting methods and

procedures adopted by Defendant District Court, they and others with disabilities are

deterred and prevented from requesting reasonable modifications.  At no point are

---

[11] Defendant District Court characterizes such matters as "allegations about the conduct of a non-party."  Court Def.'s Br. at 9.  But Defendant's bail-setting methods and procedures rely upon the personnel at the Canadian County Jail.  A public entity cannot evade its ADA and Section 504 obligations by "*directly or through contractual, licensing, or other arrangements*, on the basis of disability – [d]eny[ing] a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; [a]fford[ing] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or p]rovid[ing]a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]" 28 C.F.R. § 35.130(b)(i)-(iii) (emphasis added); *accord* 28 C.F.R. § 42.503(b)(1)(i)-(ii) ("A recipient may not discriminate on the basis of handicap in the following ways *directly or through contractual, licensing, or other arrangements* under any program or activity receiving Federal financial assistance … [d]eny a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance; [d]eny a qualified handicapped person an equal opportunity to achieve the same benefits that others achieve in the program or activity receiving Federal financial assistance; … [or p]ermit the participation in the program or activity of agencies, organizations or persons which discriminate against the handicapped beneficiaries in the recipient's program[.]") (emphasis added).

Plaintiffs or others similarly situated provided with accessible information about reasonable modifications available to them under the ADA or Section 504.  *Cf.* 28 C.F.R. § 35.106 ("A public entity shall make available to … participants … information regarding the provisions of this part and its applicability to the services, programs, or activities of the public entity[.]").  To the contrary, Plaintiffs and other detainees are deterred from and counseled against talking or asking questions.  Compl. at ¶¶ 29, 30, 32, 33, 45-47, 55.  Under these circumstances, individuals with disabilities are both uninformed of their rights and deterred or prevented from exercising them.  *See Chisholm*, 275 F.3d at 330 (reversing summary judgment based on contention that incarcerated plaintiff did not request caption where "there is no evidence that Chisolm knew that closed captioning services were available" and "whether Chisolm even could have communicated a request for closed captioning presents a question of fact that has not yet been resolved").  Again, the Court cannot resolve these disputed matters on the pleadings and in advance of the development of a factual record.

Finally, and most importantly, Defendants mischaracterize or misapprehend the nature of Plaintiffs' claims.  Plaintiffs White and Musgrave are not seeking compensatory damages for the denial of a particular reasonable modification on a particular occasion, as in *Robertson*.  Rather, Plaintiffs contend that the entire bail-setting scheme, as designed and implemented, violates the ADA and Section 504 because it is inaccessible to disabled people, and denies them an equal opportunity to participate and have equal access to the

law at the pretrial-release stage.[12]  *See* Section II, *supra*.  The opinion in *Robertson* is inapposite to these claims.

That one must know of the need to do something before being expected to do it is a principle so obvious it is unremarkable.  But this Defendant absolutely knows—or absolutely should know—that people with commonly encountered disabilities will enter its courtrooms.  And it absolutely knows—or absolutely should know—that those people will be disadvantaged and denied full participation there due to this Defendant's general disregard for their predictable circumstance.  The Court should not confuse that disregard for ignorance, or innocence.

## CONCLUSION

For all of the reasons stated, Defendant District Court's Motion to Dismiss based on Rules 12(b)(1) and 12(b)(6) should be denied.

---

[12] To the extent that the Court deems Plaintiffs' complaint to be insufficiently clear with respect to any of these matters to survive Defendant District Court's Motion to Dismiss under Rule 12(b)(6), Plaintiffs request the opportunity to file an amended complaint.

Respectfully Submitted,

/s/ Twyla Carter
(Signed by Filing Attorney with permission of Attorney)
Twyla Carter*
Washington State Bar Number: 39405
Brandon J. Buskey*
Alabama Bar Number: ASB2753-A50B
American Civil Liberties Union
 Foundation, Criminal Law Reform
 Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tcarter@aclu.org
bbuskey@aclu.org

/s/ Megan Lambert
(Signed by Filing Attorney with permission of Attorney)
Megan Lambert
Oklahoma Bar Number: 33216
Ryan Kiesel
Oklahoma Bar Number: 21254
Michael Redman
Oklahoma Bar Number: 13340
American Civil Liberties Union of
 Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
rkiesel@acluok.org
mredman@acluok.org

/s/ Blake Johnson
(Signed by Filing Attorney with permission of Attorney)
Blake Johnson
Oklahoma Bar Number: 32433
Tyler Box
Oklahoma Bar Number: 31817

/s/ Aaron Lewis
Aaron Lewis*
California Bar Number: 284244
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800
alewis@cov.com

Amia Trigg*
District of Columbia Bar Number: 1023003
Marta Cook*
District of Columbia Bar Number: 1045613
Laura Beth Cohen*
Michigan Bar Number: P83111
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4656
(202) 662-6000
atrigg@cov.com
mcook@cov.com
lcohen@cov.com

/s/ Claudia Center
(Signed by Filing Attorney with permission of Attorney)
Claudia Center*
California Bar Number: 158255
Zoe Brennan-Krohn*
California Bar Number: 324912
American Civil Liberties Union
 Foundation, Disability Rights Program
39 Drumm Street
San Francisco, CA 94111
(415) 343-0762
ccenter@aclu.org
zbrennan-krohn@aclu.org

Weston Watts
Oklahoma Bar Number: 33299
Justin Williams
Oklahoma Bar Number: 32539
Clayburn Curtis
Oklahoma Bar Number: 30538
Overman Legal Group, PLLC
809 NW 36th St.
Oklahoma City, OK 73118
(405) 605-6718
blakejohnson@overmanlegal.com
tylerbox@overmanlegal.com
westonwatts@overmanlegal.com
justinwilliams@overmanlegal.com
claycurtis@overmanlegal.com

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Stefanie E. Lawson
Erin M. Moore
Devan A. Pederson
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
stefanie.lawson@oag.ok.gov
erin.moore@oag.ok.gov
devan.pederson@oag.ok.gov
*Attorneys for Defendants*

/s/ Amia L. Trigg
Amia L. Trigg

23