## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

[1] MISTY WHITE,
[2] JERMAINE BRADFORD,
[3] JANARA MUSGRAVE,
[4] LANDON PROUDFIT,
[5] BRADLEY BARBER, JR., and
[6] DAKOTA KAPPUS,

On behalf of themselves and all others
similarly situated,

                         Plaintiffs,

v.

[1] HON. PAUL HESSE, in his official
capacity as Chief Judge of the 26th Judicial
District, and
[2] HON. KHRISTIAN STRUBHAR, in her
official capacity as Special Judge in the
Canadian County District Court,

                         Defendants.

Case No. 5:19-cv-1145-JD

## FIRST AMENDED COMPLAINT

# INTRODUCTORY STATEMENT[1]

1.     This class action lawsuit challenges the unlawful system of administration for initial bail hearings in Canadian County District Court, established under an administrative order issued by Chief Judge Hesse.  At a proceeding called the "first court appearance,"[2] the judge issues secured cash bail orders that detain arrestees without any finding that they pose a flight risk or a danger to the community. Arrestees are jailed pretrial solely because they cannot afford the price of their release, in violation of due process, equal protection, and the right to counsel.

2.     Plaintiffs are each jailed unlawfully, and have been for weeks, as a result of this bail system. They seek to represent a class of all arrestees who are or will be similarly unlawfully jailed.

3.     The Plaintiff class seeks a declaration and an injunction against Chief Judge Hesse requiring administration of first court appearances consistent with the U.S. Constitution. The Plaintiff class also seeks a declaration against Special Judge Strubhar invalidating her procedures for first court appearances and specifying minimum protections required under the U.S. Constitution.

## JURISDICTION AND VENUE

4.     This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. § 2201 et seq., and the Sixth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

---

[1] Under the relation-back doctrine, allegations in this amended complaint use present tense to refer to facts that were true at the time of filing.

[2] "First court appearance" is the term used in the administrative order governing these proceedings, which is attached as Exhibit 1. These proceedings are sometimes referred to as "arraignments," even though arrestees are not always asked to enter a plea as required by 22 Okla. Stat. § 22-465 (2020). To avoid confusion, the amended complaint uses the term used in the administrative order issued by Judge Hesse: "first court appearance."

5.     Venue in this Court is proper under 28 U.S.C. § 1391 because the Canadian County District Court is located within the district, and a substantial part of the events giving rise to the Plaintiffs' claims occurred and will occur in this district.

**PARTIES**

6.     Plaintiff Misty White is a forty-year-old Native American woman, a member of Cherokee Nation, and a resident of Canadian County. She is jailed under Judge Hesse's unlawful bail system. She brings this suit on behalf of herself as an individual and on behalf of a class of similarly situated people.

7.     Plaintiff Jermaine Bradford is a thirty-seven year old Black man and a resident of Canadian County. He is jailed under Judge Hesse's unlawful bail system. He brings this suit on behalf of himself as an individual and on behalf of a class of similarly situated people.

8.     Plaintiff Janara Musgrave is a forty-seven year old white woman and a resident of Canadian County. She is jailed under Judge Hesse's unlawful bail system. She brings this suit on behalf of herself as an individual and on behalf of a class of similarly situated people.

9.     Plaintiff Landon Proudfit is a thirty-five year old white man and a resident of Canadian County. He is jailed under Judge Hesse's unlawful bail system. He brings this suit on behalf of himself as an individual and on behalf of a class of similarly situated people.

10.     Plaintiff Bradley Barber Jr. is a twenty-six year old white man and a resident of Canadian County. He is jailed under Judge Hesse's unlawful bail system. He brings this suit on behalf of himself as an individual and on behalf of a class of similarly situated people.

11.     Plaintiff Dakota Kappus is a twenty-three year old white man and a resident of Canadian County. He is jailed under Judge Hesse's unlawful bail system. He brings this suit on behalf of himself as an individual and on behalf of a class of similarly situated people.

