CASE NO. 19-cv-1145-JD

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MISTY WHITE, JERMAINE BRADFORD, JANARA MUSGRAVE, LANDON
PROUDFIT, BRADLEY BARBER, JR., and DAKOTA KAPPUS, on behalf of
themselves and all others similarly situated, and OKLAHOMA STATE
CONFERENCE, NAACP,

Plaintiffs,

v.

HON. PAUL HESSE, in his official capacity as presiding District Court Judge,
HON. JACK McCURDY, in his official capacity as presiding District Court Judge,
HON. BARBARA HATFIELD, HON. CHARLES GASS, HON. KHRISTAN
STRUBHAR, in their official capacities as Special District Judges in the Canadian
County District Court, and CANADIAN COUNTY DISTRICT COURT, 26TH
JUDICIAL DISTRICT,

Defendants.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
AND BRIEF IN SUPPORT

STEFANIE E. LAWSON, OBA#22422
ERIN M. MOORE, OBA#20787
DEVAN A. PEDERSON, OBA#16576
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorney for Defendant State Judges*

December 7, 2021

## TABLE OF CONTENTS

**TABLE OF CONTENTS**..............................................................................................i

**TABLE OF AUTHORITIES** .....................................................................................iii

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND BRIEF IN SUPPORT**.................................................................................................1

**STATEMENT OF THE CASE** ..................................................................................1

**STANDARD OF REVIEW** ........................................................................................3

**PROPOSITION I:**

      **DEFENDANT STATE JUDGES ARE IMMUNE FROM SUIT FOR THESE CLAIMS** ...........................................................................................................4

      *A. Judicial Immunity*...........................................................................................5

      *B. Legislative Immunity* ......................................................................................6

**PROPOSITION II:**

      **PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS FAIL** .....................8

**PROPOSITION III:**

      **PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS FAIL**....................13

**PROPOSITON IV:**

      **PLAINTIFFS' EQUAL PROTECTION CLAIMS FAIL**....................................14

**PROPOSITON V:**

      **PLAINTIFFS' SIXTH AMENDMENT CLAIMS FAIL**......................................15

**PROPOSITON VI:**

      **PLAINTIFFS' SUPERVISORY LIABILITY CLAIMS FAIL**.............................19

**PROPOSITON VII:**

    **THIS COURT SHOULD DENY DECLARATORY RELIEF** .......................... 21

**PROPOSITION VIII:**

    *YOUNGER* **ABSTENTION DOCTRINE COUNSELS THAT COURT SHOULD DECLINE TO DECIDE CASE** ............................................................ 23

**CONCLUSION** ........................................................................................................ 25

**CERTIFICATE OF SERVICE** ............................................................................ 26

# TABLE OF AUTHORITIES

## CASES

*Aetna Life Inc. Co. of Hartford, Connecticut v. Haworth,*
300 U.S. 227 (1937) ..................................................................................................... 22

*Application of Pulliam,*
1960 OK CR 83, 256 P.2d 755 ..................................................................................... 14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007) ........................................................................... 4

*Bell v. Cone,*
535 U.S. 685 (2002) ..................................................................................................... 18

*Bell v. Wolfish,*
441 U.S. 520 (1920) ......................................................................................... 11, 12, 13

*Bogan v. Scott-Harris,*
523 U.S. 44 (1998) ......................................................................................................... 6

*Broker's Choice of Am. v. NBC Universal, Inc.,*
861 F.3d 1081 (10th Cir. 2017) ..................................................................................... 4

*Clark v. Hall,*
2002 OK CR 29, 53 P.3d 416 ....................................................................................... 13

*Coleman v. Alabama,*
399 U.S. 1 (1970) ......................................................................................................... 18

*Collins v. City of Harker Heights, Tex.,*
503 U.S. 115 (1992) ....................................................................................................... 8

*Collins v. Daniels,*
916 F.3d 1302 (10th Cir. 2019) ..................................................................................... 7

*Connick v. Thompson,*
563 U.S. 51 (2011) ....................................................................................................... 21

*Cooper v. Jones,*
No. CIV-10-75-R, 2010 WL 3960592 (W.D. Okla. Oct. 8, 2010) ............................. 16

*Cox v. Phelps Dodge Corp.,*
43 F.3d 1345 (10th Cir. 1994) ........................................................................22

*Daniels v. Williams,*
474 U.S. 327 (1986) ..........................................................................................8

*Dawson v. Bd. of Cty. Commr's of Jefferson City, Colo.,*
732 F. App'x 624 (10th Cir. 2018) ...............................................................14

*Dennis v. Sparks,*
449 U.S. 24 (1980) .............................................................................................5

*Elliott v. Martinez,*
675 F.3d 1241 (10th Cir. 2012) ......................................................................14

*Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs,*
263 F.3d 1151 (10th Cir. 2001) ........................................................................4

*Estelle v. Smith,*
451 U.S. 454 (1981) .........................................................................................17

*Ex parte McClellan,*
97 P. 1019 (Okla. Crim. 1908) ......................................................................11

*Ex parte Young,*
209 U.S. 123 (1908) ...................................................................................23, 24

*Facio v. Jones,*
929 F.2d 541 (10th Cir. 1991) ........................................................................21

*Fenner v. State,*
381 Md. 1, 846 A.2d 1020 (2004) ..................................................................17

*Franklin v. Massachusetts,*
505 U.S. 788 (1992) .........................................................................................22

*Gaylor v. Does,*
105 F.3d 572 (10th Cir. 1997) ........................................................................12

*Gideon v. Wainwright,*
372 U.S. 335 (1963) ...................................................................................16, 17

*Graham v. Connor,*
490 U.S. 386 (1989) ......................................................................................9, 10

*Hall v. Bellmon,*
935 F.2d 1106 (10th Cir. 1991) ................................................................. 4

*Harris v. McRae,*
448 U.S. 297 (1980) ................................................................................ 15

*Hewitt v. Helms,*
482 U.S. 755 (1987) ................................................................................ 22

*Huffman v. Pursue, Ltd.,*
420 U.S. 592 (1975) ........................................................................... 24, 25

*Hyland v. Davis,*
149 F.3d 1183 (6th Cir. 1998) .................................................................. 7

*Joseph A. ex rel, Wolfe v. Ingram,*
275 F.3d 1253 (10th Cir. 2002) ................................................................ 24

*Judice v. Vail,*
430 U.S. 327 (1997) ................................................................................ 24

