# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MISTY WHITE, *et al.*,
on behalf of themselves and all others
similarly situated,

                  Plaintiffs,

v.

[1] HON. PAUL HESSE, in his official
capacity as Chief Judge of the 26th
Judicial District, and
[2] HON. KHRISTIAN STRUBHAR, in
her official capacity as Special Judge in
the Canadian County District Court,

                  Defendants.

Case No. 5:19-cv-1145-JD

# PLAINTIFFS' RESPONSE TO
# DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.      Standard of Review ................................................................................. 2

II.     Defendants Are Not Immune ................................................................. 2

        A.      Judicial Immunity Does Not Apply ............................................ 2

        B.      Legislative Immunity Does Not Apply ....................................... 5

        C.      Sovereign Immunity Does Not Apply .......................................... 7

III.    *Younger* Abstention Does Not Apply ..................................................... 8

IV.     Plaintiffs Have Alleged A *Bearden* Violation ....................................... 8

        A.      Defendants' Bail System Triggers Heightened Scrutiny .............. 8

        B.      Defendants' Bail System Lacks the Requisite Procedural Safeguards ....... 10

V.      Plaintiffs Have Alleged A Substantive and Procedural Due Process Violation .... 12

        A.      Pretrial Liberty is a Fundamental Right ..................................... 13

        B.      Plaintiffs' Right to Pretrial Liberty Is Infringed by Their Detention .......... 14

        C.      Plaintiffs' Detention Fails Strict Scrutiny ................................... 15

        D.      Plaintiffs' Detention Was Not Implemented in a Fair Manner ................. 17

VI.     Plaintiffs Have Alleged A Sixth Amendment Right to Counsel Violation ........... 18

        A.      First Court Appearance Risks Substantial Prejudice .................... 19

        B.      Counsel's Assistance at First Court Appearance is Necessary to Avoid Substantial Prejudice .......... 22

        C.      Defendants' Two Cases Are Nonbinding and Abrogated ........................ 23

VII.    Plaintiffs Have Alleged Supervisory Liability Under Section 1983 ...................... 23

VIII.   Declaratory Relief is Appropriate Under Section 1983 ......................... 25

CONCLUSION ................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Abdi v. Wray*,
   942 F.3d 1019 (10th Cir. 2019) ...................................................... 13, 18, 19

*Antoine v. Byers & Anderson, Inc.*,
   508 U.S. 429 (1993) ........................................................................... 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................... 2

*Bearden v. Georgia*,
   461 U.S. 660 (1983) ............................................................... 9, 10, 11, 12

*Bd. of Cty. Comm'rs v. Brown*,
   520 U.S. 397 (1997) ........................................................................ 24

*Bell v. Cone*,
   535 U.S. 685 (2002) ........................................................................ 22

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ........................................................................ 14

*Booth v. Galveston Cty.*,
   No. 18-cv-00104, 2019 WL 1129492 (S.D. Tex. Mar. 12, 2019) ................................ 2

*Bryson v. City of Oklahoma City*,
   627 F.3d 784 (10th Cir. 2010) ............................................................ 25

*Buffin v. City and Cty. of San Francisco*,
   No. 15-cv-04959-YGR, 2019 WL 1017537 (N.D. Cal. Mar. 4, 2019) ....................... 1

*Cleveland Bd. of Ed. v. Loudermill*,
   470 U.S. 532 (1985) ........................................................................ 18

*Coleman v. Alabama*,
   399 U.S. (1970) ............................................................................ 23

*Dawson v. Bd. of Cty. Comm'rs*,
   732 F. App'x 624 (10th Cir. 2018) ........................................................ 15

*DeWolfe v. Richmond*,
   76 A.3d 962 (Md. 2012) .................................................................... 24

*Ditch v. Grace*,
    479 F.3d 249 (3d Cir. 2007) ........................................................................ 23

*Dodds v. Richardson*,
    614 F.3d 1185 (10th Cir. 2010) ................................................................... 24

*Edwards v. Cofield*,
    No. 3:17-cv-321-WKW, 2018 WL 4323920 (M.D. Ala. Sept. 10, 2018) .................... 2

*Elna Sefcovic, LLC v. TEP Rocky Mtn., LLC*,
    953 F.3d 660 (10th Cir. 2020) ..................................................................... 8

*Estate of Booker v. Gomez*,
    745 F.3d 405 (10th Cir. 2014) ..................................................................... 25

*Feltz v. Bd. of Cty. Comm'rs*,
    No. 4:18-cv-298 (N.D. Okla. Sept. 29, 2021) ................................................. 22

*Fenner v. State*,
    846 A.2d 1020 (Md. 2004) ......................................................................... 24

*Forrester v. White*,
    484 U.S. 219 (1998) .......................................................................... 3, 4, 5

*Foucha v. Louisiana*,
    504 U.S. 71 (1992) ...................................................................... 13, 16, 17

*Gaylor v. Does*,
    105 F.3d 572 (10th Cir. 1997) ............................................................... 14, 15

*Hamilton v. Alabama*,
    368 U.S. 52 (1961) .................................................................................. 22

*Harris v. McRae*,
    448 U.S. 297 (1980) .................................................................................. 9

*In re Humphrey*,
    482 P.3d 1008 (Cal. 2021) ...................................................................... 1, 14

*Jojola v. Chavez*,
    55 F.3d 488 (10th Cir. 1995) ..................................................................... 25

*Kamplain v. Curry Cty. Bd. of Comm'rs*,
    159 F.3d 1248 (10th Cir. 1998) ............................................................... 5, 6

*Kitchen v. Herbert*,
    755 F.3d 1193 (10th Cir. 2014) ................................................................. 7, 8

*Lafler v. Cooper*,
    566 U.S. 156 (2012) ...................................................................................... 20

*LeClerc v. Webb*,
    419 F.3d 405 (5th Cir. 2005) ......................................................................... 7

*Lewis v. New Mexico Department of Health*,
    275 F. Supp. 2d 1319 (D.N.M. 2003) ........................................................... 6

*Maehr v. U.S. Dep't of State*,
    5 F.4th 1100 (10th Cir. 2021) ................................................................. 13, 16

*Martinez v. Carson*,
    697 F.3d 1252 (10th Cir. 2012) .................................................................... 25

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ...................................................................................... 12

*Missouri v. Frye*,
    566 U.S. 134 (2012) ................................................................................. 20, 21

*ODonnell v. Harris Cty.*,
    892 F.3d 147 (5th Cir. 2018) .......................................................... 1, 10, 12, 14

