## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

MISTY WHITE, et al.
          Plaintiffs,

v.

HON. PAUL HESSE, in his official
capacity as Chief Judge of the 26th
Judicial District, et al.,
          Defendants.

**Case No: CIV-19-1145-JD**
(Class Action)

## DEFENDANTS' REPLY TO RESPONSE TO
## MOTION TO DISMISS AND BRIEF IN SUPPORT

For their reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss [Doc. No. 68], Defendants Hesse and Strubhar state the following.

### I.   Due Process

#### A. Because Plaintiffs disclaim any reliance on the Eighth Amendment, the controlling Bill of Rights provision in this case, their due process claims must be dismissed.

In *Albright v. Oliver*, 510 U.S. 266 (1994) (plurality op.), the Supreme Court affirmed the dismissal of a substantive due process claim because the plaintiff elected to pursue his claim under the Due Process Clause rather than the Bill of Rights Amendment providing redress for type of constitutional injury he suffered. For the same reason, Plaintiffs' due process claims must be dismissed.[1]

Plaintiffs attempt to escape Mr. Albright's fate by framing their injury as the deprivation

---

[1] In the Tenth Circuit, *Albright* extends to procedural due process claims. *Becker v. Kroll*, 494 F.3d 904, 920 (10th Cir. 2007).

1

Case 5:19-cv-01145-JD   Document 73   Filed 01/27/22   Page 2 of 11


of the fundamental right to pretrial liberty caused not by "unaffordable or excessive" bail (an Eighth Amendment concern), but from "the method by which their bail amounts were determined," (an allegedly Fourteenth Amendment concern).[2] [Doc. 68 at p. 13].

This type of distinction was not effective in *Albright* and is not effective here. In *Albright*, the plaintiff attempted to plead around the Fourth Amendment by framing his claim as infringement of a liberty interest to freedom from the initiation of a baseless prosecution. By doing so, he disclaimed any reliance on the Fourth Amendment seizure caused by the baseless prosecution. The Court was unpersuaded. As Justice Souter explained, the proposed distinction failed because the plaintiff could not point to "any substantial injury that is attributable to the former event [initiation of baseless prosecution], but not the latter [the seizure that followed]." *Albright*, 510 U.S. at 289 (Souter, J., concurring). Here, just as in *Albright*, Plaintiffs cannot point to any substantial injury that is attributable to "the method by which their bail amounts were determined," but not to the actual bail amount. Plaintiffs are only injured because they are unable to pay the actual bail amount. Or, framed more broadly, they are only injured because they cannot meet the conditions for pretrial release. The method by which conditions for pretrial release are determined never causes an injury unless (under Plaintiffs' theory) it happens to lead to release conditions that cannot be met, i.e., "unaffordable bail." But altering the method by which conditions for pretrial release are determined in the ways Plaintiffs seek (advance written notice of factors to be considered,

---

[2] It should be noted that Plaintiffs frame the claims in the Amended Complaint in terms like "unaffordable cash bail", "inability to pay", and "unable to pay" nearly two dozen times.

representation by counsel, written findings, public access, etc.) would not necessarily have prevented Plaintiff's loss of liberty. This is true whether the method for setting release conditions is a preset bail schedule or an initial appearance. Thus, Plaintiffs' injury is not caused by the method of determining the conditions of release, but by the conditions of release themselves. Since conditions of release are governed by the Eighth Amendment, it is the Eighth Amendment that governs the analysis of Plaintiff's claims, not the Fourteenth.

Plaintiffs' issue-framing approach to avoiding Eighth Amendment also suffers a more fundamental flaw. In the criminal justice arena, when a Bill of Rights provision supplies a right, it also governs the process protecting that right. For example, the Fourth Amendment provides that a seizure may not be "unreasonable." The procedures to protect that right are found in the Fourth Amendment, not the Fourteenth. *Gerstein v. Pugh*, 420 U.S. 103 (1975). Since the Fourth Amendment is the source of the procedures necessary to ensure seizures are not "unreasonable," Plaintiffs' insistence that the Eighth Amendment is the not the source of the procedures necessary to ensure conditions of pretrial release are not "excessive," is unfounded and unpersuasive.

