IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MISTY WHITE, JANARA MUSGRAVE, and LANDON PROUDFIT, on behalf of themselves and all others similarly situated, and<br><br>　　　　　　　Plaintiffs,<br>v.<br><br>HON. PAUL HESSE, in his official capacity as Chief Judge of the 26th Judicial District, and<br>HON. DAVID HALLEY, in his official capacity as Special Judge in the Canadian County District Court,<br><br>　　　　　　　Defendants. | Case No: CIV-19-1145-JD |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF THE CONSENT DECREE, CLASS CERTIFICATION, AND PLAN OF NOTICE TO CLASS**

　　　Plaintiffs and Defendants (jointly referred to as the "Parties"), in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, jointly move the Court for an order: (i) granting preliminary approval of the proposed Consent Decree that certifies the Class, appointing Class Counsel, and adopting certain procedures to resolve Plaintiffs' claims herein; (ii) approving the forms and plan of Notice to the Class as defined below; and (iii) setting a hearing sixty (60) days after the Court grants preliminary approval of the Consent Decree and approves Class Notice, for the final approval of the Consent Decree. The proposed Consent Decree, which has been agreed to and finalized by the Parties' counsel, is attached hereto at Exhibit 1.

1

**Background**

1. On December 10, 2019, Plaintiffs filed the original Complaint in this matter, which contained multiple claims for relief. On November 29, 2021, Plaintiffs filed the Amended Complaint, which is the operative complaint in this matter. [Doc. 64]. The Amended Complaint asserts claims for relief based upon the Equal Protection Clause, the procedural and substantive components of the Fourteenth Amendment's Due Process Clause, and the Right to Counsel Clause of the Sixth Amendment of the United States Constitution.

2. Plaintiffs alleged that the bail system as administered by the Chief Judge and the Special Judge in Canadian County violated the above-mentioned provisions of the United States Constitution and that prospective injunctive and declaratory relief on a class wide basis would remedy these violations.

3. Defendants filed a Motion to Dismiss the Amended Complaint. The Court, after briefing, granted the motion to dismiss in part and denied it in part. The only claim remaining after the Court's Order was the procedural due process claim under the Fourteenth Amendment against both the Chief Judge and the Special Judge. [Doc. 90].

4. Defendants filed their Answer on January 21, 2025. [Doc. 97].

5. On February 6, 2025, Plaintiffs filed their Amended Motion for Class Certification. [Doc. 102]. Defendants responded on February 27, 2025. [Doc. 113]. Plaintiffs filed their reply on March 14, 2025. [Doc. 118]. The Court has not ruled on this motion.

6.    In February 2025, the parties began settlement negotiations, and in March 2025, Magistrate Judge Stephens conducted a settlement conference. After the settlement conference, the Parties, with the assistance of Magistrate Judge Stephens, continued settlement negotiations. The Parties were able to reach an agreement during these negotiations that is encompassed in the proposed Consent Decree. These were extensive arm's length negotiations.

7.    The Parties agree that the proposed Consent Decree is in the best interests of the Parties and the Class. The Parties acknowledge that Plaintiffs' claims and allegations in this case are serious and credible, and the proposed Consent Decree resolves Plaintiffs' claims while avoiding the costs, uncertainties, and risks of protracted litigation. The Parties further agree that the proposed Consent Decree is fair, adequate, and reasonable, and will benefit the public interest and the ends of justice by protecting the constitutional rights of Class Members.

8.    The proposed Consent Decree has been approved on behalf of the Plaintiffs by lead Class Counsel, Brandon Buskey, Megan Lambert, and Aaron Lewis; and on behalf of Defendants by Erin M. Moore. *See* Consent Decree, Ex. 1, p. 13-14.