12.     Defendant Paul Hesse is the Chief Judge of the 26th Judicial District, which is contiguous with Canadian County. As Chief Judge, he has exercised authority granted to him by state law[3] to issue district-wide administrative rules, including a district-wide administrative order governing first court appearances for class members. As Chief Judge, he is also designated by state law[4] as responsible for administrative and supervisory control of all special judges in Canadian County. Judge Hesse is sued for injunctive and declaratory relief for administrative acts in his official capacity as Chief Judge.

13.     Defendant Khristan Strubhar is a special judge in Canadian County. She is the primary judge designated to implement Judge Hesse's administrative order governing first court appearances, and for setting bail for class members at first court appearances. She is sued in her official capacity for declaratory relief only.

## FACTUAL ALLEGATIONS

### I.     Plaintiffs Were Jailed Under Judge Hesse's Unlawful Bail System

14.     Judge Hesse is responsible for oversight of the Canadian County bail system, which he accomplishes by issuing administrative orders. The sole administrative order he has issued concerning the bail system is a "bail schedule," which is a "guide" specifying default cash bail amounts to be imposed at first court appearances in Canadian County. It is attached as Exhibit 1.

15.     Although the administrative order states that the amount of bail "shall lie with the sound discretion of the judge based upon an individualized inquiry into the amount necessary to satisfy the purposes of bail," it does not mention (much less require) any of the constitutional

---

[3] 22 Okla. Stat. § 1105.2; Rule 8 of the Rules on Administration of Courts (Codified at 20 Okla. Stat. Ch. 1, App'x 2).

[4] Rule 2 of the Rules on Administration of Courts (codified at 20 Okla. Stat. Ch. 1, App'x 2).

prerequisites for a wealth-based pretrial detention order. The administrative order does not establish any infrastructure to facilitate meaningful hearings or findings at first court appearances. It does not mention any inquiry into the ability of arrestees to pay bail, any inquiry into alternatives to cash bail, or any inquiry into whether the arrestee poses a flight risk or danger. Judge Hesse has not taken any other action ensuring that arrestees receive these protections.

16.     Judge Strubhar is the special judge assigned to implement the administrative order. Under the administrative order, Judge Strubhar issues secured cash bail orders without regard for whether the orders will result in pretrial detention for those who cannot afford bail. Judge Strubhar conducts first court appearances as rushed, confusing proceedings lasting only a few minutes, during which she simply informs arrestees of their cash bail amounts. Judge Strubhar conducts first court appearances from her chambers via video feed that is often difficult for arrestees to hear. Judge Strubhar does not ask arrestees about factors relevant to the bail determination, such as whether they may flee Canadian County, whether they pose a danger if released, and what conditions of release could mitigate those risks. Judge Strubhar does not give arrestees an opportunity to ask questions, make arguments, or present evidence. Judge Strubhar does not explain the cash bail amounts that she sets.

17.     These practices result in a two-tiered system: Arrestees who can afford bail are released quickly, while those who cannot are commonly jailed for weeks before they receive a meaningful opportunity to be heard. Each of the named Plaintiffs has been jailed for weeks without a meaningful hearing.

18.     Judge Hesse is responsible for the administrative and supervisory control of Judge Strubhar, and for adopting rules of administration in Canadian County District Court. Judge

Hesse knows or should know of Judge Strubhar's practices implementing his administrative order at first court appearances, but he has done nothing to correct these deficiencies and ensure his bail system is enforced consistent with the Constitution.

19.     Each class member is jailed under a cash bail order issued at a first court appearance under Judge Hesse's bail system.

## II.     Judge Hesse's Administrative Order Causes Unconstitutional Wealth-Based Pretrial Detention

20.     Judge Hesse's administrative order explicitly guides Judge Strubhar to issue secured cash bail orders at first court appearances. Yet the administrative order fails to require, or even mention, constitutional prerequisites for wealth-based detention, nor has Judge Hesse taken any other action to ensure these protections are provided:

   a.   **Inquiry into ability to pay.** Judge Hesse has not established a requirement to ask about ability to pay bail, guidance on determining ability to pay bail, or infrastructure for collecting information about ability to pay bail from arrestees.

   b.   **Consideration of alternatives.** Judge Hesse has not established a requirement to consider alternative conditions of release for arrestees who cannot afford their bail or guidance on assessing alternatives to unaffordable cash bail.

   c.   **Findings.** Judge Hesse has not established a requirement to make findings on ability to pay bail, or adequacy of alternatives to cash bail, in support of an unaffordable cash bail order. He has not created infrastructure for recording such findings.