*Larson v. Senate of Pennsylvania,*
152 F.3d 240 (3d Cir. 1998) ..................................................................... 7

*Lewis v. N.M. Dep't of Health,*
275 F.Supp.2d 1319 (D.N.M. 2003) .......................................................... 7

*Lundahl v. Zimmer,*
296 F.3d 936 (10th Cir. 2002) .................................................................. 6

*Lutttrell v. Freeman,*
444 P.2d 857 (Okla. Crim. 1968) ............................................................. 19

*Mann v. Conlin,*
22 F.3d 100 (6th Cir.), *cert. denied,* 513 U.S. 870 (1994) ........................ 8

*McNeil v. Wisconsin,*
501 U.S. 171 (1991) ................................................................................ 17

*Medina v. California,*
505 U.S. 437 (1992) ................................................................................ 13

*Mocek v. City of Albuquerque,*
813 F.3d 912 (10th Cir. 2015) ................................................................ 21

*Montejo v. Louisiana,*
556 U.S. 778 (2009) ...................................................................................17

*Moran v. Burbine,*
475 U.S. 412 (1986) ...................................................................................17

*Muscogee (Creek) Nation v. Pruitt,*
669 F.3d 1159 (10th Cir. 2012) ...............................................................23

*Nicodemus v. Dist. Ct. of Oklahoma Cty.,*
1970 OK CR 83, 473 P.2d 312 .................................................................21

*Nova Health Sys. v. Gandy,*
416 F.3d 1149 (10th Cir. 2004) ...............................................................22

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
506 U.S. 139 (1993) ...................................................................................23

*Pers. Adm'r of Massachusetts v. Feeney,*
442 U.S. 256, 99 S. Ct. 2282 (1979) .......................................................15

*Peterson v. Grisham,*
594 F.3d 723 (10th Cir. 2010) ...................................................................4

*Planned Parenthood of SE Pennsylvania v. Casey,*
505 U.S. 883 (1992) .....................................................................................8

*Pueblo of Jemez v. United States,*
790 F.3d 1143 (10th Cir. 2015) .................................................................3

*Pulliam v. Allan,*
466 U.S. 522 (1984) ...................................................................................23

*Rothgery v. Gillespie Cnty. Texas,*
554 U.S. 191, 128 S. Ct. 2578 (2008) ...............................................17, 18

*Save Palisade FruitLands v. Todd,*
279 F.3d 1204 (10th Cir. 2002) ...............................................................14

*Schall v. Martin,*
467 U.S. 253 (1984) ...................................................................................11

*Scott v. Taylor,*
405 F.3d 1251 (11th Cir. 2005) ................................................................. 7

*Shannon v. Sequeechi,*
365 F.2d 827 (10th Cir. 1966) ................................................................. 22

*Smith v. Allbaugh,*
987 F.3d 905 (10th Cir. 2021) ................................................................. 20

*Stack v. Boyle,*
342 U.S. 1 (1951) ................................................................. 10, 13, 20

*Stump v. Sparkman,*
435 U.S. 349 (1978) ................................................................. 5, 6

*Sup. Ct. of Virginia v. Consumers Union of U.S., Inc.,*
446 U.S. 719 (1980) ................................................................. 6, 7

*T.F.M. v. State,*
1977 OK CR 323, 572 P.2d 280 ................................................................. 24

*Texas v. Cobb,*
532 U.S. 162 (2001) ................................................................. 17

*Town of Castle Rock, Colo. v. Gonzales,*
545 U.S. 748 (2005) ................................................................. 14

*U.S. v. Ash,*
413 U.S. 300 (1973) ................................................................. 18

*U.S. v. Gouveia,*
476 U.S. 180, 184 S. Ct. 2292 (1984) ................................................................. 17

*U.S. v. Hooker,*
418 F. Supp. 476 (M.D. Pa.), aff'd, 547 F.2d 1164 (3d Cir. 1976) ................................................................. 17

*U.S. v. Salerno,*
481 U.S. 739 (1987) ................................................................. 11

*U.S. v. Wade,*
388 U.S. 218, 87 S. Ct. 1926 (1967) ................................................................. 18

*U.S. v. Washington,*
619 F.3d 1252 (10th Cir. 2010) ................................................................. 16, 17

*Utah Animal Rights Coalition v. Salt Lake City Corp.,*
371 F.3d 1248 (10th Cir. 2004) ........................................................................... 21

*Van de Kamp v. Goldstein,*
555 U.S. 335 (2009) ........................................................................................... 5

*Village of Arlington Heights v. Metro. Housing Dev. Corp.,*
429 U.S. 252 (1977) ........................................................................................... 15

*Walker v. City of Calhoun, GA,*
901 F.3d 1245 (11th Cir. 2018) .................................................................... 12, 21

*Walker v. United Parcel Serv., Inc.,*
240 F.3d 1268 (10th Cir. 2001) ......................................................................... 22

*Washington v. Glucksberg,*
521 U.S. 702 (1997) ........................................................................................ 8, 9

*Whitesel v. Sengenberger,*
222 F.3d 861 (10th Cir. 2000) ............................................................................. 5

*Wiggins v. New Mexico State Sup. Ct. Clerk,*
664 F.2d 812 (10th Cir. 1981) ......................................................................... 5, 6

*Younger v. Harris,*
401 U.S. 37 (1971) ............................................................................................ 25

## STATUTES

19 O.S. § 138.1(a) ............................................................................................. 16

22 O.S. § 181 .................................................................................................... 19

22 O.S. § 1105.2(B) ............................................................................................ 7

22 O.S. § 1355, *et seq.* ................................................................................. 16, 22

22 O.S. § 1355(A) ............................................................................................ 16,

22 O.S. § 1355(C) ............................................................................................. 16

22 O.S. § 1355A ............................................................................................... 18

22 O.S. § 1355A(A) ...................................................................................................... 16

22 O.S. § 1355.6 ......................................................................................................... 18

42 U.S.C. § 1983 ............................................................................................... 2, 5, 6, 23

## RULES

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1, 3, 25

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 3, 4, 25

Okla. Ct. Crim. App. R. 1.14 .......................................................................... 17, 18

## OTHER

Okla. Const. Art. VII, § 1 ............................................................................................ 6

Federal Court Improvement Act of 1996 ........................................................... 6

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
AND BRIEF IN SUPPORT**

Defendants Canadian County District Judge Paul and Canadian County Special Judge Khristan Strubhar (collectively "Defendant State Judges"), by and through Assistant Attorneys General Stefanie Lawson, Erin Moore and Devan Pederson, respectfully move this Court to dismiss Plaintiffs' Amended Complaint [Doc. 64] pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

**STATEMENT OF THE CASE**

Plaintiffs are a group of individuals seeking class certification. They claim they (and others similarly situated) currently are unable to post or pay a money bond after arrest[1], did not have access to counsel by or before their first court appearance, and are therefore detained without counsel or proper process. Plaintiffs have sued Canadian County District Judge Paul Hesse in his official capacity as Chief Judge of the Judicial District and Canadian County Special Judge Khristan Strubhar in her official capacity. They seek injunctive and declaratory relief against Judge Hesse for his "administrative acts" and declaratory relief against Judge Strubhar for her "implementation of Judge Hesse's administrative order". ¶¶12-13.