*Panos v. Sup. Ct.*,
    198 F. App'x 692 (10th Cir. 2006) ................................................................ 3

*Parga v. Bd. of Cty. Comm'rs*,
    No. 18-cv-0298-CVE-JFJ, 2019 WL 1231675 (N.D. Okla. Mar. 15,
    2019) ......................................................................................................... 1, 4

*Phu Chan Hoang v. Comfort*,
    282 F.3d 1247 (10th Cir. 2002) .............................................................. 13, 15

*Planned Parenthood of Kansas v. Andersen*,
    882 F.3d 1205 (10th Cir. 2018) ..................................................................... 8

*Pueblo of Jemez v. United States*,
    790 F.3d 1143 (10th Cir. 2015) ..................................................................... 2

*Pulliam v. Allen*,
    466 U.S. 522 (1984) ....................................................................................... 2

*Reno v. Flores*,
    507 U.S. 292 (1993) ................................................................................. 15

*Rothgery v. Gillespie Cty.*,
    554 U.S. 191 (2008) ................................................................................. 19

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
    411 U.S. 1 (1973) ................................................................................. 9, 10

*Schell v. Gurich*,
    409 F. Supp. 3d 1290, 1295 (W.D. Okla. 2019) ........................................ 7

*Straub v. BNSF Ry. Co.*,
    909 F.3d 1280 (10th Cir. 2018) ............................................................... 2

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*,
    446 U.S. 719 (1980) ........................................................................ 5, 6, 7

*Tate v. Short*,
    401 U.S. 395 (1971) ............................................................................. 9, 10

*United States v. Ash*,
    413 U.S. 300 (1973) ............................................................................... 23

*United States v. Bergman*,
    599 F.3d 1142 (10th Cir. 2010) ......................................................... 19, 21

*United States v. Collins*,
    430 F.3d 1260 (10th Cir. 2005) ........................................................... 6, 22

*United States v. Cronic*,
    466 U.S. 648 (1984) ............................................................................... 22

*United States v. Hooker*,
    418 F. Supp. 476 (M.D. Pa. 1976) ........................................................ 23

*United States v. Salerno*,
    481 U.S. 739 (1987) ........................................................................ *passim*

*United States v. Wade*,
    388 U.S. 218 (1967) ................................................................. 19, 21, 22, 23

*Verizon Md., Inc. v. Pub. Serv. Com'n of Md.*,
    535 U.S. 635 (2002) ................................................................................. 8

*Walker v. Calhoun,*
  901 F.3d 1245 (11th Cir. 2018) ................................................................ 10, 11, 12, 14

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) .................................................................................. 13

*Williams v. Illinois,*
  399 U.S. 235 (1970) .................................................................................. 9, 10

*Williams v. Jones,*
  571 F.3d 1086 (10th Cir. 2009) ................................................................ 20

*Ex parte Young,*
  209 U.S. 123 (1908) .................................................................................. 7

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) .................................................................................. 16, 17

**Statutes**

42 U.S.C. § 1983 .......................................................................................... *passim*

20 O.S. Ch. 1 App'x 2, Rule 2(B) ................................................................ 7

20 O.S. Ch. 1 App'x 2, Rule 8 ...................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 2

## INTRODUCTION

This putative class action challenges the unlawful administration of initial bail hearings in Canadian County District Court, established under an administrative order issued by Chief Judge Hesse. At a proceeding called the "first court appearance," Judge Strubhar issues secured cash bail orders that detain arrestees prior to trial, without the required finding that detention is necessary because they pose a flight risk or a danger to the community that could not be managed through alternatives to detention. Thus, Plaintiffs are detained solely because of their poverty; were they able to afford the assigned cash bail amounts, Plaintiffs could walk free. Each of the Plaintiffs was detained[1] under orders issued in remarkably similar, cursory, and uncounseled hearings conducted under Chief Judge Hesse's administrative order.

Plaintiffs seek to vindicate three rights: first, the fundamental right to pretrial liberty; second, the right against wealth-based detention; and third, the right to counsel at first court appearance. These claims are each controlled by Supreme Court precedent, and courts around the country, including Oklahoma, have allowed similar claims to proceed.[2] Defendants' motion to dismiss should be denied.

---

[1] Under the relation-back doctrine, this response uses present tense to refer to facts that were true at the time of filing.

[2] *See In re Humphrey*, 482 P.3d 1008, 1012 (Cal. 2021) ("[C]onditioning freedom solely on whether an arrestee can afford bail is unconstitutional."); *ODonnell v. Harris Cty.*, 892 F.3d 147, 164 (5th Cir. 2018) (holding "detainment solely due to a person's indigency . . . without any meaningful consideration of other possible alternatives" is unconstitutional) (cleaned up); *Buffin v. City and Cty. of San Francisco*, No. 15-cv-04959, 2019 WL 1017537, at *24 (N.D. Cal. Mar. 4, 2019) (finding mechanical use of a bail schedule "deprives plaintiffs of their fundamental right to liberty"); *Parga v. Bd. of Cty. Comm'rs,*

## ARGUMENT

### I.   Standard of Review

"To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is "plausible on its face" if its factual allegations allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage of litigation, evidentiary support is not required; rather, the "court accepts as true all well-pleaded factual allegations in a complaint and views those allegations in the light most favorable to the plaintiff." *Straub*, 909 F.3d at 1287.[3]

### II.   Defendants Are Not Immune

### A.   Judicial Immunity Does Not Apply

Judicial immunity is inapplicable to claims for prospective relief, which is the only relief Plaintiffs seek. *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). While Section 1983 limits injunctive relief against a judge's judicial acts, it does not limit injunctive relief

---

No. 18-cv-0298, 2019 WL 1231675, at *8–9 (N.D. Okla. Mar. 15, 2019) (denying a motion to dismiss in a case challenging a similar bail system created by another Oklahoma judge); *Booth v. Galveston Cty.*, No. 18-cv-00104, 2019 WL 1129492, at *8 (S.D. Tex. Mar. 12, 2019) (certifying a class to challenge a cash bail system); *Edwards v. Cofield*, No. 3:17-cv-321, 2018 WL 4323920, at *2 (M.D. Ala. Sept. 10, 2018) (same).

[3] While Defendants also style their brief as a motion to dismiss under Rule 12(b)(1), they offer no jurisdictional facts counter to those pled in the complaint. As a result, well-pled jurisdictional facts are also accepted "as true and view[ed] in the light most favorable to the plaintiff." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147–48 (10th Cir. 2015).

against a judge's administrative acts. 42 U.S.C. § 1983. Plaintiffs seek injunctive relief against Judge Hesse's administrative order, which is an administrative act.