Finally, Plaintiffs argue that they may pursue their due process claim separately from the Eighth Amendment because *Salerno* separately analyzed the constitutionality of the Bail Reform Act under both the Due Process Clause and the Eighth Amendment. [Doc. 68 at 13]. But *Salerno* can hardly be read as holding *both* provisions are viable since (under the facts presented) neither were. Furthermore, Salerno was not detained because his bail was "excessive," but because he had not been granted bail at all. Even if *Salerno* could be interpreted

as holding that a plaintiff may opt between an Eighth Amendment challenge to excessive bail and a due process challenge to excessive bail, *Salerno* was decided prior to the Supreme Court's decision in *Graham*, which held that when the Bill of Rights provides redress for the type of constitutional injury suffered, there is no separate due process claim. Thus, *Graham* is binding on this Court as the Supreme Court's most recent explication of the law governing the issue.

### B.  Under the applicable due process standard, the Constitution does not require Plaintiffs' proposed procedures.

In any event, even assuming the Fourteenth Amendment governs the procedural issue, Plaintiffs' insistence that the procedures they demand for setting bail must all be used at the initial appearance is unfounded. Under the appropriate standard, a state criminal procedure will run afoul of the Due Process Clause only if it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Medina v. California*, 505 U.S. 437, 445 (1992). The process Plaintiffs demand for initial appearances are not so rooted. Defendants are unaware of any historical commentaries or other sources showing that "our common-law heritage" required initial appearances in criminal cases to include full-scale bail hearings with all the procedural machinery Plaintiffs seek to impose. *Id.* at 446. Nor have Plaintiffs pointed to any such historical requirements. As such, Plaintiffs have failed to meet their "burden of demonstrating such rights are fundamental." *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1118 (10th Cir. 2021) (cleaned up).

Furthermore, Plaintiffs ask this Court to judge the sufficiency of procedures in Canadian County by critiquing one small sliver of its criminal process, i.e., the *initial appearance.* (The Amended Complaint contains no criticism of any other aspect of Canadian County

criminal procedure.) By taking this approach, Plaintiffs ignore the full panoply of procedural protections available to criminal defendants in Canadian County. But in determining the process that is due at a particular stage of a criminal proceeding, all the procedural protections available must be "viewed as a whole." *Gerstein*, 420 U.S. at 123. Procedures such as judicial probable cause determinations, appointment of counsel, bail reduction motions, habeas corpus writs, speedy trial rights, etc., must all be considered in determining whether Plaintiffs have been afforded sufficient process. Just like the judicial probable cause determination required in *Gerstein*, the initial appearance and bail setting in Canadian County criminal cases are "only the first stage of an elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct. The relatively simple civil procedures (e.g., prior interview with school principal before suspension) presented in [civil] cases . . . are inapposite and irrelevant in the wholly different context of the criminal justice system." *Id.* at 125, n. 27.

## II.   Plaintiffs have failed to state a *Bearden* claim.

Plaintiffs have failed to state an equal protection or due process claim under *Bearden v. Georgia*, 461 U.S. 660 (1983); *Tate v. Short*, 401 U.S. 395 (1971); or *Williams v. Illinois*, 399 U.S. 235 (1970). *Bearden* stands for the proposition that it is "fundamentally unfair or arbitrary" to revoke a probationer's probation simply because he is unable to pay a fine. *Lemieux v. Kerby*, 931 F.2d 1391, 1393 n.4 (10th Cir. 1991). *Tate* and *Williams* stand for the proposition that a convict may not be sentenced to incarceration simply because he is unable to pay a fine or court costs. Stated more generally, each of these cases stands for the proposition that the State

may not *punish* someone for doing something they are incapable of doing.

But Defendants in this case have never argued that the State's interest in pretrial detention is "punishment."[3] A pretrial detention and bail system is not "imposed for the purpose of punishment." *Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 732 F. App'x 624, 632 (10th Cir. 2018) (unpublished). The State interest here is not punishment, but an efficient pretrial detention and bail system. Thus, it is judged on the rational basis standard, not some form of heightened scrutiny. *Id.*; *Gaylor v. Does*, 105 F.3d 572, 576 (10th Cir. 1997) (unless a policy is "expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on whether an alternative purpose to which the restriction may rationally be connected is assignable for it.") (cleaned up).