## **The Proposed Class and Class Counsel**

9.    In accordance with the proposed Consent Decree, and Rule 23(e), the Parties stipulate and request the Court certify the following Class under Rule 23(b)(2):

> Any person who is or will be booked into the Canadian County Detention Center and is detained at the time of their first appearance before a judge in the Twenty-Sixth Judicial District on either an arrest or a warrant for new charges. This class does not include: (1) any person only detained on warrants for post-conviction applications or motions, (2) any person only

detained on warrants for failure to appear after release or failure to comply with orders of the Court after release in criminal matters; or (3) any person only detained on a warrant and in custody pursuant to a writ of habeas corpus.

10. The Parties stipulate that the proposed Class certification is reasonable and required to effectuate the purposes of the Consent Decree.[1]

11. The Parties stipulate that Brandon Buskey, Megan Lambert and Aaron Lewis, satisfy the requirements for, and should be appointed as, Class Counsel under Rule 23(g).

12. Proposed Class Counsel, collectively, have substantial relevant subject matter expertise and substantial experience in class action litigation. Most similar to the present matter, Brandon Buskey and Aaron Lewis served as co-Class Counsel in the litigation in the following states. *See Davonte Ross, et al. v. Honorable Chief Judge of Michigan's 36th District Court, et al.*, No. 2:19-cv-11076-LJM-EAS, In the United States District Court for the Easter District of Michigan Southern Division. Megan Lambert serves as co-Class Counsel in *Copeland, et al. v. C.A.A.I.R., et al.*, No. 17-CV-00564-TCK-JFK (N.D. Okla.). Class Counsel have sufficient resources to serve as Class Counsel and to protect the rights and interests of the Class Members.

**Summary of Proposed Consent Decree's Structure and Key Terms**

13. The stated purposes and intent of the proposed Consent Decree are to: (i) improve the process afforded to Class Members during their appearances before the court regarding the setting of their bail; (ii) resolve all claims asserted by Plaintiffs on behalf of

---

[1] Members of the Class are sometimes referred to as "Class Members."

the Class in this lawsuit; and (iii) provide a mechanism to monitor and enforce Defendants' compliance with the Consent Decree. *See* Consent Decree, Ex. 1, ¶¶ 21-26.

14. In general, the Consent Decree provides that,

a. Certain information should be collected and provided to the Court or inquired into when a Class Member appears for a bail determination;

b. Notice of certain information should be provided to Class Members upon booking in the Canadian County Detention Center;

c. Certain information should be reduced to a written form when the Court makes a bail determination;

d. A certain period of monitoring by Class Counsel will ensure compliance with the Consent Decree.

15. Defendants must submit documents to Class Counsel on a quarterly basis so compliance with the Consent Decree may be monitored. Consent Decree, Ex. 1, ¶ 20.

16. The duration of the proposed Consent Decree is two years. However, if the Court determines, upon Plaintiffs' motion, that Defendants have not been in compliance, the Court may extend the term of the Consent Decree and retain jurisdiction for a period of time determined by the Court to ensure that Defendants come into compliance with the terms of the proposed consent decree.

## Dispute Resolution and Enforcement

17. The proposed Consent Decree includes an "Informal Dispute Resolution Process" intended to incentivize the Parties to cooperate to resolve disputed issues and to minimize the need for Court intervention. *See* Consent Decree, Ex. 1, ¶¶ 24-26.

**Attorney Fees and Litigation Expenses**

18. Counsel for the Parties have separately resolved the attorney fees and litigation expenses by and through a Side Agreement that will be presented in camera for the Court's review. *See* Fed. R. Civ. P. 23(e)(3).

19. The relief sought by Named Plaintiffs in this action does not include monetary relief. Resolution of the attorney fees and litigation expenses through the Side Agreement does not impact the relief afforded to the class members under the Consent Decree or available through litigation, nor does the Side Agreement cause a benefit to any one class member disproportionate from all other class members. Therefore, all factors for approving the Consent Decree are met.

**Rule 23(a) & (b) Factors**

20. Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." The factors relevant in determining whether a class is sufficiently numerous include:

> the class size, the geographic diversity of class members, the relative ease or difficulty in identifying class members, the nature of the action, the size of the individual claims, and the ability of class members to institute individual lawsuits.