21.     The administrative order fails to require, or even mention, constitutional prerequisites for a pretrial detention order, nor has Judge Hesse taken any other action to ensure these protections are provided:

a. **Notice.** Judge Hesse has not established any requirement or guidance concerning notice to arrestees of what is at stake at the first court appearance.

b. **Opportunity to be Heard.** Judge Hesse has not established any requirement or guidance concerning an opportunity for arrestees to be heard or present evidence at their first court appearance.

c. **Prompt Hearing.** Judge Hesse has not established any requirement or guidance concerning the length of time between arrest and first court appearance.

d. **Counsel.** Judge Hesse has not established any requirement or guidance concerning appointment of defense counsel for first court appearance.

e. **Substantive Findings.** Judge Hesse has not established any requirement or guidance concerning substantive findings regarding dangerousness or flight risk that judges must make to issue unaffordable cash bail orders that result in pretrial detention.

22.     Absent this guidance, Judge Strubhar regularly jails arrestees pretrial solely because they are unable to pay cash bail amounts she sets at their first court appearance, which operate as de facto pretrial detention orders. Judge Strubhar does not give arrestees notice of what is at stake, or an opportunity to be heard, before issuing an unaffordable cash bail order at first court appearance. She does not inquire into arrestees' ability to pay or consider alternative conditions of release for arrestees who cannot afford their bail. She does not appoint counsel to represent arrestees at their first court appearance. She does not make any substantive findings regarding ability to pay, dangerousness, flight risk, or alternatives to detention when issuing an unaffordable cash bail order at first court appearance.

23.     Judge Hesse knows or should know of these practices, and has not taken any action to correct them. Judge Hesse knows that there is no infrastructure in place for collecting financial information from arrestees or informing them of what is at stake at their first court appearance. Judge Hesse knows that Judge Strubhar does not make any findings on ability to pay, dangerousness, flight risk, or alternatives to detention, because no such findings accompany any of Judge Strubhar's bail orders. Judge Strubhar conducts first court appearances multiple times per week, and commits the same due process and equal protection violations in the same manner each time. Over 200 people are currently jailed under unaffordable cash bail orders she issued at first court appearances.

24.     Misty White is jailed pretrial under a $4,500 cash bail order issued by Judge Strubhar after a first court appearance lasting approximately one minute. Ms. White was not represented by counsel at her first court appearance, and cannot afford to hire private counsel. Judge Strubhar did not give Ms. White notice of what was at stake during the first court appearance or an opportunity to be heard. Judge Strubhar did not inquire into her ability to pay bail or ask about anything other than personal identifying information. Judge Strubhar did not make any findings supporting her bail order. Ms. White was arrested and jailed for ten days before her first court appearance for the charge of obstructing an officer; she has been in jail for 23 days because she cannot afford to pay for her release. She stopped working as a medic in order to take care of her daughter. She has no savings and has fallen behind in paying her bills.

25.     Jermaine Bradford is jailed pretrial under a $2,000 cash bail order issued by Judge Strubhar after a first court appearance lasting less than three minutes. Mr. Bradford was not represented by counsel at first court appearance, and cannot afford to hire private counsel. Judge Strubhar did not give Mr. Bradford notice of what was at stake during the first court appearance

or an opportunity to be heard. Judge Strubhar did not inquire into his ability to pay bail or ask about anything other than whether Mr. Bradford understood his bail amount. Judge Strubhar did not make any findings supporting her bail order. Mr. Bradford was arrested and jailed for 6 days before his first court appearance; he has been in jail for 16 days because he cannot afford to pay for his release. He was earning approximately $500 a month at the time of his arrest, and he and his girlfriend barely made enough money to cover their monthly expenses. He has no savings.