Plaintiffs allege that their fundamental right to pretrial liberty is violated through the imposition of unaffordable cash bail amounts at uncounseled initial court appearances.[2] ¶¶14,

---

[1]Only one Plaintiff states the offense of arrest or ultimate charge filed. *See* ¶24 (White was charged with obstructing an officer).

[2]Defendants have generally disregarded conclusory statements and unsupported factual claims for the purposes of stating the case. It should be noted that Plaintiff also ascribe injury or potential injury or deprivations to non-parties. *See* ¶40 (alleging what prosecutors regularly do, though not connecting any prosecutor or Defendant to any specific injury to any Plaintiff) and ¶¶39, 53, 55, 58, 59 (attributing injury or potential deprivation to the jail or jailers, though again without connecting the jail or jailers to Defendants or their control).

63-65, 73-74, 79, 83-84. Plaintiffs specify three counts: Count One is asserted as a violation of equal protection and due process under 42 U.S.C §1983 based on alleged wealth based detention (¶¶71-75); Count Two is asserted as violations of Procedural and Substantive Due Process under 42 U.S.C. §1983 based on an asserted fundamental right to pretrial liberty (¶¶76-80); and finally Count Three is asserted as a violation of the Sixth Amendment right to counsel under 42 U.S.C. §1983 based on Defendants failure to provide counsel at an alleged critical stage of prosecution (¶¶81-85). Throughout the Amended Complaint, Plaintiffs allege violations of the right to affordable bail, a fundamental right to pretrial liberty, and frame the alleged violation of the right to counsel in terms of the outcome of the bail settings at their initial court appearances through imposition of unaffordable bail.

Plaintiffs allege, but do not support that the bail schedule issued by Judge Hesse leads to the bail set by Judge Strubhar at the initial appearance. Nowhere does the Amended Complaint connect (or even describe for five of the six Plaintiffs) the offense of arrest, the amount of bail contemplated by the bail schedule, and the amount of bail ultimately imposed at the first court appearance.

The substantive relief Plaintiffs seek includes an order for class certification, a declaratory judgement and permanent injunctive relief against Judge Hesse requiring certain "administrative prerequisites" before "unaffordable cash bail may be ordered at a first court appearance". [Doc. 64, p. 21]. Plaintiffs requested "prerequisites" include a prompt bail determination after arrest, advance written notice to the arrestee of what is at issue in the bail determination, including notice that ability to pay is relevant to the bail determination; a meaningful, individualized inquiry into ability to pay, notice of the evidence the judge is relying

on, and an opportunity to testify, present evidence, and rebut evidence against the arrestee; reasoned written finding of the arrestee's ability to pay; and reasoned written findings, by clear and convincing evidence, that unaffordable cash bail is necessary because there is no less restricted means of mitigating the arrestee's right of flight or articulable danger to an individual or community. *Id.* Plaintiffs also request a judgment against Judge Strubhar declaring that "unaffordable cash bail" violated Plaintiff's rights to equal protection, procedural and substantive due process, and right to counsel unless the requested "prerequisites" are met. *Id* at 21-22.

## STANDARDS OF REVIEW

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148, n. 4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing a facial attack, a district court must accept the allegations in the complaint as true. *Id.* In a factual attack, the moving party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id.* Instead, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

Rule 12(b)(6) of the Federal Rules of Civil Procedure empowers a court to dismiss a complaint for failure to state claims upon which relief may be granted. Motions to dismiss are properly granted when a complaint provides no "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and those factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555 and 570 (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. A court is not required to accept as true allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Finally, "dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Broker's Choice of Am. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th 2017) (citing *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010)).

**PROPOSITION I:    DEFENDANT STATE JUDGES ARE IMMUNE FROM SUIT FOR THESE CLAIMS**

Plaintiffs filed this action against the Defendant State Judges seeking injunctive and declaratory relief because they allege that Judge Strubhar implements Judge Hesse's policies causing bail amounts to be set improperly, and fails to appoint counsel to criminal defendants that are unable to pay their bond amounts, in violation of their constitutional rights. However, bail determinations and counsel appointments occur while judges preside over cases wherein they have complete jurisdiction such that these decisions are judicial acts. Plaintiffs assert that their claims are limited to "official administrative capacity" for injunctive and declaratory relief or declaratory relief for judicial capacity claims. The actions Plaintiffs complain of (and the

relief they seek) encompass both judicial and legislative acts depending upon the defendant at issue.

### A. Judicial Immunity

Courts consider various factors to determine whether an act by a judge is judicial. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) ("[F]actors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.") Plaintiffs attempt to avoid immunity for judicial acts by framing them as "administrative." But administrative orders are, in fact, judicial orders. Only a judge may enter them. The fact that they are drafted outside the courtroom or that they involve administrative matters does not mean that they are not judicial. Cf. *Van de Kamp v. Goldstein,* 555 U.S. 335 (2009) (supervising district attorney entitled to absolute prosecutorial immunity for claim that he failed to institute system on information-sharing among deputy district attorney and for failure to adequately train or supervise despite the fact that obligation concerned administrative and management procedures).

For judicial immunity to apply, acts are simply required to be "judicial acts." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). "[A] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Whitesel v. Sengenberger*, 222 F.3d at 867 (internal quotation marks omitted). The United States Supreme Court has held that "judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980), *See also*, *Wiggins v. New Mexico State Sup. Ct. Clerk,* 664 F.2d 812,

814-15 (10th Cir.1981)*; Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). In fact, the Federal Court Improvement Act of 1996 ("FCIA") amending § 1983 extended judicial immunity to injunctive relief and forbids injunctive relief against a judicial officer unless a declaratory decree has been violated or declaratory relief is otherwise unavailable. *See* 42 U.S.C. § 1983.