To determine whether an act is judicial or administrative, courts distinguish, respectively, between "discretionary decisionmaking" and "administrative duty." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993). The "touchstone" of judicial action is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Id.* at 435–36. Under this rubric, general duties of courthouse administration, like establishing the system for selection of jurors, are not judicial acts. *Forrester v. White*, 484 U.S. 219, 227–28 (1998) (discussing *Ex parte Virginia*, 100 U.S. 339 (1880) (holding administration of jury selection was not a judicial act)). Such acts are instead deemed administrative, "even though they may be essential to the very functioning of the courts." *Forrester*, 484 U.S. at 228.

Judge Hesse's administrative order is an administrative act: it establishes an administrative system for setting of bail writ large in Canadian County. Defendants have stipulated that this administrative order was issued by Judge Hesse "in his capacity as Chief Judge," as an exercise of "authority granted by Rule 8 of the Rules on Administration of Courts." Joint Status Report, ECF No. 58 at 2. Such systems of administration implicate no particular "parties," resolve no "dispute," and do not "adjudicate" any individual rights. *Antoine*, 508 U.S. at 435–36. The order represents one of the "administrative . . . functions that judges may on occasion be assigned by law to perform." *Forrester*, 424 U.S. at 227; *accord Panos v. Sup. Ct.*, 198 F. App'x 692, 693 (10th Cir. 2006) (citing "general rulemaking" as an example of administrative action by

judges); *Parga v. Board of Cty. Comm'rs*, 2019 WL 1231675, at *8 (N.D. Okla. Mar 15, 2019) (permitting a Section 1983 injunctive claim because defendant judge's "administrative, rulemaking, and supervisory authority over the Tulsa County District Court, his promulgation of the secured money-bail schedule, . . . and his promulgation of certain Local Criminal Rules . . . are not [] functions normally performed by a judge.").

Defendants' remaining arguments are unavailing. Contrary to Defendants' characterization, Defendant's Motion to Dismiss Amended Complaint and Brief in Support, ECF No. 65 ("Defs.' Br.") at 6, Plaintiffs do not seek to enjoin judges' individual bail determinations. Rather, they challenge the administrative system under which those bail determinations were made: a system that does not provide for counsel or constitutionally adequate hearings. Defendants are also incorrect that Section 1983 "forbids relief against a judicial officer." Defs.' Br. at 6. Section 1983, like immunity doctrines generally, focuses on the act an official performs, not the office they occupy. Thus, the statute limits injunctive relief against "a judicial officer for an act or omission taken *in such officer's judicial capacity*." 42 U.S.C. § 1983 (emphasis added). This limitation does not apply to acts in an administrative capacity. Defendants' observation that "[o]nly a judge may enter [administrative orders]," Defs.' Br. at 5, is beside the point—what matters to this analysis is "the nature of the function performed, not the identity of the actor who performed it." *Forrester*, 484 U.S. at 229; *see also id.* at 230.

Finally, even if Judge Hesse's administrative order were judicial, rather than administrative, Section 1983 does not bar Plaintiffs' claims for declaratory relief. Defendants' briefing does not suggest otherwise.[4]

## B.    Legislative Immunity Does Not Apply

Equally misplaced is Defendants' claim that their actions are shielded by legislative immunity. Non-legislators like Judge Hesse share in this immunity only when they perform quintessentially legislative acts, i.e., "the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct." *Kamplain v. Curry Cty. Bd. of Com'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998) (cleaned up). This limitation is consistent with the U.S. Supreme Court's admonition that because of the "undeniable tension between official immunities and the ideal of the rule of law," immunity defenses should be cautiously applied. *Forrester*, 484 U.S. at 223–24. For example, *Supreme Court of Virginia v. Consumers Union of U.S., Inc.* involved the statewide Code of Professional Responsibility for attorneys promulgated by Virginia's Supreme Court. 446 U.S. 719, 731 (1980). Noting that Virginia had delegated "the State's entire legislative power with respect to regulating the Bar," the Court held that the Virginia Supreme Court acted as "the State's legislators for the purpose of issuing the Bar Code." *Id.* at 734. Likewise, in *Lewis v. New Mexico Department of Health*, the court found that the governor's budget requests were "an integral part of the legislative process." 275 F. Supp. 2d 1319, 1327 (D.N.M. 2003).

---

[4] Defendants also argue that "judges defending against § 1983 actions enjoy absolute immunity from damages liability," Defs.' Br. at 5, but Plaintiffs do not seek damages.

Such scenarios are far from the facts of this case. Defendants have stipulated that Judge Hesse's administrative order was an exercise of his authority under Rule 8 of the Oklahoma Rules on Administration of Courts. Joint Status Report at 2. That rule does not vest chief judges with "the State's entire legislative power" over court administration, but merely *allows* for administrative orders establishing local practices.[5] 20 O.S. Ch. 1 App'x 2 Rule 8. The legislature's decision to delegate latitude to chief judges does not make them "an integral part of the legislative process" any time they exercise that discretion. *Lewis*, 275 F. Supp. at 1327. In fact, chief judges' power under Rule 8 is *limited* by statewide rules of administration adopted by the Oklahoma Supreme Court. Rule 8. Judge Hesse thus cannot establish his burden to show that legislative immunity protects him from suit. *Kamplain*, 159 F.3d at 1251.

In the alternative, even if Judge Hesse acted in a legislative capacity when he *promulgated* his administrative order, he performs "more than a legislative role" with respect to its enforcement. *See Consumers Union*, 446 U.S. at 734–36 (holding that judges may be held liable "in their enforcement capacities" for enforcing judicially-created rules of general applicability). Judge Hesse exercises "supervisory control" over all personnel responsible for implementation of first court appearances under his administrative order, including bailiffs, court reporters, and Judge Strubhar herself. First

---

[5] Defendants' further citation to *Collins v. Daniels* is inapt for much the same reason. Like *Consumers Union*, *Collins* involved a state legislature's decision to vest its legislative power over an entire area of law (in that case, rules of criminal procedure) to the state's supreme court, resulting in that court having "legislative authority over the procedural aspects of bail." 916 F.3d 1302, 1318 & n.13 (10th Cir. 2019).