Plaintiffs assert that heightened scrutiny should be applied to pretrial detention and that *Dawson* and *Gaylor* are distinguishable because they were "jail conditions" cases. [Doc. 68 at 14]. This is simply not true. Neither *Dawson* nor *Gaylor* were complaining about the *conditions* of the jail. They were complaining about their *detention* in the jail. Plaintiffs also assert that *Dawson* and *Gaylor* are distinguishable from their situation because they are challenging "the initial decision to detain them at all."[4] [Doc. 68 at 14]. But this is a distinction without a

---

[3] Punishment would clearly be an impermissible state interest for purposes of pretrial detention. *Cf. U.S. v. Salerno*, 481 U.S. 739, 746 (1987) (rejecting Plaintiff's impermissible-punishment substantive due process claim because "[t]he Government [] has never argued that pretrial detention could be upheld if it were 'punishment.'").

[4] It is not entirely clear what Plaintiffs mean by "the initial decision whether they should be detained *at all*." Initial detention decisions are made in accordance with the Fourth Amendment under the procedures outlined in *Gerstein v. Pugh*, 420 U.S. 103 (1975). The operative complaint is silent on the Plaintiffs' *Gerstein* determinations. Thus, there is no reason

difference. In *Schall v. Martin*, 467 U.S. 253 (1984), Plaintiffs challenged the decision to detain them prior to trial based on the serious risk they would engage in criminal conduct if not detained. There, the Supreme Court applied the rational basis test to their pretrial detention, holding that absent a showing of an "express intent to punish," pretrial detention is judged under the rational basis standard. *Id.* at 269. Thus, pretrial detention is not a fundamental right. *United States v. Deters*, 143 F.3d 577, 583 (10th Cir. 1998) (*Salerno* "did not appear to apply the narrowly-tailored-to-serve-a-compelling government-interest test that traditionally governs cases involving fundamental rights."); *Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 732 F. App'x 624, 638 (10th Cir. 2018) (same).[5]

Finally, Plaintiff's reliance on *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278 (1973), is puzzling since *Rodriguez* is frequently cited as the case "which served as the foundation for the Court's denial of suspect class status to the poor." Bertrall L. Ross II & Su

---

to assume there were substantive or procedural errors in the initial detention determination. Unlawful pretrial detention claims are always judged under the Fourth Amendment, even beyond the start of legal process. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017). So, to the extent Plaintiffs are asserting constitutional violations relating to their pretrial detention other than excessive bail, their claim is governed by the Fourth Amendment—under which they have made no claim.

[5] There is dicta in *Hoang v. Comfort*, 282 F.3d 1247, 1257 (10th Cir. 2002) indicating *Salerno* recognized a fundamental liberty interest in freedom from restraint. But *Hoang* was vacated *sub nom. Weber v. Phu Chan Hoang*, 538 U.S. 1010 (2003), and *abrogated by Demore v. Kim*, 538 U.S. 510 (2003). In addition, *Hoang* it is at odds with *Deters*, a prior Tenth Circuit panel opinion. A panel cannot overrule a prior panel. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993). Accordingly, *Hoang* has no precedential value. *See also, Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.o*, 732 F. App'x 624, 638 (10th Cir. 2018) (declining to follow *Hoang* and noting that its finding that *Salerno* delineated a fundamental right was "dicta.").

Li, *Measuring Political Power: Suspect Class Determinations and the Poor*, 104 Cal. L. Rev. 323, 342 (2016) (cleaned up); *see also*, *Lewis v. Casey*, 518 U.S. 343, 373–374 (1996) (Thomas, J., concurring) (describing *Rodriguez* as the case where "[w]e first cast doubt on the proposition that a facially neutral law violates the Equal Protection Clause solely because it has a disparate impact on the poor.").

To understand why *Rodriguez* is remembered in this way, some background is necessary. For a short time, starting in 1956, the Supreme Court issued opinions holding that classifications based on poverty receive the same scrutiny as classifications based on race, religion, or color. *Griffin v. Illinois*, 351 U.S. 12, 17 (1956) ("a State can no more discriminate on account of poverty than on account of religion, race, or color."). Not only could intentionally discriminatory policies be struck down as unconstitutional, but facially neutral ones that had only a disparate impact on a suspect class. *E.g., id.* (charging fee for criminal trial transcript due to disparate impact on the poor); *Douglas v. People of State of Cal.*, 372 U.S. 353 (1963) (failure to provide counsel for appeal from criminal conviction).