*Disability L. Ctr. v. Utah*, 2016 WL 5396681, at *3 (D. Utah Sept. 27, 2016) (citing *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014)). Additionally, the Tenth Circuit has not adopted a set number as presumptively sufficient to meet this burden, and there is "no set formula to determine if the class is so numerous that it should be so certified." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir.

2006). Whether a class satisfies the numerosity requirement is "a fact-specific inquiry" that district courts have "wide latitude" in determining. *In re Cox Enters., Inc.*, No. 12-ML-2048-C, 2014 WL 104964, *3 (W.D. Okla. Jan. 9, 2014) (quoting *Trevizo*, 455 F.3d at 1162). Multiple factors weigh in favor of finding numerosity here.

21. The Canadian County Detention Center books several thousand individuals into it each year. Of the individuals booked into the Canadian County Detention Center each year, hundreds of those individuals will remain detained until their first appearance before a judge of the Canadian County District Court. Many of those individuals appearing will be detained only based upon their arrest, as formal charges will not have been filed at the time of their first appearance. Many of the individuals appearing will be detained based upon a warrant after formal charges have been filed. Both groups of individuals are entitled to procedural due process at the first appearance hearing. The individuals in the class satisfy the numerosity prerequisite.

22. Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Factual differences between class members' claims do not defeat certification where common questions of law exist." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). Moreover, "[a] finding of commonality requires only a single question of law or fact common to the entire class." *Id.*

23. Plaintiffs and the Class Members are each entitled to a hearing that is compliant with procedural due process. What is required in the first appearance hearing is a common question such that the relief applies to all Class Members.

24. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." That said, "[t]he interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality." *Devaughn*, 594 F.3d at 1198.

25. Plaintiffs and Class Members all seek to have the same factors considered at the first appearance hearing and to have timely hearings. These procedural due process claims are typical even if each individual's factors differ or defenses to timing of the hearing exist.

26. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Courts assess adequacy of representation by asking (1) whether 'the named plaintiffs and their counsel have any conflicts of interest with other class members,' and (2) whether 'the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class.'" *Disability L. Ctr. v. Utah*, 2016 WL 5396681, at *6 (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002)).

27. Here, the proposed class satisfies the adequacy requirement, as neither the Named Plaintiffs nor their counsel have any substantial conflicts of interest with the class. As described above, each Class Member has a strict identity of interest in pursuing their due process claim—i.e., to alleviate prolonged wait times for bail hearings wherein the court considers all relevant factors including ability to pay when issuing bail determinations. Moreover, Plaintiffs' counsel are experienced and qualified to prosecute this action on behalf of the proposed class. Indeed, Plaintiffs' counsel have prosecuted this

action vigorously and, after extensive negotiation, reached a settlement that is favorable to all Class Members. *Cf. Hunter v. Beshear*, 2018 WL 564856, at *7 (M.D. Ala. Jan. 25, 2018) (finding adequacy under similar circumstances, as "continued litigation would only serve to delay class relief").

28. In some cases, mootness of the named plaintiffs' claims can raise adequacy concerns. But this is not such a case. As the Supreme Court has explained, "some claims are so inherently transitory that the trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 399 (1980) (addressing a class of people arrested without warrant being denied prompt judicial determinations of probable cause); *see also Clark v. State Farm Mut. Ins. Co.*, 590 F.2d 1134, 1140 (10th Cir. 2009); 1 *Newberg and Rubenstein on Class Actions* § 2:13 (6th ed.); *but see D.G. v. Henry*, 2009 WL 1011595, *2 (N.D. Okla., April 15, 2009) (Frizzell, J.) (recognizing the "inherently transitory" exception, but finding it inapplicable to the particular case).

29. Although the "inherently transitory" exception is often applied in the context of the justiciability doctrine, courts have applied the same concept to find named plaintiffs whose claims have been mooted to be adequate representatives under Rule 23(a)(4). Indeed, the inherently-transitory exception makes it clear that "plaintiffs with moot claims may adequately represent a class." *J.D. v. Azar*, 925 F.3d 1291, 1313 (D.C. Cir. 2019) (internal quotation marks omitted). As the D.C. Circuit explained:

> The very existence of the inherently-transitory exception disproves any suggestion that the mootness of a plaintiff's claims necessarily demonstrates her inadequacy as a representative. The entire object of that exception is to allow a class action to proceed even though the inherently fleeting nature of the class's claims will predictably render a given class member's claims moot before the class is certified.