26.     Janara Musgrave is jailed pretrial under a $3,000 cash bail order issued by Judge Strubhar after a first court appearance lasting less than five minutes. Ms. Musgrave was not represented by counsel at first court appearance, and cannot afford to hire private counsel. Judge Strubhar did not give Ms. Musgrave notice of what was at stake during the first court appearance or an opportunity to be heard. Judge Strubhar did not inquire into her ability to pay bail. Ms. Musgrave struggled to hear the proceeding because the phone volume[5] was low and there was a lot of noise coming in from the hallway. Judge Strubhar did not make any findings supporting her bail order. Ms. Musgrave was arrested and jailed for a week before her first court appearance; she has been in jail for 28 days because she cannot afford to pay for her release. She worked in a fast food restaurant before her arrest, and barely made enough money to cover her monthly expenses. She has no savings.

27.     Landon Proudfit is jailed pretrial under a $31,000 cash bail order issued by Judge Strubhar after a first court appearance lasting two or three minutes. Mr. Proudfit was not represented by counsel at his first court appearance, and cannot afford to hire private counsel. Judge Strubhar did not give Mr. Bradford notice of what was at stake during the first court appearance or an opportunity to be heard. Judge Strubhar did not inquire into his ability to pay

---

[5] Arrestees view the judge on a video screen and pick up a phone to hear her.

bail or ask about anything other than whether he understood his bail amount. Mr. Proudfit responded "yes and no" and attempted to ask questions about his charges and his bail order; Judge Strubhar instructed him to save his questions for the next proceeding. Judge Strubhar did not make any findings supporting her bail order. Mr. Proudfit was arrested and jailed for three weeks before his first court appearance; he has been in jail for almost a month because he cannot afford to pay for his release. He was unemployed for about a year and a half before his arrest. He has no savings.

28. Bradley Barber is jailed pretrial under a $1,000 cash bail order issued by Judge Strubhar after a very quick first court appearance, which Mr. Barber had trouble hearing through the phone. Mr. Barber was not represented by counsel at his first court appearance, and cannot afford to hire private counsel. Judge Strubhar did not give Mr. Barber notice of what was at stake during his first court appearance or an opportunity to be heard. Judge Strubhar did not inquire into his ability to pay bail. Judge Strubhar did not make any findings supporting her bail order. Mr. Barber was arrested and jailed for a week before his first court appearance; he has been in jail for three weeks because he cannot afford to pay for his release. He was laid off approximately three months before his arrest. He is mostly unemployed and does not have his own residence.

29. Dakota Kappus is jailed pretrial under a $12,000 cash bail order issued by Judge Strubhar after a short first court appearance. Mr. Kappus was not represented by counsel at first court appearance, and cannot afford to hire private counsel. Judge Strubhar did not give Mr. Kappus notice of what was at stake during his first court appearance or an opportunity to be heard. Judge Strubhar did not inquire into his ability to pay bail. Judge Strubhar did not make any findings supporting her bail order. Mr. Kappus was arrested and jailed for weeks before his

first court appearance; he has been in jail for over a month and cannot afford to pay for his release.

**IV.   Judge Hesse's Bail System Violates the Sixth Amendment Right to Counsel**

30.     Judge Hesse's administrative order explicitly guides judges to issue cash bail orders that may result in pretrial detention. The administrative order fails to require, or even mention, appointment of counsel to represent arrestees at first court appearances where bail is imposed. Many arrestees do not receive an application for counsel until the first court appearance is about to begin, or is already underway.

31.     As alleged above, Judge Strubhar sets bail at first court appearances where arrestees are not represented by counsel.

32.     As alleged above, none of the named Plaintiffs was represented by counsel at their first court appearance and none was able to afford private counsel.

33.     None of the named Plaintiffs waived their right to counsel.

**A.     First Court Appearance Has the Potential to Substantially Prejudice Arrestees' Rights**

34.     As alleged above, first court appearance includes a bail determination imposed through a fundamentally unfair process.

35.     Bail determinations at first court appearance have the potential to prejudice the outcome of the entire criminal case. Depending on the amount of cash bail assigned, arrestees may sit in jail for weeks before their next chance to speak to a judge. Judge Hesse has not established any time limit on how long arrestees can be detained without a hearing.