Plaintiffs seek to enjoin Defendant State Judges from making certain decisions in their judicial capacities while presiding over dockets that they have authority to hear. Defendant State Judges are all duly appointed judges of the State of Oklahoma and were acting pursuant to their inherent authority as a judicial officer pursuant to Article VII, Section 1 of the Oklahoma Constitution. There have been no allegations that when the Plaintiffs were arrested, or appeared before the Defendant State Judges following arrest, that jurisdiction was lacking or that any rulings were made outside the scope of judicial authority. Therefore, to the extent that Plaintiffs are seeking an order directing judicial acts such as appointing counsel or setting any particular bond condition, Defendant State Judges are entitled to absolute judicial immunity and the claims against them seeking injunctive relief should be dismissed.

### B. Legislative Immunity

"Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Where judges act in a rule-making capacity rather than an adjudicative capacity, the United States Supreme Court has indicated that the applicable immunity is legislative rather than judicial. *Sup. Ct. of Va v. Consumers Union*, 446 U.S. 719, 731 (1980) (A state "[c]ourt and its members are immune from suit when acting in their legislative capacity," such as by promulgating "rules of general

application [that] are statutory in character), *Lewis v. N.M. Dep't of Health*, 275 F. Supp. 2d 1319, 1325 (D.N.M. 2003) ("[O]fficials outside the legislative branch," including judges, "are entitled to immunity when they perform legislative functions.") (citations omitted). Plaintiffs do not allege that the bond schedule at issue was published outside the authority of the court or that it is not generally applicable, and in fact, that is not the case. *See* OKLA. STAT. tit. 22 §1105.2(B). Therefore Judge Hesse "act[ed] in [his] legislative capacity" when he published the bond schedule ([Doc. 64-1]) pursuant to statute and is immune from suit such that the administrative capacity claims should be dismissed. *See Collins v. Daniels*, 916 F.3d 1302, 1317-19 (10th Cir. 2019); *Scott v. Taylor*, 405 F.3d 1251, 1253-57 (11th Cir. 2005) ("the legislator defendants in the instant official capacity suit for prospective relief are entitled to absolute immunity."); *accord Larsen v. Senate of Pennsylvania*, 152 F.3d 240, 252-54 (3d Cir. 1998) (following *Consumers Union* and holding that state senators sued for declaratory and injunctive relief in their official capacities were protected by legislative immunity).

Defendant is entitled to legislative immunity for claims stemming from his rule-making duties. The Legislature and the Oklahoma Supreme Court have delegated the authority to create and publish a bail schedule to the presiding (or chief) judge. *See* OKLA. STAT. tit. 22 §1105.2(B). Plaintiffs' claims that are predicated on Defendant Hesse's creation or promulgation of the bail schedule (¶70, 72) must therefore fail. Further, to the extent Plaintiffs' claims are based on the district court judges supervisory authority over the special judges to implement the bail schedule, those claims are also barred. *See Hyland v. Davis*, 149 F.3d 1183, 1998 WL 384556, *2 (6th Cir. 1998) (unpublished table decision) ("Providing direction on the enforcement of a court rule, although somewhat administrative in nature, is still a judicial act

for which the judge is immune because the parties' rights and liabilities are thereby affected.") (citing *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir.), *cert. denied*, 513 U.S. 870 (1994)). Plaintiffs' claim for injunctive relief against Judge Hesse must therefore fail.

**PROPOSITION II: PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS FAIL.**

The Due Process Clause of the Fourteenth Amendment "is the source of three different kinds of constitutional protection." *Daniels v. Williams*, 474 U.S. 327, 337 (1986) (Stephens, J., concurring). First, it provides a "guarantee of fair procedure, ... referred to as 'procedural due process,'" in connection with any deprivation of life, liberty, or property by a state. *Id.* This is "the most familiar office" of the Clause. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). Second, the Clause contains a substantive component "that protects individual liberty against 'certain government actions regardless of the procedures used to implement them.'" *Id.* This substantive component is referred to as substantive due process. *Id.* Third, the Clause incorporates the specific protections of most of the Bill of Rights against the states. These, too, are referred to as "substantive" rights, and are comprised within the "liberty" provision of the Due Process Clause. *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 846 (1992).

Because the Due Process Clause of the Fourteenth Amendment "forbids the government to infringe ... fundamental liberty interests *at all,* no matter what process is provided," the Supreme Court requires a "careful description" of the right asserted before declaring the right fundamental. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (cleaned up). Therefore, in describing the right at the correct level of specificity, courts must "carefully formulat[e] the interest at stake." *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). For

example, in a substantive due process "right to die" case the court must not formulate the issue at a high level of generality such as "whether there is a liberty interest in determining the time and manner of one's death." *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). Rather, in order to properly analyze the alleged right, the right must be defined with a high degree of specificity. Thus, there is a fundamental right to "refuse lifesaving hydration and nutrition." *Washington v. Glucksberg*, 521 U.S. 702, 721-723 (1997). But, there is no fundamental right "to commit suicide which itself includes a right to assistance in doing so." *Washington v. Glucksberg*, 521 U.S. 702, 723 (1997).

      With Glucksberg's "careful description" issue framing admonition in mind, the correct formulation of the substantive due process issue in this case is whether there is a fundamental right to affordable cash bail at a criminal defendant's first appearance. [Doc. 64 at ¶ 73]. ("Plaintiff[s] . . . *unable to afford cash bail amounts*.") (emphasis added); ¶¶ 74, 79 ("Judge Strubhar impos[es] *unaffordable cash bail amounts* . . .") (emphasis added); ¶¶ 20, 22 ("Judge Strubhar [] issue[s] secured cash bail orders at *first court appearances*.") (emphasis added); ¶24 (Misty White bail $4,500 *after first court appearance*) (emphasis added); ¶25 (Jermain Bradford bail $2,000 *after first court appearance*) (emphasis added); ¶26 (Janara Musgrove bail $3,000 *after first court appearance*) (emphasis added); ¶27 (Landon Proudfit bail $31,000 *after first court appearance*) (emphasis added); ¶28 (Bradley Barber bail $1,000 *after first court appearance*) (emphasis added); ¶29 (Dakota Kappus bail $12,000 *after first court appearance*) (emphasis added).