Amended Complaint, ECF No. 64 ("Am. Compl.") ¶¶ 12, 18; 20 O.S. Ch. 1 App'x 2 Rule 2(B). The "general supervision of the administration by the local officials of a challenged provision" is an act of enforcement. *Kitchen v. Herbert*, 755 F.3d 1193, 1204 (10th Cir. 2014) (cleaned up). Thus, Judges Hesse is a "proper defendant[] in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies [are]." *See Consumers Union*, 446 U.S. at 736*; see also LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir. 2005) ("When acting in its enforcement capacity, the Louisiana Supreme Court, and its members, are not immune from suits for declaratory or injunctive relief."); *Schell v. Gurich*, 409 F. Supp. 3d 1290, 1295 (W.D. Okla. 2019) ("[L]egislative immunity does not absolutely insulate the Defendant Justices from the declaratory and injunctive relief sought in this case, as they also act in an enforcement capacity.").

### C.     Sovereign Immunity Does Not Apply

As Defendants themselves note, the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908), established an exception to state sovereign immunity for suits "seek[ing] prospective equitable relief against a state official for ongoing violations of federal law." Defs.' Br. at 23. At the pleading stage under *Ex parte Young*, the Court merely conducts the "straightforward inquiry" of determining whether a complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up). "A state official is a proper defendant if he is responsible for the general supervision of the administration by the local officials of a challenged provision." *Kitchen*, 755 F.3d at 1204 (citation omitted).

The amended complaint satisfies this threshold. Plaintiffs allege facts demonstrating that Judge Hesse's bail system is an ongoing violation of class members' federal rights. Am. Compl. ¶¶ 14–50. Defendants are two state officials: Judge Hesse, who is responsible for promulgating and supervising administration of this unconstitutional system; and Judge Strubhar, who implements it. *Id.* ¶¶ 12–14, 16, 18–23. The class members also seek declaratory and injunctive relief that is entirely prospective, intended only to prevent future constitutional violations. Am. Compl. at 21–22.

## III.   *Younger* Abstention Does Not Apply

The Court has already noted that *Younger* abstention is inapplicable. *See* Transcript of Telephonic Motions to Dismiss, ECF No. 61 at 18. Plaintiffs do not seek to "thwart" any ongoing proceeding, *Elna Sefcovic, LLC v. TEP Rocky Mtn., LLC*, 953 F.3d 660, 671 (10th Cir. 2020), nor is their first court appearance "an adequate opportunity to raise federal claims," *Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1221 (10th Cir. 2018) (cleaned up). Plaintiffs refer the Court to their prior briefing on *Younger* abstention, ECF No. 42 at 22–25.

## IV.   Plaintiffs Have Alleged A *Bearden* Violation

### A.   Defendants' Bail System Triggers Heightened Scrutiny

The Supreme Court "has long been sensitive to the treatment of indigents in our criminal justice system." *Bearden v. Georgia*, 461 U.S. 660, 664 (1983) (collecting cases). The Court has repeatedly struck down even facially neutral statutes or practices as "de facto discrimination" when they result in wealth-based detention for people "totally unable to pay the demanded sum." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S.

1, 21–22 (1973) (hereinafter "*San Antonio ISD*") (citing *Tate v. Short*, 401 U.S. 395 (1971) (invalidating a facially neutral statute that authorized imprisonment for failure to pay fines); *Williams v. Illinois*, 399 U.S. 235 (1970) (same). *Bearden* similarly struck down a probation revocation order "sentencing petitioner to imprisonment simply because he could not pay the fine." 461. U.S. at 674.

Plaintiffs here, like the plaintiffs in *Williams*, *Tate*, and *Bearden*, are detained because they are "totally unable to pay the demanded sum." *San Antonio ISD*, 411 U.S. at 22. Contrary to Defendants' assertion, Defs.' Br. at 14–15, Plaintiffs do not claim that "poverty, standing alone" is a suspect class. *Harris v. McRae*, 448 U.S. 297, 323 (1980). It is Plaintiffs' *detention resulting from* poverty—the "absolute deprivation of a meaningful opportunity" for release—that constitutes "de facto discrimination." *San Antonio ISD*, 411 U.S. at 20–21. "Due process and equal protection principles converge in the Court's analysis in these cases," and "the issue cannot be resolved by resort to easy slogans or pigeonhole analysis," as Defendants' brief would have it. *Bearden*, 461 U.S. at 665–66. The Court must make a "careful inquiry" into Defendants' bail practices, including "such factors as the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose and the existence of alternative means of effectuating the purpose." *Bearden*, 461 U.S. at 666–67 (cleaned up); *accord ODonnell*, 892 F.3d at 162 (applying "heightened scrutiny" under *Bearden* and *San Antonio ISD* where bail was set without consideration of alternatives, resulting in "an absolute deprivation of their most basic liberty interests—freedom from incarceration"). *Cf. Walker v. Calhoun*, 901 F.3d 1245, 1260–61, 1265

(11th Cir. 2018) (rejecting rational basis review and applying "delicate balancing" of the "traditional due process rubric").[6]

Defendants' bail practices here fail heightened scrutiny for the same reasons as the practices in *Tate*, *Williams*, and *Bearden*: if the state determines that a payment is "appropriate and adequate" to meet the state's interests, "it may not thereafter imprison a person solely because he lacked the resources to pay it." *Bearden*, 461 U.S. at 667–68. Imprisonment for inability to pay is permissible "only if the [] court determines that alternatives to imprisonment are not adequate." *Id.* at 672. Judge Hesse's bail system lacks the procedural safeguards necessary to make this determination.

### B.    Defendants' Bail System Lacks the Requisite Procedural Safeguards

*Bearden* outlined specific procedures that courts must follow to impose wealth-based detention consistent with due process and equal protection. First, the court "must inquire into" the arrestee's ability to pay. *Id.* Where an arrestee is unable to pay, "the court must consider alternate measures . . . other than imprisonment." *Id.* Finally, courts may not issue a wealth-based detention order without "evidence and findings" that the arrestee is able to pay, or that alternatives to jail are inadequate. *Bearden*, 461 U.S. at 665. Detaining an arrestee without these procedures is functionally detaining him "simply because, through no fault of his own, he cannot pay" which is "contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.* at 672–73; *see also Walker*, 901 F.3d at 1258 ("[T]he incarceration of those who cannot meet a master bond

---

[6] This inquiry does not require intentional discrimination; disparate impact is sufficient. *See Williams*, 399 U.S. at 242.

schedule's requirements, without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements.") (cleaned up).

Judge Hesse's administrative order guides judges to issue cash bail orders, yet does not require, facilitate, or even mention compliance with these constitutionally-mandated procedural protections. Am. Compl. ¶¶ 14–15, 18, 20, 23. As a result, Judge Strubhar does not inquire into ability to pay, consider alternatives to cash bail, or issue any findings before mechanically issuing cash bail orders at first court appearance. Am. Compl. ¶¶ 15, 16, 20, 22–29.