This all changed in the 1970s. By 1977, the Court was ready to deny that "financial need alone identifies a suspect class." *Maher v. Roe*, 432 U.S. 464, 471 (1977). By 1980, the Court could definitively state that "poverty, standing alone, is not a suspect classification." *Harris v. McRae*, 448 U.S. 297, 323 (1980). And, as for striking facially neutral policies based on disparate impact, the Court ended this practice in 1976 with *Washington v. Davis*, 426 U.S. 229, 242 (1976). There, the Court flatly rejected the concept "that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal

Protection Clause simply because it may affect a greater proportion of one race than of another." *Id.*

Plaintiffs seize on a single line from *Rodriguez* and claim that they are entitled to relief because "they sustained an absolute deprivation" of their right to freedom from pretrial detention. *Rodriguez*, 411 U.S. at 20, 93 S. Ct. 1278, 1290. But this is not the case. There is nothing absolute about Plaintiffs' pretrial detention. If they are unhappy with the amount of their bail, they can file a motion to reduce it. If they are unsatisfied at that point, they can seek a writ in the Court of Criminal Appeals. *See, e.g., Clark v. Hall*, 2002 OK CR 29, 53 P.3d 416.

### III.   Plaintiffs' supervisory liability claims against Judge Hesse fail.

Plaintiffs do not allege sufficient facts to show a nexus between Chief Judge Hesse's purported "policy" embodied in the bail schedule which is a standing order of release and the judicial decisions made by Judge Strubhar in Plaintiffs' individual cases. First, the charges against Plaintiff are not in the Amended Complaint. Thus, there is no way to tie the amount set to the bond schedule or even to find out if the charge is on the bond schedule. Second, Plaintiffs do not address the legal independence Judge Strubhar has from the Chief Judge when making decisions like those at issue here. The only "policy" Chief Judge Hesse could have "implemented" that allegedly dictates the use of secured bail is the bail schedule. But alleging causation based on a bail schedule is insufficient even to support standing. *See Daves v. Dallas Cty., Texas*, 22 F.4th 522 (5th Cir. 2022).

Finally, Plaintiffs' assertion that supervisory liability requires no culpable state of mind in relation to the creation of a bail schedule is unsupported by any authority.

## IV.     Promulgating a bail schedule is a judicial function.

The act of creating guidance for setting bail is "inextricably linked" to the subsequent setting of bail and is a judicial act. *Daves v. Dallas Cty., Texas*, 22 F.4th 522 (5th Cir. 2022). Thus, Judge Hesse is immune from any claims for injunctive relief.

## V.     An initial appearance is not a critical stage for Sixth Amendment purposes.

Plaintiffs assert that *Fenner v. State*, 846 A.2d 1020 (Md. 2004) has been abrogated by *DeWolfe v. Richmond*, 76 A.3d 962 (Md. 2012). It has not. *DeWolfe* was decided under the Maryland Constitution. The holding of *Fenner*, interpreting the Sixth Amendment, remains intact. Plaintiff's citation to *Ditch v. Grace*, 479 F.3d 249 (3d Cir. 2007) is misplaced. *Ditch* involved a preliminary hearing, not an initial appearance.

## VI.     Plaintiffs' do not show how declaratory relief will redress their injuries.

Plaintiffs do not address how declaratory relief will help them. Plaintiffs rely solely on the alleged harm to the putative unnamed class members as the basis for why declaratory relief should be allowed with no citation to caselaw. However, the Amended Complaint must be assessed as to the claim of each named Plaintiff. Declaratory relief will not assist the named Plaintiffs for the past decisions of Defendants. *Cf. Daves v. Dallas Cty., Texas*, 22 F.4th 522 (5th Cir. 2022) (In a class action, for each named defendant, at least one named plaintiff must have standing to sue.)

## <u>CONCLUSION</u>

For the above stated reasons, Defendants respectfully request that the Court grant their Motion to Dismiss.

10

Respectfully submitted,

 s/ Devan A. Pederson
**STEFANIE E. LAWSON, OBA #22422**
**ERIN M. MOORE, OBA #20787**
**DEVAN A. PEDERSON, OBA # 16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK   73105
Telephone:    (405) 521-3921
Facsimile:     (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
        erin.moore@oag.ok.gov
        devan.pederson@oag.ok.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record, who are ECF registrants.

/s/Devan A. Pederson
**Devan A. Pederson**