*Id.*; *see generally* 1 *McLaughlin on Class Actions*, § 4:28 (20th ed.) ("[I]n the 'inherently transitory' context . . . a plaintiff with a moot claim who otherwise meets the requirements of Rule 23(a)(4) may serve as a class representative.").

30. The inherently-transitory exception applies here. By its nature, pretrial detention is, or ought to be, temporary. *See Hunter*, 2018 WL 564856, at *3 n.1 (discussing the "well-recognized exception to mootness where the class members consist of pretrial detainees"). Here, the Named Plaintiffs are no longer detained, and the criminal charges against them that led to the alleged unlawful detention have been resolved.

31. Plaintiffs allege that Class Members remain detained unnecessarily in jail, "the essence of the exception is uncertainty about whether a claim will remain alive for any given plaintiff long enough for a district court to certify the class." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) (finding exception applicable to jail inmates eligible for conditional release). And the exception is "particularly fitting when defendants create 'a significant possibility that any single named plaintiff would be [dismissed] prior to certification.'" *Jonathan R. by Dixon v. Just.*, 41 F.4th 316, 326 (4th Cir. 2022) (quoting *Olson*, 594 F.3d at 582).

32. Here, as in *J.D. v. Azar*, "the ephemerality of individual claims makes class-action treatment 'particularly important' so as to 'ensur[e] that a justiciable claim is before

the Court.'" 925 F.3d at 1313 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 268 (2003)). Courts have routinely applied this principle to analogous transitory classes to find class representatives "adequate" under Rule 23(c)(4) after their individual claims have been mooted. The same result should obtain here.

33. Plaintiffs seek class certification under Rule 23(b)(2), which is satisfied where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Just as all Class Members' procedural due process claims are based on the same unifying characteristic—untimely and inadequate first appearance hearings—the Defendants' conduct towards Class Members applies generally to the class, such that declaratory relief is appropriate respecting the proposed class as a whole. As alleged in the Amended Complaint, the problems of which Plaintiffs complain reflect a systemic failure, and Plaintiffs seek modification of the process for making bail determinations.

**Plan of Notice to the Class**

34. Under Rule 23(e), a proposed certified settlement class and settlement or compromise of class claims must be approved by the Court. The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," upon a showing that the Court "will likely be able to": (i) approve the proposed settlement under the factors enumerated under Rule 23(e)(2); and (ii) certify the Class for purposes of judgment on the settlement proposal. Fed. R. Civ. P. 23(e)(1) and (2). Because the

proposed Consent Decree requires court approval, Class Members must be given the opportunity to object. Fed. R. Civ. P. 23(e)(5).

35.  The Parties have agreed on the following plan of Notice to the Class that accounts for the Class Members' inherently transitory nature.[2] The Parties propose that, promptly upon the Court granting this Motion, Notice shall be given as follows:

   a. A Notice in substantially the same form as Exhibit 2 will be addressed and sent via first class U.S. mail to the Canadian County District Attorney and the Executive Director of Oklahoma's Indigent Defense System.

   b. A Notice in substantially the same form as Exhibit 2 will be addressed and sent via first-class U.S. mail to the Court Clerk of the Canadian County, with a request to post the Notice in the Clerk's office.

   c. A Notice in substantially the same form as Exhibit 2 will be addressed and sent via first-class U.S. mail to the Sheriff of Canadian County, with a request