36.     Arrestees who are detained at first court appearance do not have immediate access to a lawyer who can request a hearing to reconsider their bail amounts. Instead, arrestees typically only receive the application form for appointed counsel at their first court appearance.

The application's instructions require arrestees to contact three attorneys, get the application notarized, and pay $40. This process results in a delay in appointing counsel for arrestees who cannot afford counsel but nonetheless try to follow the instructions before submitting the application. After arrestees submit the application, it takes about a week for counsel to be appointed.

37.     As few as three days of pretrial detention increases the likelihood of criminal convictions, guilty pleas, punishment with jail or prison time, and punishment with a longer term of jail or prison time. Controlling for all other factors, pretrial detention is the greatest predictor of a conviction. Pretrial detention has been shown to cause criminal convictions by increasing guilty pleas.

38.     This effect holds true in Canadian County. The period of detention following first court appearance can coerce people into pleading guilty. People detained at first court appearance may effectively serve their sentence of incarceration before a prosecutor offers a plea deal. Many felony cases, and almost all misdemeanor cases, resolve with a plea deal that does not require incarceration at all.

39.     Detention following first court appearance can also coerce guilty pleas from people who are facing prison time. Conditions in the Canadian County Jail are so poor that a quick transfer to state prison is preferable to enduring the living conditions in the jail.

40.     Prosecutors regularly offer plea deals that promise release from jail without waiting for the next hearing. Prosecutors also threaten harsher plea deals if people exercise their right to a preliminary hearing, which would be their first opportunity to have a meaningful hearing on pretrial release.

41.     Pretrial detention also puts people in a worse bargaining position because they are less able to assist their attorney in the investigation and preparation of their case. People in detention are less able to search for evidence, and unable to help find or meet with witnesses, who are often otherwise reluctant to speak with counsel. Without meaningful evidence or witnesses supporting the arrestee's case, prosecutors offer less favorable plea deals.

42.     People in detention are also unable to enroll in counseling, begin community service, or take other steps to demonstrate their good faith intentions.  As a result, the prosecution's proposed terms for people in detention are often more harsh.

**B.      Counsel's Presence at First Court Appearance is Necessary to Avoid this Substantial Prejudice to Arrestees' Rights**

43.     Counsel's presence at an initial bail hearing, like first court appearance, significantly increases the chances of release and decreases the total length of time arrestees spend in pretrial detention. Counsel's presence at an initial bail hearing also increases the likelihood that the arrestee's case is ultimately dismissed, or that their charges are ultimately reduced from felonies to misdemeanors.

44.     Bail determinations are legally complex. Counsel's knowledge of constitutional law and Oklahoma criminal procedure is necessary to present evidence and make competent arguments in favor of release.

45.     Counsel's knowledge of substantive criminal law is necessary to make competent arguments about the nature and strength of the allegations against the arrestee.

46.     Counsel is necessary to investigate facts bearing on the bail determination prior to the first court appearance.

47.     Counsel is necessary to challenge the state's charging decision and presentation of evidence, and to proffer evidence backed by their ethical obligations as an officer of the court. In

the absence of defense counsel, judges set bail based on only the information supplied by the state. Even if an arrestee speaks up in favor of release during first court appearance, the judge's choice is between the arrestee's unsupported claims and the word of police officers. Counsel is necessary to make an informal offer of proof on facts that bear on the bail determination, including the arrestee's ability to pay, whether they pose a danger or a flight risk, and whether alternatives to cash bail would be appropriate.

48.     Counsel's knowledge of the local criminal legal system is necessary to make competent arguments about alternative conditions of release that could reasonably assure appearance in court.

49.     Counsel is necessary to observe the proceedings at first court appearance and reconstruct them later, if necessary to challenge the bail determination. First court appearances are not transcribed or recorded, and judges do not make any findings on the record supporting their bail determinations.

50.     Counsel is necessary to serve as a capable representative in a confusing and high-stakes proceeding. Arrestees are understandably worried that there is too much at stake to speak up and potentially harm their chances of release.