      After carefully framing the asserted right at the correct degree of specificity, the next step is to determine whether a Bill of Rights provision provides an explicit textual source of constitutional protection against the type of allegedly wrongful government conduct alleged.

*Graham v. Connor*, 490 U.S. 386, 395 (1989). If so, then the Bill of Rights provision controls, as opposed to some more generalized notion of due process. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

In this case, the Bill of Rights does supply the explicit textual source governing the analysis of the type of conduct alleged. The Eight Amendment of the U.S. Constitution provides that "***Excessive bail shall not be required***, nor excessive fines imposed, nor cruel and unusual punishments inflicted." (Emphasis added). As indicated previously, the gravamen of Plaintiffs' case is that the bail at their first appearances was "unaffordable," i.e., excessive.

In *Stack v. Boyle*, 342 U.S. 1 (1951), the Supreme Court held that the district court erred in denying petitioners' motion to reduce bail where bail had been "fixed in a sum ***much higher than that usually imposed for offenses with like penalties*** and yet there ha[d] been no factual showing to justify such action." *Stack v. Boyle*, 342 U.S. 1, 5 (1951) (emphasis added). In construing the Eight Amendment, the Court held that, "If bail in an amount ***greater than that usually fixed*** for serious charges of crimes is required . . . that is a matter to which evidence should be directed in a hearing so that the constitutional rights of each petitioner may be preserved. *Stack v. Boyle*, 342 U.S. 1, 6 (1951) (emphasis added). The Court went on to hold that, "[t]he proper procedure for challenging bail as unlawfully fixed is by ***motion for reduction of bail*** . . . ." *Stack v. Boyle*, 342 U.S. 1, 6, 72 S. Ct. 1, 4 (1951). The Court nowhere intimated that bail must be "affordable," much less that it be affordable at the initial appearance before the court has had an opportunity to decide a "motion for reduction of bail."

Here, Plaintiffs do not claim their bail was set at an amount "higher than that usually imposed for offenses with like penalties" or "greater than that usually fixed." *Stack v. Boyle*, 342

U.S. 1, 5-6 (1951). Nor do they allege the filing of, much less the denial of a motion for reduction of bail. Thus, under *Stack's* Eighth Amendment analysis, their substantive due process claims fail.

The United States Supreme Court has established the accused is not entitled to bail as a constitutional right. *See U.S. v. Salerno,* 481 US 739, 754, 107 S. Ct. 2095 (1987) (citing the original source for the Eighth Amendment in English Bill of Rights, the majority finds the very language of the Amendment "fails to say all arrests *must* be bailable" (emphasis added)). The Oklahoma Court of Criminal Appeals has noted that "[b]ail is not to be deemed excessive simply because the particular person charged cannot give the bail required." *Ex parte McClellan*, 97 P. 1019, 1020 (Okla. Crim. 1908).

Based on the Supreme Court's evaluation of pretrial detention schemes in *U.S. v. Salerno*, 481 U.S. 739 (1987) and *Schall v. Martin*, 467 U.S. 253 (1984), the Tenth Circuit applies the substantive due process test from *Bell v. Wolfish*, 441 U.S. 520 (1920) to determine whether conditions or restriction of pretrial detention amount to punishment of the detainee. The Tenth Circuit quoted *Bell v. Wolfish*:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee....
>
> ....
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the

> governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Gaylor v. Does*, 105 F.3d 572, 576 (10th Cir. 1997) (quoting *Bell*, 441 U.S. at 535, 537, 538–39).

Plaintiffs have not alleged they were denied bail, but that the bail set after the hearing before a judge was unaffordable. Plaintiffs make no allegations as to the bail set according to the schedule before their first appearance. Plaintiffs appear to challenge the existence of the bail schedule; however, a bail schedule promotes a legitimate governmental interest in processing arrestees in an efficient manner and in and of itself does not violate substantive due process. *See Walker v. City of Calhoun, GA*, 901 F.3d 1245 (11th Cir. 2018). Therefore, Plaintiffs challenge to the existence of the bail schedule for setting a bail amount upon arrest fails.

Even if Plaintiffs attempt to characterize their asserted right as outside the scope of the Eighth Amendment—which it is not—their claims still fail because there are rational reasons for holding quick initial appearances without requiring the type of evidence and testimony one would expect at a post-initial-appearance bail hearing. While substantive due process under the Fourteenth Amendment does protect rights in the gap between arrest (governed by the Fourth Amendment) and conviction (governed by the Eighth Amendment's prohibition of cruel and unusual punishment), the Supreme Court analyzes such rights by asking whether the government's actions "amount to punishment." *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). This is the appropriate test since "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In determining whether the government's actions constitute punishment, the Court applies the rational basis test. "[T]he determination whether [government action]

constitute[s] punishment in the constitutional sense depends on whether they are *rationally related to a legitimate nonpunitive governmental purpose* and whether they appear excessive in relation to that purpose." *Bell v. Wolfish*, 441 U.S. 520, 561 (1979).

There are rational reasons for holding quick initial appearances without requiring the type of evidence and testimony one would expect at a post-initial-appearance bail hearing that are related to legitimate nonpunitive governmental purposes. Those reasons include: efficiency, judicial resources, protection of the public from potentially dangerous arrestees whom the judge has not had adequate time to evaluate for appropriate conditions of release[3]. [insert as much stuff as we can think of]. In light of the fact that *Stack* endorses bail rulings after motions for bail reduction have been denied, the State Judge's initial appearance process is not "irrational" under *Bell*'s rational basis test.

Finally, even if the initial appearance procedure were judged under the standard for evaluating a State's criminal procedures under the test in *Medina v. California*, 505 U.S. 437 (1992), it would pass constitutional muster because it can hardly be said to "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental." *Id.* at 201-202.

**PROPOSITION III:  PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS FAIL.**

In light of the fact, as shown above in the discussion of substantive due process, that there is no right to affordable bail at an initial appearance, Plaintiffs' procedural due process

---

[3] Protection of the public is a factor that may be considered in setting bail. *Clark v. Hall*, 2002 OK CR 29, ¶ 7, 53 P.3d 416, 417.

claim can be easily rejected. An initial bail setting, whether set for the first time at an arrestee's first court appearance, or whether adjusted from the preset bail schedule ([Doc. 64-1]), does not mandate the outcome Plaintiffs' seek, i.e. affordable bail. Rather, bail is a discretionary decision of the judge presiding over the first court appearance. *See Application of Pulliam*, 1960 OK CR 83, 356 P.2d 755, 757 (amount of bail reviewed for abuse of discretion). Thus, even if Plaintiff were attempting to create a federal claim based on an alleged violation of state procedure, their claims would fail because there can be no procedural due process interest in a state-law procedure. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 749 (2005); *see also*, *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012) ("an entitlement to nothing but [state-law] procedure cannot be the basis for a liberty or property interest.").