Defendants repeatedly cite *Walker*, 901 F.3d at 1245, for the proposition that a bail schedule survives rational basis scrutiny. Defs.' Br. at 12, 21. Plaintiffs do not challenge the mere existence of a bail schedule, but rather its implementation in conflict with *Bearden*'s procedural requirements. Plaintiffs challenge the automatic imposition of secured cash bail, which violates *Bearden* irrespective of whether the amount comes from a bail schedule. *Walker* described itself as "quite factually distinct" for this reason: the plaintiffs in *Walker* received individualized consideration of alternatives within 48 hours of arrest, while the Plaintiffs here, and in *ODonnell*, did not. *Walker*, 901 F.3d at 1261 n.10. The *Walker* plaintiffs challenged the 48-hour period of detention *before* their individualized hearing—a period of detention that is permissible without a probable cause determination, which the Eleventh Circuit found to be dispositive of the *Bearden* claim and require only *Mathews* balancing. *Id.* at 1266. Here, Plaintiffs challenge the absence of *any* individualized consideration of alternatives to cash bail, resulting in periods of detention lasting weeks or more. Am. Compl. ¶¶ 15, 16, 17, 20, 22, 24–29.

Plaintiffs' *Bearden* claim is more similar to the claim the Fifth Circuit upheld in *ODonnell*. There, the county's system "lack[ed] individualized assessment" and mechanically applied the secured bail schedule without consideration of alternatives. 892 F.3d at 163. As in this case, bail determinations for indigent defendants were "marred by gross inefficiencies," including probable cause hearings that "often last seconds, and rarely more than a few minutes" at which "[a]rrestees are instructed not to speak, and are not offered any opportunity to submit evidence of relative ability to post bond at the scheduled amount." *Id.* at 153–54. In much the same way, Judge Strubhar makes no individualized assessment regarding ability to pay and simply applies Judge Hesse's bail schedule. Am. Compl. ¶ 15, 16, 20, 22, 23, 24–29. The result is the same: wealthy arrestees walk free while indigent arrestees are incarcerated solely because of their inability to pay.

## V.      Plaintiffs Have Alleged A Substantive and Procedural Due Process Violation

The amended complaint alleges that, under Judge Hesse's bail system, class members are jailed pretrial in violation of substantive due process. The Tenth Circuit applies a three-step "fundamental rights approach" to substantive due process claims challenging implementation of government policies[7]: first, determine if a fundamental

---

[7] This case concerns "concerted action of several [] employees, undertaken pursuant to broad governmental policies," which is "analyze[d] under the *Glucksberg* [fundamental rights] framework." *Abdi v. Wray*, 942 F.3d 1019, 1027–28 (10th Cir. 2019) (applying fundamental rights approach to placement on terrorist watch list). *Accord Maehr*, 5 F.4th at 1117 (citing *Abdi* and applying a fundamental rights approach to passport revocation).

right is at stake; second, determine if the right is infringed; and third, apply the correct level of scrutiny. *Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1117 (10th Cir. 2021).

### A.    Pretrial Liberty is a Fundamental Right

The right to pretrial liberty is "fundamental." *United States v. Salerno*, 481 U.S. 739, 750 (1987). "In *Salerno*, the Court recognized that a person who is detained pending trial has a fundamental liberty interest in freedom from restraint." *Phu Chan Hoang v. Comfort*, 282 F.3d 1247, 1257 (10th Cir. 2002), *vacated on other grounds sub nom. Weber v. Phu Chan Hoang*, 538 U.S. 1010 (2003). Subsequent Supreme Court decisions have reaffirmed *Salerno*'s recognition of the "'fundamental nature' of the individual's right to liberty." *Foucha v. Louisiana*, 504 U.S. 71, 80–83, 86 (1992) ("Freedom from physical restraint [is] a fundamental right."). Nothing about Plaintiffs' claim requires this Court to "break new ground." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

Defendants ignore this long-recognized fundamental right by mischaracterizing Plaintiffs as seeking a "fundamental right to affordable cash bail," which they insist must be brought under the Eighth Amendment's Excessive Bail Clause. Defs.' Br. at 9–11. Plaintiffs assert no such claim, and they do not have to. *Salerno* itself rejects Defendants' argument: the Supreme Court recognized that the fundamental right to pretrial liberty is distinct from an excessive bail claim. *Compare Salerno*, 481 U.S. at 749–52 (holding right to pretrial liberty is fundamental and applying strict scrutiny to detention under Bail Reform Act), *with id.* at 752–55 (analyzing excessive bail claim). Plaintiffs do not challenge their ultimate bail amounts as unaffordable or excessive; Plaintiffs challenge the method by which their bail amounts were determined. And "the *method* by which bail

13

was determined . . . is not covered by the Eighth Amendment." *In re Humphrey*, 482 P.3d 1008, 1018 n.4 (Cal. 2021) (cleaned up); *accord Walker*, 901 F.3d at 1259 ("Walker's claim . . . challenges not the amount and conditions of bail *per se*, but the process by which those terms are set . . . ."); *ODonnell*, 892 F.3d at 157 (distinguishing between excessive bail and due process claims).

Defendants also incorrectly invoke *Bell v. Wolfish*, 441 U.S. 520 (1979), a case challenging pretrial detainees' jail *conditions*, like double-bunking, as punitive. *Bell* is inapposite: Plaintiffs do not challenge jail policies or otherwise claim that their detention is punitive. Their claims are not governed by *Bell* or *Gaylor v. Does*, 105 F.3d 572 (10th Cir. 1997), a pro se case challenging an inefficient jail policy as punitive. *Id.* at 578 (holding the jail's "policy not to inform detainees of their bail status until they asked" would be punitive).[8] *Gaylor* applies the *Bell* standard from a section of *Salerno* discussing whether pretrial detention is "punishment"—a claim Plaintiffs do not bring. *Salerno,* 481 U.S. at 746. Plaintiffs challenge the initial decision whether they should be detained *at all*. *Id.* at 750–52. *Bell* was "not concerned with the initial decision to detain an accused and the curtailment of liberty that such a decision necessarily entails," and so it is inapplicable. 441 U.S. at 533–34.