---

[2] *See, e.g., Remick v. Philadelphia*, 2022 WL 2703601, at *7 (E.D. Pa., July 12, 2022) (court found that best notice to class members who in the future would be confined to Philadelphia Department of Prisons housing areas would be by posting notices at each prison facility); *Martinez v. Reams*, 2021 WL 603054, at *3 (D. Colo., Feb. 16, 2021) (in action challenging COVID practices of county jail, court finds revised settlement notice procedure adequate, which included each guard station having copy of English and Spanish version of class settlement notice); *Whitted v. Easter*, 2020 WL 4605224, at *3 (D. Conn., Aug. 11, 2020) (notice to future class members of COVID federal prison class by providing copy of the notice to future class members upon admission); *Hunter v. Beshear*, 2018 WL 565002, at *15 (M.D. Ala., Jan. 1, 2018) (notice given to circuit judge in each Alabama county identifying the Alabama mental health department official responsible for initiating the process of identifying and arranging emergency care treatment for persons awaiting inpatient mental evaluations and/or competency restoration treatment).

to post the Notice in the Canadian County Detention Center in a location visible to detainees during and after booking.

d. All Notices described herein shall: (i) include instructions for submitting comments or objections to the proposed Consent Decree, in writing; and (ii) advise that the proposed Consent Decree, and other case documents, are posted and accessible on the ACLU website.

36. Class Counsel will maintain and consolidate all submitted comments or objections to the proposed Consent Decree and provide copies to the Parties' counsel of record. Class Counsel shall submit to the Court all received comments and objections no less than seven (7) days before the hearing for final approval of the Consent Decree.

## Stipulations Regarding Rule 23(e)(2) Factors

37. The Parties, in accordance with Rule 23(e)(2), stipulate and agree that the proposed Consent Decree is a fair, reasonable, and adequate resolution of the issues embraced by this lawsuit, and that:

 a. Class Counsel and the Named Plaintiffs have adequately represented the interests of the Class;

 b. the proposed settlement was fairly and honestly negotiated at arm's length;

 c. the value of an immediate resolution outweighs the mere possibility of future relief after protracted and expensive litigation; and

 d. the relief provided to the Class is adequate in consideration of the factors enumerated in Rule 23(e)(2)(C).

*See*, *e.g.*, *Martinez v. Reams*, 2021 WL 603054, *4 (D. Colo, Feb 16, 2021) (class action settlement seeking relief for medically vulnerable persons at the Weld County jail; certified under Rule 23(b)(2)).

## Requested Relief

Based on the foregoing, the Parties jointly request that the Court: (i) grant preliminary approval of the proposed Consent Decree that (among other things) certifies a settlement Class, appoints Class Counsel, and adopts a remedial Plan to resolve Plaintiffs' claims herein; (ii) approve the forms and plan of Notice to the Class as described above; and (iii) set a hearing sixty (60) days after granting this Motion to determine the final approval of the Consent Decree.

Respectfully submitted by,

*/s/ Megan Lambert*
Megan Lambert
Oklahoma Bar Number: 33216
American Civil Liberties Union of
Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
mlambert@acluok.org

Brandon J. Buskey*
American Civil Liberties Union
Foundation
Criminal Law Reform Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2500
bbuskey@aclu.org

        Aaron Lewis*
        California Bar Number: 284244
        Covington & Burling LLP
        1999 Avenue of the Stars
        Los Angeles, CA 90067-4643
        Telephone: (424) 332-4800
        alewis@cov.com

        ***Class Counsel for Plaintiffs***

        *Admitted Pro Hac Vice


        <u>/s/ Erin M. Moore</u>
        *(signed with permission of attorney)*
        Erin M. Moore
        Oklahoma Bar Number: 20787
        Jacy Sullivan
        Oklahoma Bar Number: 33858
        Oklahoma Attorney General's Office
        313 NE 21st Street
        Oklahoma City, OK 73105
        Telephone: (405) 521-3921
        Facsimile: (405) 521-4518
        erin.moore@oag.ok.gov
        jacy.sullivan@oag.ok.gov

        ***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, I electronically filed the foregoing with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

Respectfully submitted,

*/s/ Megan Lambert*
Megan Lambert
Oklahoma Bar Number: 33216
American Civil Liberties Union of
Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
mlambert@acluok.org

*Class Counsel for Plaintiffs*