**V.     Judge Hesse's Bail System Causes Irreparable Harm**

51.     Judge Hesse's bail system violates class members' constitutional rights. It further causes irreparable harm through the direct and collateral effects of pretrial detention.

52.     Pretrial detention, even for just a few days, can wreak havoc in the lives of low-income arrestees. People miss work due to being detained, leading to lost wages and sometimes lost jobs. People fall behind on rent and may be evicted from their homes. People cannot perform their caretaking responsibilities, which can lead to losing custody of their children. For disabled

arrestees, pretrial detention often means missed medications and disruption of routines that can be vital in managing disability, increasing disability-related symptoms and potentially resulting in decompensation. Each of the named Plaintiffs has experienced one or more of these consequences.

53.     Plaintiff Misty White was unnecessarily detained in isolation for four days, worsening her PTSD symptoms. The jail has refused to provide her most of the medications she takes and refused to accommodate her religious diet. Being in jail has caused her to miss visitations with her daughter. She has been unable to work and pay her bills.

54.     Plaintiff Jermaine Bradford has not been able to work and contribute to household expenses. His girlfriend has struggled to pay their bills in his absence.

55.     Plaintiff Janara Musgrave has lost her job. Her disability-related symptoms have worsened, and she has received no support or counseling, despite repeatedly informing the jail of her significant psychiatric diagnoses.

56.     Plaintiff Landon Proudfit has missed spending time with his daughter. He has also been unable to assist his disabled father and or help care for his brother. Mr. Proudfit's brother uses a wheelchair because he has cerebral palsy, and requires assistance with eating, bathing, and routine daily tasks.

57.     Plaintiff Bradley Barber has lost a job opportunity.

58.     Plaintiff Dakota Kappus has missed spending time with his mother who has cancer. He has not received treatment for his Type II Diabetes.

59.     Pretrial detention also harms the broader community. The Canadian County jail is overcrowded, and taxpayers shoulder the burden of paying for these jails and the incremental costs of each additional person kept in jail.

## CLASS ACTION ALLEGATIONS

60.     Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit, Bradley

Barber, Jr., and Dakota Kappus seek injunctive and declaratory relief, on behalf of themselves

and all others similarly situated, under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil

Procedure. With respect to all counts, Plaintiffs Misty White, Jermaine Bradford, Janara

Musgrave, Landon Proudfit, Bradley Barber, Jr., and Dakota Kappus seek to represent a class

comprised of all people who are or will be detained because they are unable to pay for release as

required by secured bail orders issued at first court appearance in Canadian County District

Court.

61.     The class is so numerous as to render joinder of all members impracticable. There

are over 200 class members detained in Canadian County Detention Center. The class is also

constantly changing as Defendants jail new class members every Tuesday and Thursday, while

others are released at the conclusion of their case, making joinder impossible.

62.     The class seeks prospective relief against practices that apply to all people who

are detained at first court appearance in Canadian County District Court because they cannot

afford cash bail. Resolution of the legal and factual issues here will determine whether all

members of the class are entitled to the constitutional relief that they seek.

63.     Questions of fact common to the class include the following:

- Whether Judge Hesse's administrative order guides judges to assess cash bail
  without notice, an opportunity to present and contest evidence, appointment of
  counsel, or reasoned findings based on clear and convincing evidence on the
  record that unaffordable bail is the least restrictive means of mitigating an
  individual's flight risk or danger;

- Whether Judge Strubhar implements this system by assessing cash bail without procedural protections including notice, an opportunity to present and contest evidence, appointment of counsel, reasoned findings based on clear and convincing evidence on the record that unaffordable bail is the least restrictive means of mitigating an individual's flight risk or danger;

- Whether uncounseled first court appearances have the potential to prejudice the outcome of plea bargaining or trial; and

- How long class members must wait in jail after arrest before they have an opportunity for a meaningful hearing on pretrial release.