## PROPOSITION IV:   PLAINTIFFS' EQUAL PROTECTION CLAIMS FAIL.

Courts subject governmental action to strict scrutiny under the Equal Protection Clause only if they target a suspect class or involve a fundamental right. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). If there is neither a fundamental right nor a suspect class, then the government action is valid if it is rationally related to a legitimate government purpose. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). As demonstrated previously in the substantive due process argument outlined earlier, there is no fundamental right involved in this case. *See also*, *Dawson v. Bd. of Cty. Commissioners of Jefferson Cty., Colorado*, 732 F.App'x 624, 630 (10th Cir. 2018) ("Dawson's interest to be free from pretrial detention, having fulfilled the court ordered release conditions within his control and awaiting the fulfillment of court ordered release conditions outside of his control, is a non-fundamental right."). Neither is there a "suspect class." Poverty is not a

suspect classification. *Harris v. McRae*, 448 U.S. 297, 323 (1980). Even if it were, however, "[p]roof of [] discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977). Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296 (1979). "It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (cleaned up). Since there is no plausible allegation (nor could there be) that Defendant State Judges took any actions "because of, not merely in spite of, its adverse effects upon [people who cannot afford their bail]," Plaintiffs' disparate-impact-wealth-based equal protection claim fails. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

**PROPOSITION V: PLAINTIFFS' SIXTH AMENDMENT CLAIMS FAIL.**

Plaintiffs have asserted a Sixth Amendment failure to provide counsel claim against Defendant State Judges. Plaintiffs attempt to support their claims in 21 paragraphs of the Amended Complaint. [Doc. 64, ¶¶30-50]. Only five paragraphs, ¶¶30-33 and 35, are specific to the parties in this action. The remaining paragraphs set forth generalized claims and conclusory statements, which are not specific to these parties or the proceedings in Canadian County. *See* e.g. ¶¶37, 40, 42, 47. Rather than connect the generalized claims to actions by these Defendants and specific to these Plaintiffs, the Amended Complaint simply makes assertions like "Bail determinations…have the potential to prejudice the outcome" and "[t]is effect holds true in Canadian County." *Id.* at ¶¶35, 38. Plaintiffs do not allege if or how the initial bail

determinations in their cases prejudiced the outcomes nor whether pretrial detention was actually a factor in the ultimate outcomes in their cases.

As an initial matter, Canadian County participates in the Oklahoma Indigent Defense System. *See* OKLA. STAT. tit. 22 § 1355(C) (setting forth that the OIDS Act is applicable to counties except those counties with an Office of the Public Defender pursuant to OKLA. STAT. tit. 19 § 138.1(a). As a county subject to the Indigent Defense Act, OKLA. STAT. tit. 22 § 1355 *et seq.*, indigent defendants are subject to certain administrative steps prior to the appointment of counsel, including an application with specific terms.[4] The Indigent Defense Act requires submission of an application prior to appointment of counsel, which is then reviewed for approval by a judge.[5]

The Sixth Amendment protects the fairness of trial. *See Gideon v. Wainwright*, 372 U.S. 335 (1963) (right to counsel is a trial right based in fairness). The Amendment assures the right to legal counsel "when adversary judicial criminal proceedings are initiated against a defendant." *United States v. Washington*, 619 F.3d 1252, 1260 (10th Cir. 2010). The purpose of

---

[4]It should be noted that Plaintiffs do not appear to be, nor have they actually, challenged the constitutionality of Oklahoma's Indigent Defense statutory scheme. The contents of the OIDS application are set by statute (OKLA. STAT. tit. 22 § 1355A(A)) and applications are available at the Canadian County Jail. *See* Rules issued December 26, 2019. The requirement to contact three attorneys is only applicable to those defendant released on bond and the $40 fee may be deferred. OKLA. STAT. tit. 22 § 1355(A).

[5] To the extent the application and appointment process results in a delay for counsel, as long as the appointment occurs within a reasonable time no prejudice results from the delay. *See e.g. Cooper v. Jones*, No. CIV-10-75-R, 2010 WL 3960592 (W.D. Okla. Oct. 8, 2010) (Petitioner's right to counsel attached at arraignment on April 23, 2004, which entitled him to representation at critical stages of post attachment proceedings. The court found that petitioner was not entitled to counsel at arraignment itself when he applied for court-appointed counsel through the Oklahoma Indigent Defense System. The OIDS application was approved on April 29, 2004, which was found to be a reasonable timeframe after attachment.)

this guarantee "is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights." *Id.* (*citing Rothgery v. Gillespie Co.*, 554 U.S. 191, 234, 128 S. Ct. 2578 (2008)). The right to counsel commences "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v Gillespie Cnty. Texas*, 554 U.S. 191, 198 (2008). The right attaches at the initiation of adversarial criminal proceedings, not before. *See Montejo v. Louisiana*, 556 U.S. 778, 786, (2009); *Texas v. Cobb*, 532 U.S. 162, 167-68, (2001); *McNeil v. Wisconsin*, 501 U.S. 171, 175, (1991). *See also Estelle v. Smith,* 451 U.S. 454, 469 (1981)) "[T]he right to counsel granted by the Sixth Amendment means that a person is entitled to the help of a lawyer at or after the time that adversary judicial proceedings have been initiated against him."); *Moran v. Burbine*, 475 U.S. 412, 431, ("The clear implication of [Supreme Court] holding[s] . . . is that the Sixth Amendment right to counsel does not attach until after the initiation of formal charges."); *United States v. Gouveia*, 467 U.S. 180, 188, 104 S. Ct. 2292, 2297 (1984) ("The view that the right to counsel does not attach until the initiation of adversary judicial proceedings has been confirmed by this Court in [numerous] cases."). Bail reduction hearings are not "critical stage" proceedings where defense on merits would be impaired without assistance of counsel. *United States v. Hooker*, 418 F. Supp. 476 (M.D. Pa.), aff'd, 547 F.2d 1165 (3d Cir. 1976). A bail review hearing is not a "critical stage" of criminal proceedings, and thus, there is no Sixth Amendment right to provide counsel during bail hearing. *Fenner v. State*, 381 Md. 1, 846 A.2d 1020 (2004).