**B.      Plaintiffs' Right to Pretrial Liberty Is Infringed by Their Detention**

The amended complaint alleges that each of the putative class members is detained

---

[8] The same distinction applies to *Dawson v. Bd. of Cty. Comm'rs*, 732 F. App'x 624, 632 (10th Cir. 2018) (assessing "monitoring policy" prohibiting fitting of GPS device over the weekend), which Defendants cite in the equal protection section of their brief.

pretrial under Judge Hesse's bail system. *E.g.*, Am. Compl. ¶¶ 1–3, 14–19. Detention is a complete deprivation of the fundamental right to pretrial liberty.

### C.  Plaintiffs' Detention Fails Strict Scrutiny

Under *Salerno*, a governmental action cannot infringe on the fundamental right to pretrial liberty unless it meets strict scrutiny. *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citing *Salerno*: due process "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to a compelling state interest"); *Hoang*, 282 F.3d at 1259 (interpreting *Salerno*: "Our analysis of this issue entails a determination of whether the government's interest is compelling and whether the [action] is narrowly tailored"). Thus, the governmental action "must be narrowly tailored to serve a compelling government interest. In other words, we apply strict scrutiny." *Maehr*, 5 F.4th at 1117 (cleaned up).

Plaintiffs' allegations demonstrate that Judge Hesse's bail system fails strict scrutiny. Pretrial detention survives strict scrutiny only if it is necessary to serve the government's compelling interest in preventing flight or danger to the community. Specifically, the Supreme Court has "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001) (citing *Salerno*); *see also Foucha*, 504 U.S. at 81 (striking down detention scheme: "[u]nlike the sharply focused scheme at issue in *Salerno*, the [] scheme of confinement is not carefully limited"). Judge Hesse's bail system is entirely *un*limited as to who may be detained. There is no method for focusing the detention scheme on particularly dangerous

individuals, or those posing a particularly high risk of flight. Am. Compl. ¶¶ 15–17, 21–22. First court appearances do not investigate dangerousness or flight risk in any way.

In addition, Judge Hesse's bail system provides no standard for determining whether detention is necessary in any individual case. Judge Hesse does not require—or even invite—findings as to why a person's fundamental right to liberty is outweighed by the government's compelling necessity. *Id.* ¶¶ 15, 20–21. Judge Hesse has not prescribed an evidentiary standard for detention, nor any procedure for conducting a hearing. *Id.* As a result, Judge Strubhar asks no questions, hears no evidence, and makes no findings regarding dangerousness or flight risk during these proceedings. *Id.* ¶¶ 16, 22. Judge Hesse has taken no action to remedy these errors and ensure Judge Strubhar follows constitutional standards. *Id.* ¶¶ 15, 18, 23. As was true with the unconstitutional scheme in *Foucha*, at no point is a class member "entitled to an adversary hearing at which the State must prove by clear and convincing evidence that he is demonstrably dangerous to the community," or that he poses an unmanageable risk of flight. 504 U.S. at 81. Class members can be detained based solely on a "description of [their] behavior" constituting *any* criminal offense, in the absence of any positive testimony that they are a flight risk or a danger necessitating detention. *Id.* at 82. Class members receive no procedural protections whatsoever: "The Constitution demands greater procedural protection even for property." *Zadvydas*, 533 U.S. at 692.

Pretrial detention under Judge Hesse's bail system is neither limited to individuals posing a "special[]" risk, nor subject to "strong procedural protections." *Id.* at 690–91 (citing *Salerno*). Without these means of narrowly tailoring detention to cases of true

16

necessity, Judge Hesse's bail system is an impermissible "scattershot attempt to incapacitate those who are merely suspected of . . . crimes." *Salerno*, 481 U.S. at 750. Pretrial detention of this nature fails any level of scrutiny, including strict scrutiny.

### D.      Plaintiffs' Detention Was Not Implemented in a Fair Manner

In addition to violating substantive due process, Plaintiffs' detention violates procedural due process because it was not "implemented in a fair manner." *Salerno*, 481 U.S. at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). For the reasons described above, Plaintiffs have alleged the three elements of a procedural due process violation: "(1) the deprivation of (2) a constitutionally cognizable liberty . . . interest, (3) without adequate due process procedures." *Abdi*, 942 F.3d at 1031. First court appearances lack each aspect of the procedural framework that prevented a procedural due process violation in *Salerno*: arrestees are not represented by counsel, and they may not "testify in their own behalf, present information by proffer or otherwise, and cross-examine witnesses who appear at the hearing." *Salerno*, 481 U.S. at 751. Judge Strubhar's bail amounts are not "guided by statutorily enumerated factors," and the government need not appear at first court appearance to prove anything, let alone "prove its case by clear and convincing evidence." *Id.* at 751–52. Judge Strubhar does not make "written findings of fact and a written statement of reasons for a decision to detain," nor does she determine whether the bail amounts she sets will detain the arrestee at all. *Id.* at 752. There is certainly no "immediate appellate review of the detention decision"; instead, arrestees are detained under Judge Strubhar's cash bail orders for weeks or more. *Id.* Am. Compl. ¶¶ 16, 21–22, 35–36. First court appearance includes *no* "procedures by which a judicial

officer evaluates the likelihood of future dangerousness," or of flight, or the necessity of detention; there is no system in place "designed to further the accuracy of [this] determination." *Salerno*, 481 U.S. at 751. First court appearance does not even afford arrestees notice and an opportunity to be heard, which is the "root requirement" of the Due Process Clause. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985).

Defendants do not attempt to address any of these constitutional deficiencies. Instead, Defendants repeat their argument that there is no right to an affordable bail amount, and argue that there is "no procedural due process interest in a state-law procedure." Defs.' Br. at 14. Plaintiffs do not challenge specific bail amounts or seek to vindicate a state-law procedure. Plaintiffs allege that they are deprived of their fundamental right to pretrial liberty in an unfair "manner," *Salerno*, 481 U.S. at 746, without "adequate due process procedures," *Abdi*, 942 F.3d at 1031.

## VI. Plaintiffs Have Alleged A Sixth Amendment Right to Counsel Violation

Bail determinations at first court appearance can substantially prejudice the outcome of a criminal case. The Sixth Amendment entitles a defendant to counsel at every "critical stage" of a criminal prosecution, which is "any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result." *United States v. Bergman*, 599 F.3d 1142, 1147 (10th Cir. 2010).[9] It is straightforward

---

[9] Defendants do not dispute that the right to counsel attaches at the outset of first court appearance. *See Rothgery v. Gillespie Cty.*, 554 U.S. 191, 213 (2008) ("[A] criminal defendant's initial appearance before a judicial officer . . . trigger[s] attachment of the Sixth Amendment right to counsel.").

that first court appearance is a critical stage. Defendants' arguments fail to engage with Plaintiffs' specific allegations demonstrating this point.