64.     Questions of law common to the class include the following:

- Whether imposing unaffordable cash bail without an inquiry into ability to pay, findings concerning ability to pay, consideration of alternatives to unaffordable cash bail, and findings that alternatives to unaffordable cash bail are inadequate to meet the government's interest violates the Fourteenth Amendment's Equal Protection and Due Process Clauses;

- Whether issuing a pretrial detention order without notice, an opportunity to present and contest evidence, appointment of counsel, and reasoned findings by clear and convincing evidence that detention is the least restrictive means of mitigating an individual's flight risk or danger violates the Fourteenth Amendment's Due Process Clause;

- Whether the Sixth Amendment requires appointment of counsel at first court appearances.

65.     The named Plaintiffs' claims are typical of the claims of the other class members. Each class member is suffering the same injury: detention under unaffordable cash bail orders imposed at a proceeding without counsel present, without notice or the opportunity to be heard, and without any individualized findings supporting their bail orders.

66.     The named Plaintiffs are adequate class representatives because they have suffered the same constitutional harms inflicted on similarly-situated individuals who have first court appearances under Judge Hesse's bail system, and because their interests in the vindication of the legal claims they raise are aligned with the interests of the other class members.

67.     The named Plaintiffs are members of the class, and there are no known conflicts of interest with members of the class.

68.     The named Plaintiffs are each residents of Canadian County. They have volunteered to bring this lawsuit in order to vindicate the rights of all members of the class. They are willing to fulfill the duties of a class representative.

69.     Plaintiffs are represented by attorneys from the American Civil Liberties Union Foundation, the American Civil Liberties Union of Oklahoma Foundation, Covington & Burling LLP, and Overman Legal Group, PLLC. Counsel have extensive combined experience litigating class actions and complex civil rights matters in federal court and extensive knowledge of the details of Judge Hesse's bail system and the relevant constitutional and statutory law. Counsel include litigators who have specific experience with these types of claims, having litigated similar issues in class action lawsuits in other fora around the country. Counsels' qualifications to serve as class counsel are set forth in the motion for class certification.

70.     The interests of the members of the proposed class and subclass will be fairly and adequately protected by the named Plaintiffs and their attorneys.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**Violation of the Equal Protection and Due Process Clauses:**
**Wealth-Based Detention**
**under 42 U.S.C. § 1983**

71.     Plaintiffs incorporate all of the allegations above.

72.     Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit,

Bradley Barber, Jr., and Dakota Kappus bring this claim on behalf of the class against Defendant

Paul Hesse for injunctive and declaratory relief and Defendant Khristan Strubhar for declaratory

relief.

73.     Judge Hesse's unlawful bail system jails the Plaintiff class members because they

are unable to afford cash bail amounts, while similarly-situated arrestees who can afford to pay

their bail walk free.

74.     Judge Strubhar implements Judge Hesse's bail system by imposing unaffordable

cash bail amounts without: (1) inquiring into an arrestee's ability to pay; (2) considering whether

there are less restrictive, alternate means of achieving a compelling government interest; and (3)

issuing findings that detention is necessary notwithstanding an arrestee's inability to pay.

75.     These practices violate Plaintiff class members' rights to equal protection and due

process under the Fourteenth Amendment to the United States Constitution.

**COUNT TWO**
**Violation of Procedural and Substantive Due Process:**
**Deprivation of the Fundamental Right to Pretrial Liberty**
**under 42 U.S.C. § 1983**

76.     Plaintiffs incorporate all of the allegations above.

77.     Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit,

Bradley Barber, Jr., and Dakota Kappus bring this claim on behalf of the class against Defendant

Paul Hesse for injunctive and declaratory relief and Defendant Khristan Strubhar for declaratory relief.

78.     Judge Hesse's unlawful bail system jailed the Plaintiff class members by imposing cash bail orders in rushed, confusing proceedings without regard for whether the orders would result in pretrial detention.

79.     Judge Strubhar implements Judge Hesse's bail system by imposing unaffordable cash bail amounts without providing arrestees notice, an opportunity to be heard, representation by counsel, and without making the substantive findings regarding dangerousness or flight risk that are necessary for a pretrial detention order.

80.     These practices violate Plaintiff class members' rights to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution.