Once the right to counsel has attached, if it is determined by the court that a defendant is unable to afford to hire an attorney, then the defendant is entitled to have an attorney appointed by the court. *Gideon v. Wainwright*, 372 U.S. at 344-45; Rule 1.14 Oklahoma Court

of Criminal Appeals, OKLA. STAT. tit. 22, Ch. 18; OKLA. STAT. tit. 22 §§ 1355A, 1355.6. After the right has attached, the State is required to provide assistance of counsel at any "critical stage" of the criminal proceeding, and must appoint counsel "within a reasonable time after attachment" to allow for adequate representation at any critical stage. *Rothgery*, 544 U.S. at 212. "Pretrial proceedings are 'critical' if the presence of counsel is essential to protect the fairness of the trial itself." *U.S. v. Ash*, 413 U.S. 300, 323 (1973). "The determination whether the hearing is a 'critical stage' requiring the provision of counsel depends, as noted, upon an analysis 'whether potential substantial prejudice to defendant's rights inheres in the . . . confrontation and the ability of counsel to help avoid that prejudice.'" *Coleman v. Alabama*, 399 U.S. 1, 9, (1970) (*citing United States v. Wade,* 388 U.S. at 227, 87 S. Ct. at 1932)). As the Supreme Court explained in *Rothgery*, "the cases have defined critical stages as proceedings between an individual and agents of the State (whether formal or informal, in court or out) that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or meeting his adversary." 554 U.S. at 212 n.16 (internal quotation marks and citations omitted). "[W]hat makes a stage critical" is when plaintiffs "show[] the need for counsel's presence." *Rothgery*, 554 U.S. at 212.

As noted at the outset, these Plaintiffs have not pled that their initial court appearances led to any prejudice in the outcome of their cases or that the proceedings affected the ultimate outcome at all. A plaintiff must plead facts showing that a jurisdiction's particular pretrial occurrence was so critical in the "criminal proceeding . . . [that it] *held significant consequences for the accused.*" *Bell v. Cone*, 535 U.S. 685, 696 (2002) (citations omitted) (emphasis added). Plaintiffs have not actually plead facts, which assert what happened at the initial court appearances.

~ 18 ~

Rather, the appearances are described in terms of what Plaintiffs allege was lacking. OKLA. STAT. tit. 22 § 181 requires that an arrestee be taken before a magistrate without unnecessary delay. The expectations for the initial in custody appearances include advising the arrestees of the reason for custody, the amount of bail, the right to counsel and the right to remain silent. *Luttrell v. Freeman,* 444 P.2d 857 (Okla. Crim. 1968).

Plaintiffs allege that bail settings require counsel because counsel's presence "increases the likelihood that the arrestee's case is ultimately dismissed, or that their charges are ultimately reduced from felonies to misdemeanors." [Doc. 64, ¶ 43]. Plaintiffs deduce from the general, uncited national trends that a counsel's presence "significantly increases the chances of release and decreases the total length of time arrestees spend in pretrial detention." *Id.* However, Plaintiffs do not connect these broad generalizations to Judge Strubhar's courtroom, nor to these Plaintiffs. Pleading general national trends is not enough to show that counsel is required in Canadian County at a bail setting proceedings without more facts specific to the Plaintiffs and Defendants.

## PROPOSITION VI: PLAINTIFFS' SUPERVISORY LIABILITY CLAIMS FAIL.

Plaintiffs have not pled sufficient facts to support the elements of their claim against Judge Hesse. To plead supervisory liability against a defendant for failure to implement/promulgate sufficient policies and procedures that would have prevented an alleged constitutional violation, a Plaintiff must allege ***in a nonconclusory manner*** that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation. Further, plaintiff must ***plead***

*facts* sufficient to support such a claim and may not stand on mere conclusory allegations. *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021). Here, Plaintiff has failed to make nonconclusory allegations supporting any of the elements of their claim against Judge Hesse. First, the only well-pled fact against Judge Hesse is that he promulgated the "Amended Bail Schedule" attached as to the Amended Complaint. [Doc. 64-1]. There is no plausible nonconclusory allegation that this policy was responsible for any constitutional harm whatsoever. It is facially valid and it underscores that it "may" be used as a guide for judges in "the exercise of [their] discretion in setting bail." [Doc. 64-1 at p. 2]. Plaintiffs do not allege that the amount of bail in the schedule is "excessive" under the Eighth Amendment or that it is "fixed in a sum much higher than that usually imposed for offenses with like penalties." *Stack v. Boyle*, 342 U.S. 1 (1951). Nor do Plaintiffs assert any plausible nonconclusory allegations showing a causal link between the bail schedule and any constitutional harm. Finally, Plaintiffs do not assert any plausible nonconclusory allegations that Judge Hesse "acted with the state of mind required to establish the alleged constitutional deprivation." *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021). There is simply no way Judge Hesse should have been aware that issuing the bail schedule without stating that requiring counsel to be present at an initial appearance, without requiring prophalactic measures to ensure "wealth-based detention" does not occur, and without "establish[ing] any infrastructure to facilitate meaningful hearings" would inexorably lead to constitutional violations. Even if there were a constitutional rule requiring counsel at initial appearance and prohibiting "wealth-based detention," Judge Hesse would not have known that these "requirements" needed to be outlined in a run-of-the mill bail schedule—or in any other form. To the extent Plaintiffs are

challenging preset bail per se, this practice is constitutional. A bail schedule promotes a legitimate governmental interest in processing arrestees in an efficient manner and in and of itself does not violate substantive due process. *See Walker v. City of Calhoun, GA*, 901 F.3d 1245 (11th Cir. 2018).

Judge Hesse is not analogous to an executive-branch supervisor. On matters of law and procedure, he is no supervisor at all as to Judge Strubhar. In Oklahoma, special judges have jurisdiction to perform certain duties in criminal cases. When they do, they are "not under the supervision of any other judge or judges of the district court, except for administrative purposes." *Nicodemus v. Dist. Ct. of Oklahoma Cty*, 1970 OK CR 83, 473 P.2d 312, 316. Thus, Judge Hesse could simply not have been aware that his acts or failures to act would lead to (alleged) constitutional violations. *See, e.g., Connick v. Thompson*, 563 U.S. 51 (2011) (deliberate indifference sufficient to support supervisory liability claim did not exist because district attorney could not have been aware that his inaction would result in his attorney-subordinate's violation of plaintiff's constitutional rights); *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015) (conclusory allegation that defendant had unconstitutional policy insufficient to overcome motion to dismiss).