### A.     First Court Appearance Risks Substantial Prejudice

The bail determination at first court appearance risks substantial prejudice through the coercive effect of pretrial detention. The "substantial prejudice" standard implicates "pretrial proceedings where the results might well settle the accused's fate." *United States v. Wade*, 388 U.S. 218, 224, 227 (1967). Substantial prejudice need not relate to trial specifically, but concerns the fairness of "the whole course of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). Thus, the right to counsel also protects the fairness of plea bargaining, which "is almost always the critical point for a defendant." *Missouri v. Frye*, 566 U.S. 134, 143–44 (2012) (observing that 94% of state criminal convictions are the result of guilty pleas); *Williams v. Jones*, 571 F.3d 1086, 1091–92 (10th Cir. 2009) ("Surely, the plea process is part of the defense.").

The amended complaint specifies how bail determinations at first court appearance affect the fairness of plea bargaining and trials in Canadian County. Bail amounts set at first court appearance determine whether a person will be detained for weeks before their next hearing. Am. Compl. ¶ 35. This period of pretrial detention is long enough that many people effectively serve their sentences before facing the prosecutor at the bargaining table. *Id.* ¶ 38. In fact, most offenses charged in Canadian County resolve with a plea deal that does not require incarceration *at all*. *Id.* Prosecutors in Canadian County use this leverage to coerce people into exchanging guilty pleas for their immediate freedom, rather than enduring more pretrial detention and risking a less favorable plea

offer. *Id.* ¶ 40.[10]  The coercive effect of pretrial detention also operates on people facing prison time, forcing them to choose a transfer to state prison over enduring the living conditions in the Canadian County Jail. *Id.* ¶ 39. In addition to the length of pretrial detention, Canadian County prosecutors also leverage detainees' inability to demonstrate good-faith intentions to avoid recidivism, *id.* ¶ 42, or to facilitate investigation and preparation of their case, *id.* ¶ 41, to extract harsher plea deals from people who are detained at first court appearance. Pretrial detention in Canadian County undermines the detainee's ability to consult with their attorney, search for evidence, or help find and meet witnesses who are otherwise reluctant to speak with counsel. *Id.* ¶ 41. These limitations prejudice the fairness of trial preparation, and as a consequence, many detainees simply plead to even less favorable plea deals. *Id.* ¶ 41. These realities of Canadian County's trial and plea bargaining system mean the bail determination at first court appearance "might well settle the accused's fate," *Wade*, 388 U.S. at 224, precluding a more favorable outcome "by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147.

Defendants do nothing to engage with these allegations of substantial prejudice. Defendants argue that Plaintiffs must show prejudice in their individual criminal cases,

---

[10]  Defendants claim that allegations in this paragraph and others concern "national trends," Defs.' Br. at 15, 19, but paragraph 37 is the only paragraph in the Right to Counsel section describing studies in other jurisdictions. The remaining paragraphs in the Right to Counsel section are specific to Canadian County. In any case, statistics are powerful evidence of what would have happened to a particular class member if she were not detained. In the aggregate, as little as three days of pretrial detention increases the relative rate of guilty pleas and lengthens sentences to incarceration. Am. Compl. ¶ 37.

but the critical stage analysis looks to the nature of the proceeding in general. The correct

rule, as stated in *Wade*, depends on the overarching *risk* of prejudice that "inheres in the

particular confrontation." 388 U.S. at 227. *Accord Bergman*, 599 F.3d at 1147 (asking

whether substantial prejudice "could" result). Courts *presume* prejudice resulting from

complete denial of counsel at a critical stage. *United States v. Cronic*, 466 U.S. 648, 659

(1984); *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961) ("[T]he degree of prejudice can

never be known."); *United States v. Collins*, 430 F.3d 1260, 1264 (10th Cir. 2005)

(holding defendant deprived of counsel "need not show prejudice"). Defendants suggest

that Plaintiffs must show more by quoting *Bell v. Cone*, 535 U.S. 685, 696 (2002), but

their quotation is nothing more than a description of critical stage precedents rephrased in

past tense. The full context of the quotation reinforces that Plaintiffs need *not* prove

prejudice to their individual cases to succeed in their critical stage argument:

> A trial would be presumptively unfair, we said, where the accused is denied
> the presence of counsel at 'a critical stage,' a phrase we used in *Hamilton v.*
> *Alabama* and *White v. Maryland* to denote a step of a criminal proceeding,
> such as arraignment, that held significant consequences for the accused.
>     In a footnote, we also cited other cases besides *Hamilton v. Alabama*
> and *White v. Maryland* where we found a Sixth Amendment error without
> requiring a showing of prejudice. Each involved criminal defendants who
> had actually or constructively been denied counsel by government action.

*Id.* at 695–96 & n.3. Denial of counsel at a critical stage—a proceeding where

substantial prejudice *could* result—is a Sixth Amendment violation that does not

require an individualized showing of prejudice.

**B.      Counsel's Assistance at First Court Appearance is Necessary to Avoid Substantial Prejudice**

Defendants do not contest what Plaintiffs' allegations make plain: counsel's assistance is necessary to avoid substantial prejudice at first court appearance. *See Wade*, 388 U.S. at 227–28 (considering the "ability of counsel to help avoid that prejudice"). Counsel's expertise is necessary to understand the legal elements of bail determinations, to make competent arguments about the nature and strength of the allegations against the arrestee, and to propose terms of release. Am. Compl. ¶¶ 44–45, 48. *Accord Coleman v. Alabama*, 399 U.S. at 1, 9 (1970). Counsel is necessary to act as an experienced representative who can freely contact witnesses to gather evidence—an employer who can verify income, a family member who can promise transportation to court—and proffer that evidence backed by their ethical obligation as an officer of the court. Am. Compl. ¶¶ 46–47. Counsel is also necessary to observe proceedings at first court appearance (which is otherwise unrecorded), protect the arrestee against overreach, and reconstruct any unfairness in subsequent proceedings challenging the bail determination. Am. Compl. ¶¶ 49–50. *Accord Wade*, 388 U.S. at 230–32. Judge Hesse's system of appointing counsel for the next hearing, weeks after first court appearance, cannot serve as a substitute for counsel at first court appearance: by the time counsel is appointed, the client has already been detained for weeks, and the prejudice to the client's negotiating position cannot be undone. *Cf. United States v. Ash*, 413 U.S. 300, 316 (1973) (asking whether subsequent appointment of counsel can remedy the prejudice).