**COUNT THREE**
**Violation of Sixth Amendment Right to Counsel:**
**Failure to Provide Counsel at a Critical Stage of Prosecution**
**Under 42 U.S.C. § 1983**

81.     Plaintiffs incorporate all of the allegations above.

82.     Plaintiffs Misty White, Jermaine Bradford, Janara Musgrave, Landon Proudfit, Bradley Barber, Jr., and Dakota Kappus bring this claim on behalf of the class against Defendant Paul Hesse for injunctive and declaratory relief and Defendant Khristan Strubhar for declaratory relief.

83.     Judge Hesse's unlawful bail system jailed the Plaintiff class members by imposing unaffordable cash bail amounts at first court appearances where the class members were not represented by counsel.

84.     Judge Strubhar implements Judge Hesse's bail system by imposing unaffordable cash bail amounts at first court appearances where arrestees are not represented by counsel.

85.     This practice violates Plaintiff class members' right to counsel under the Sixth Amendment to the United States Constitution.

## RELIEF REQUESTED

Plaintiffs request that this Court issue the following relief:

1.     An order certifying the class, defined above;

2.     A declaratory judgment and permanent injunction against Judge Hesse requiring the following administrative prerequisites before unaffordable cash bail may be ordered at a first court appearance:

   a.   A prompt bail determination after arrest;

   b.   Advance written notice to the arrestee of what is at issue in the bail determination, including notice that ability to pay is relevant to the bail determination;

   c.   A meaningful, individualized inquiry into ability to pay;

   d.   Notice of the evidence the judge is relying on, and an opportunity to testify, present evidence, and rebut evidence against the arrestee;

   e.   Reasoned written findings of the arrestee's ability to pay; and

   f.   Reasoned written findings, by clear and convincing evidence, that unaffordable cash bail is necessary because there is no less restrictive means of mitigating the arrestee's risk of flight or articulable danger to an individual or the community;

3.     A declaratory judgment against Judge Strubhar that, absent compliance with the requirements described in paragraph 2, an unaffordable cash bail order violates Plaintiff class

members' rights to equal protection, substantive and procedural due process, and right to counsel;

    4.      An order granting reasonable attorneys' fees and costs under 29 U.S.C. § 794a and 42 U.S.C. § 1988;

    5.      Reasonable service awards for named Plaintiffs; and

    6.      Any other relief this Court deems just and proper.


Respectfully Submitted,

/s/ Trisha Trigilio
Trisha Trigilio*
Texas State Bar Number: 24075179
Brandon J. Buskey*
Alabama Bar Number: ASB2753-A50B
American Civil Liberties Union
 Foundation, Criminal Law Reform
 Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
trishat@aclu.org
bbuskey@aclu.org


/s/ Megan Lambert
Megan Lambert
Oklahoma Bar Number: 33216
Ryan Kiesel
Oklahoma Bar Number: 21254
Michael Redman
Oklahoma Bar Number: 13340
American Civil Liberties Union of
 Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831

/s/ Aaron Lewis
Aaron Lewis*
California Bar Number: 284244
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800
alewis@cov.com

Marta Cook*
District of Columbia Bar Number: 1045613
Laura Beth Cohen*
Michigan Bar Number: P83111
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4656
(202) 662-6000
mcook@cov.com
lcohen@cov.com

/s/Zoe Brennan-Krohn*
Zoe Brennan-Krohn*
California Bar Number: 324912
American Civil Liberties Union
 Foundation, Disability Rights Program

mlambert@acluok.org
rkiesel@acluok.org
mredman@acluok.org

/s/ Blake Johnson
Blake Johnson
Oklahoma Bar Number: 32433
Tyler Box
Oklahoma Bar Number: 31817
Weston Watts
Oklahoma Bar Number: 33299
Justin Williams
Oklahoma Bar Number: 32539
Clayburn Curtis
Oklahoma Bar Number: 30538
Overman Legal Group, PLLC
809 NW 36th St.
Oklahoma City, OK 73118
(405) 605-6718
blakejohnson@overmanlegal.com
tylerbox@overmanlegal.com
westonwatts@overmanlegal.com
justinwilliams@overmanlegal.com
claycurtis@overmanlegal.com

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice

39 Drumm Street
San Francisco, CA 94111
(415) 343-0762
zbrennan-krohn@aclu.org