**PROPOSITION VII: THIS COURT SHOULD DENY DECLARATORY RELIEF**

The Tenth Circuit has said that a declaratory judgment is not meant to proclaim liability for a past act, but to define the legal rights and obligations of the parties in anticipation of some future conduct. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir.2004) *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir.1991) ("plaintiff cannot maintain a declaratory… action unless he or she can demonstrate a good chance of being

likewise injured in the future"). "It is well established that what makes a declaratory judgment action 'a proper judicial resolution of a 'case or controversy' rather than an advisory opinion— is [ ] the settling of some dispute which affects the behavior of the defendant toward the plaintiff.'" *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (*quoting Hewitt v. Helms*, 482 U.S. 755, 761 (1987)) (alteration in original), superseded on other grounds as recognized in *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001). In other words, Article III's standing requirements are implicated in a declaratory action analysis. The case or controversy must be real and concrete and of such nature that the specific relief will resolve the legal relationship of the parties. *Aetna Life Ins. Co. of Hartford, Connecticut v. Haworth*, 300 U.S. 227, 240-241 (1937). A declaratory judgment must terminate the parties' controversy. *Shannon v. Sequeechi*, 365 F.2d 827, 829 (10th Cir. 1966). Finally, the court's judgment must redress the plaintiff's injury either directly or indirectly. *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005).

Plaintiffs are seeking declaratory relief from this court against the Canadian County judges, which the named judges cannot actually afford to the plaintiffs. The process for requesting and appointing attorneys for indigent criminal defendants is statutory. *See* OKLA. STAT. tit. 22 § 1355 *et seq.*, Oklahoma Indigent Defense Act. "Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." *Gandy*, 416 F. 2d at 1159 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (Scalia, J, concurring)). To the extent Plaintiffs are seeking relief that conflicts with the Indigent Defense Act or the Rules of

the Oklahoma Court of Criminal Appeals, the defendant state judges do not have the authority

to alter those statutory process and this Court should deny declaratory relief on that basis.

**PROPOSITION VIII:** *YOUNGER* **ABSTENTION DOCTRINE COUNSELS THAT COURT SHOULD DECLINE TO DECIDE CASE**

*Federalism* and *comity* preclude this Court from issuing an injunction against the

Defendant State Judges. The Eleventh Amendment ordinarily grants a State and its agencies

sovereign immunity from all suits brought in federal court by private citizens. *P.R. Aqueduct &*

*Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Three exceptions to Eleventh

Amendment immunity exist: (1) a state may consent to suit in federal court; (2) Congress may

abrogate a state's sovereign immunity legislatively, and (3) under *Ex parte Young*, 209 U.S. 123

(1908), a plaintiff may seek prospective equitable relief against a state official for ongoing

violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012)

(citations omitted). Presumably, Plaintiffs are relying on *Ex parte Young* and bear the burden

of showing its applicability.

Again, Plaintiffs challenge generally the detention after arrest and lack of counsel

through operation of the bail system in their state criminal proceedings by naming Defendant

State Judges and claim the policies and practices violate their constitutional rights. However,

the propriety of Plaintiffs' case involves concerns of *federalism* in that Plaintiffs' claim for

injunctive relief via § 1983 is against a judge. *Federalism* counsels that "[f]ederal judges, …

should not sit in constant supervision of the actions of state judicial officers." *Pulliam v. Allen*,

466 U.S. 522, 539 (1984) (*Pulliam* discusses pre-Federal Courts Improvement Act law, *supra*.).

If Plaintiffs believed the amount of their bail was improperly set, they could have sought a bail

reduction hearing in their criminal cases. If that were denied, they could have sought relief in

the Court of Criminal Appeals. *See T. F. M. v. State*, 1977 OK CR 323, 572 P.2d 280 (Where juvenile was incarcerated for period of approximately 25 days without filing of charges, setting of bail or appointing of counsel to protect his interests, denial of his due process rights was prejudicial, and order certifying him to stand trial as adult was dismissed with prejudice). Thus, Plaintiffs could challenge the amount of their bail within the framework of their criminal cases.

*Federalism* and *comity* further counsel that courts should weigh countervailing abstention doctrines against *Ex parte Young* claims. The "*Younger* [abstention doctrine] governs whenever the requested relief would interfere with a state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002); *Ex parte Young*, 209 U.S. 123 (1908). A state court litigant "should not be permitted the luxury of federal litigation of issues presented by ongoing state proceedings, a luxury which . . . is quite costly in terms of the interests which *Younger* seeks to protect." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 605-06 (1975). In extending the *Younger* abstention doctrine even further, the Court held that:

> the more vital consideration behind the *Younger* doctrine of nonintervention lay not in the fact that the state criminal process was involved but rather in the notion of comity, that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Juidice v. Vail*, 430 U.S. 327, 334 (1977) (*internal quotations omitted*, citing *Huffman*, 420 U.S. at 601 and *Younger*, at 44). The Court explained that the exception to Eleventh Amendment immunity under *Ex parte Young* was not available to the class action debtors in *Juidice* because a "[f]ederal court cannot . . . interfere in a case where the proceedings were already pending in a state court." *Id.* at 335.

In *Huffman v. Pursue, Ltd.,* the Supreme Court discussed the *Younger* abstention doctrine, explaining that "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 601 (1975) (*quoting Younger v. Harris*, 401 U.S. 37, 44 (1971)). Plaintiffs have not met the burden required to justify the Court stepping into the role of state court judge and directing state court proceedings.

## CONCLUSION

Defendant State Judges respectfully request that, under Fed. R. Civ. P. 12(b)(1) and (6) this Court dismiss Plaintiffs' claims against them and for any and all such relief as the Court may deem appropriate.

Respectfully submitted,

 /s/ Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA #22422**
**ERIN M. MOORE, OBA #20787**
**DEVAN A. PEDERSON, OBA#16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK   73105
Telephone:    (405) 521-3921
Facsimile:     (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
        erin.moore@oag.ok.gov
        devan.pederson@oag.ok.gov
*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of December 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to counsel of record.

/s/ Devan Pederson
Devan Pederson