### C.     Defendants' Two Cases Are Nonbinding and Abrogated

Defendants cite two cases discussing whether bail hearings are a critical stage of prosecution. Defs.' Br. at 17. Both are nonbinding and abrogated. The first, *United States v. Hooker*, 418 F. Supp. 476 (M.D. Pa. 1976), is an out-of-circuit district court opinion affirmed in an unsigned, unpublished order. The case has been abrogated, most notably by the Third Circuit's holding that Pennsylvania's preliminary hearings are a critical stage of prosecution in part because they "protect the accused's right against an unlawful . . . detention." *Ditch v. Grace*, 479 F.3d 249, 253 (3d Cir. 2007).

The second, *Fenner v. State*, 846 A.2d 1020 (Md. 2004), is a Maryland state court decision concerning bail *review* hearings that has also been called into question. The same court held eight years later that defendants have a right to counsel under state law, for reasons that apply with equal force to this case: "whenever a Commissioner determines to set bail, the defendant stands a good chance of losing his or her liberty . . . . [T]he likelihood that the Commissioner will give full and fair consideration to all facts relevant to the bail determination can only be enhanced by the presence of counsel." *DeWolfe v. Richmond*, 76 A.3d 962, 977 (Md. 2012).

## VII.   Plaintiffs Have Alleged Supervisory Liability Under Section 1983

Plaintiffs' allegations demonstrate that Judge Hesse is liable for the foregoing constitutional violations as a supervisor: "(1) the defendant[-supervisor] promulgated . . . or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185,

1199 (10th Cir. 2010). As for the first and third factors, it is uncontested that Judge Hesse promulgated and possessed responsibility for continued operation of his administrative order, and there is no state of mind required to demonstrate any of the underlying constitutional violations Plaintiffs allege.[11] *Id.* at 1204 (requiring "whatever state of mind is required to state the underlying constitutional violation") (cleaned up).

As to the second factor, "the requisite causal connection is satisfied" because Judge Hesse "knew or reasonably should have known" that the continued operation of his administrative order would "cause [Judge Strubhar] to deprive Plaintiffs of their constitutional rights." *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). Contrary to Defendants' claim that there is "simply no way" for Judge Hesse to "know that [constitutional] 'requirements' needed to be outlined," Defs.' Br. at 20, it is the "natural consequence" of his administrative order that Judge Strubhar would issue bail orders without providing counsel, inquiring into ability to pay, giving arrestees notice of the issues at stake, or issuing individualized findings, given that Judge Hesse did not organize the administrative logistics for doing so. *Martinez*, 697 F.3d at 1255; *see also Feltz v. Bd. of Cty. Comm'rs*, No. 4:18-cv-298, at 23 (N.D. Okla. Sept. 29, 2021) (finding causal connection between judge's administrative order on bail and wealth-based detention). In addition, the Amended Complaint alleges many specific reasons why Judge Hesse knows or should know how Judge Strubhar conducts first court appearances: in

---

[11] Even if Plaintiffs were required to plead deliberate indifference, which Defendants have not argued, Plaintiffs did so. Judge Hesse "disregarded a known or obvious consequence of his action." *Bd. of Cty. Cmm'rs v. Brown*, 520 U.S. 397, 410 (1997).

addition to his failure to provide the necessary infrastructure, none of Judge Strubhar's bail orders contain constitutionally required findings, the same violations are repeated each time first court appearance is conducted, and the violations are widespread: over 200 people are currently jailed under unconstitutional orders issued at first appearance. Am. Compl. ¶¶ 18, 23, 30, 36. This "underlying unconstitutional misconduct was so widespread or flagrant that in the proper exercise of [Judge Hesse's] official responsibilities, [he] should have known of it."). *Jojola v. Chavez*, 55 F.3d 488, 491 (10th Cir. 1995); *accord Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010) (holding that a "pattern of tortious conduct" is sufficient). Plaintiffs' allegations permit a reasonable inference that Judge Hesse is liable as a supervisor: it is his "conduct that set the unconstitutional wheels in motion." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014).

## VIII.   Declaratory Relief is Appropriate Under Section 1983

Declaratory relief is appropriate to remedy the ongoing and irreparable deprivation of class members' constitutional rights. Defendants' only argument to the contrary is that they cannot alter state law, but state law does not prohibit judges from allowing arrestees to apply for counsel prior to first court appearance. Defendants have not identified any statute or rule preventing them from appointing counsel for first court appearance or providing any other relief Plaintiffs seek.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied. In the alternative, Plaintiffs seek leave to amend the complaint.

Respectfully Submitted,

/s/ Trisha Trigilio
Trisha Trigilio*
Texas State Bar Number: 24075179
Brandon J. Buskey*
Alabama Bar Number: ASB2753-A50B
American Civil Liberties Union
 Foundation, Criminal Law Reform
 Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
trishat@aclu.org
bbuskey@aclu.org

/s/ Megan Lambert
Megan Lambert
Oklahoma Bar Number: 33216
Ryan Kiesel
Oklahoma Bar Number: 21254
Michael Redman
Oklahoma Bar Number: 13340
American Civil Liberties Union of
 Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org
rkiesel@acluok.org
mredman@acluok.org

/s/ Blake Johnson
Blake Johnson
Oklahoma Bar Number: 32433
Tyler Box
Oklahoma Bar Number: 31817
Weston Watts
Oklahoma Bar Number: 33299
Justin Williams
Oklahoma Bar Number: 32539
Clayburn Curtis
Oklahoma Bar Number: 30538

/s/ Aaron Lewis
Aaron Lewis*
California Bar Number: 284244
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800
alewis@cov.com

Marta Cook*
District of Columbia Bar Number:
1045613
Laura Beth Cohen*
Michigan Bar Number: P83111
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4656
(202) 662-6000
mcook@cov.com
lcohen@cov.com

/s/Zoe Brennan-Krohn*
Zoe Brennan-Krohn*
California Bar Number: 324912
American Civil Liberties Union
 Foundation, Disability Rights Program
39 Drumm Street
San Francisco, CA 94111
(415) 343-0762
zbrennan-krohn@aclu.org

Overman Legal Group, PLLC
809 NW 36th St.
Oklahoma City, OK 73118
(405) 605-6718
blakejohnson@overmanlegal.com
tylerbox@overmanlegal.com
westonwatts@overmanlegal.com
justinwilliams@overmanlegal.com
claycurtis@overmanlegal.com

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of January 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to counsel of record.


/s/ Trisha Trigilio

Trisha Trigilio